```
                                              _____ FILED        _____ RECEIVED
                                              _____ ENTERED       _____ SERVED ON
Paul Engstrom                                        COUNSEL/PARTIES OF RECORD
2190 E. Mesquite Ave
Pahrump, NV 89060                                 OCT - 6 2021
In Proper Person
                                              CLERK US DISTRICT COURT
                                                 DISTRICT OF NEVADA

                                         BY:_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO: 2:21-cr-00190-APG-EJY |
| Plaintiff, | **Motion for District Judge Review of Magistrate Judge's Detention Order** |
| VS. | |
| **PAUL ENGSTROM** | |
| Defendant, | |

CERTIFICATION: This motion is timely.

    This motion is filed by Paul Engstrom, in proper person, for the purpose of requesting that the District Court review the Magistrate Judge's Order of Detention pursuant to § 18 U.S.C. § 3145(b). The Magistrate Judge ruled that Mr. Engstrom was not a danger to the community, but found that Mr. Engstrom had not rebutted the rebuttable presumption of detention pertaining to risk of flight[1] (ECF No. 11), and therefore detained Mr. Engstrom pending trial. This motion is based on the following Memorandum of Points and Authorities.

---

[1] The Detention Order (ECF No. 11) also states that the defendant must be detained pending trial because the Government has proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the person as required. This finding is unnecessary when the rebuttable presumption is unrebutted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Procedural Background

On June 23, 2021, Mr. Engstrom made his initial appearance on a Criminal Complaint charging him with one count of Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii) and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). This case triggers the rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3), and therefore a detention hearing was held during the initial appearance. At the June 23, 2021 hearing Magistrate Judge Weksler found that Mr. Engstrom was not a danger to the community. ECF No. 11 (Detention Order). Magistrate Judge Weksler found, in relation to risk of flight, that "The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis." *Id.* This finding was stated by the Court to be primarily based on Mr. Engstrom's arrest conduct, specifically stating "It's main concern was the arrest conduct of Mr. Engstrom barricading himself in a room." (Detention Hearing 6/23/2021 at 15:20). Mr. Engstrom disputed the Government's proffered testimony that he had barricaded himself. After canvassing the AUSA regarding their proffered testimony, the Court chose to rely on the information provided by the US Attorney, as an officer of the court, as true. Magistrate Judge Weksler stated that she would be willing to reconsider her finding if additional information was provided.

The grand jury subsequently returned a nine-count Indictment, which charged Engstrom with eight counts relating to the illegal distribution of cocaine and one count of Conspiracy to Commit Money Laundering. ECF No. 17.

On July 29, 2021, Mr. Engstrom, through counsel, filed a Motion to Reopen Detention (ECF No. 30). Magistrate Judge Weksler found that there was new information presented that had a material bearing on the issue of whether Mr. Engstrom was a flight

risk and reopened detention, setting a hearing for August 4, 2021. This new information consisted of videos provided by a third-party. These videos depicted the events inside 6145 Harrison Drive #4 during the execution of the search warrant and arrest of Mr. Engstrom, and directly contradicted the Government's proffered testimony. After considering the new information, Magistrate Judge Weksler ruled on August 17, 2021, orally denying the motion and find that the Government had continued to prove, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the appearance of the person as required.

On August 26, 2021, Mr. Engstrom filed a Notice of Waiver of Counsel. On August 27, 2021, Magistrate Judge Youchah set a *Faretta* hearing for September 22, 2021, to determine if Mr. Engstrom's waiver of counsel was knowing, intelligent, and unequivocal. Mr. Engstrom, acting pro se, filed a Motion for District Court Review of Magistrate Judge's Detention Order (ECF No. 49) on August 30, 2021. Additionally, Mr. Engstrom filed a Supplement to that motion on September 7, 2021. ECF No. 51. The government moved to strike Mr. Engstrom's  Motion for District Court Review of Magistrate Judge's Detention Order on September 2, 2021. ECF No. 50. Magistrate Judge Youchah granted the government's motion to strike on September 17, 2021 (ECF No. 53), further ordering that if Defendant's motion to dismiss counsel and represent himself is granted, Defendant may thereafter refile his motion seeking review of the detention order. *Id.* Mr. Engstrom's Motion to represent himself was granted on September 22, 2021. This Motion is filed, as allowed by Magistrate Judge Youchah's order, and is a consolidation of Defendant's Motion for District Court Review of Magistrate Judge's Detention (ECF No. 49) and the corresponding supplement (ECF No. 51).

**B.     Legal Standard**

A person "ordered detained by a magistrate judge, or by a person other than a judge

of a court having original jurisdiction over the offense and other than a Federal appellate court . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). Under this provision, the district court conducts its own de novo review of the magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193. "[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate." *Id.* This request for review of the Magistrate Judge's Order of Detention is made in accordance with Local Rule LCR 12-3.

In this case, there is a rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3). This presumption "shifts a burden of production to the defendant," United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008), which requires the defendant to produce "some evidence" that there are conditions that would reasonably assure his or her appearance and the community's safety, United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). "The burden of production is not a heavy one to meet" and "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of . . . the presumption." United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986).

After the burden of production has been met, the release or detention of a defendant pending trial in Federal Court is governed by 18 U.S.C. § 3142.  18 U.S.C. § 3142(a) provides as follows:

a) In general. Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that,

4

pending trial, the person be—

1. Released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

2. released on a condition or combination of conditions under subsection (c) of this section;

3. temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

4. detained under subsection (e) of this section.

The act requires a progression from one choice to the next in a judicial officer's determination of whether pretrial detention is called for. See *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (en banc). Only after determining that release upon personal recognizance or an unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others (see 18 U.S.C. § 3142(b)), may the judicial officer then proceed to consider the conditions set out in section 3142(c)(1)(B). See *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985). The factors to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person in the community are enumerated in 18 U.S.C. § 3142(g).

## C.   Argument

### a.   Rebuttable Presumption

It is undisputed that this case triggers the rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3). A rebuttable presumption is defined as:

· A presumption which is not conclusive but may be overcome by opposing evidence. 30 Am J2d Ev § 1165. A provisional procedural assumption of a fact which is prescribed by a rule of a substantive law. Simpson v Simpson, 162 Va 621, 175 SE 320, 94 ALR 909. An assumption of facts made because common experience has established that they ordinarily exist where the basic facts from which the assumption arises have been established, but which may, in truth and fact, not exist at all." (Ballentine's Law Dictionary, 3rd Edition)

Defendant argues that he has rebutted the presumption that he is a flight risk by proffering that the criteria contemplated by Congress, as shown in the legislative history of the Bail Reform act of 1984 (BRA) do not apply to defendant. Specifically, the legislative history shows that Congress found that persons charged with major drug offenses "have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences," see S. Rep. No. 225, 98th Cong., 1st Sess. 19 (1983) 20, 23-24 and "The drug offender/flight presumption seems a reasonable response to this general problem, requiring that a charged drug offender produce some evidence that he does not present a special risk and then requiring the magistrate to review the matter with Congress's general findings in mind." See, e.g., "Bail Reform," Hearings Before the Subcommittee on the Constitution of the Senate Judiciary Committee, 97th Cong., 1st Sess., Sept. 17, Oct. 21, 1981 at 67, 70 (Comm. Print 1982).

As evidenced by the legislative history the basis for the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required" (18 U.S.C. § 3142(e)(3)) is based on the assumption that major drug offenders have *both* the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution. Mr. Engstrom has neither the resources nor the foreign contacts contemplated by congress to presume an underlying propensity to flee prosecution. Mr. Engstrom proffers the following.

Mr. Engstrom does not have the resources to flee. Although defendant did/does have substantial crypto holdings, which he acquired as far back as 2010, all computers, USB drives and hardware wallets that contain the private keys necessary to transfer or sell those holdings were seized by the government. Subsequent to Defendant's August 4, 2021, detention hearing, Defendant has received Administrative Forfeiture notices from the DEA

6

1   on August 19, 2021 and August 23, 2021, for a variety of different crypto holdings that

2   were seized on June 21, 2021. This is further evidence that the government seized the

3   private keys required to transfer the defendants crypto holdings and defendant contends

4   that this would constitute "new information" that is material to the question of whether Mr.

5   Engstrom is a flight risk.

6            Mr. Engstrom does not have the foreign contacts, nor does he have the propensity to

7   flee. Mr. Engstrom does not, nor has he ever had a passport. He has never traveled outside

8   of the United States and does not have any foreign contacts. Government has not argued

9   that Mr. Engstrom has any foreign contacts, nor has the Government offered evidence that

10  defendant has the ability or the propensity to flee.

11           In addition to the information proffered above, the defendant argues that his

12  substantial ties to the Las Vegas community additionally rebut the presumption of flight

13  risk, where he has lived in Las Vegas since 2007; he has a close relationship with his

14  significant other, who has lived in Las Vegas her entire life, whom he met in 2009 and

15  married in 2010; he has operated an ATM business in Las Vegas since 2018; he is a senior

16  at University of Nevada – Las Vegas, where he maintains a 4.0 GPA and has been admitted

17  to three national honor societies; and he has the support of family, friends and members of

18  the community, all who attended his detention hearing on August 4, 2021. Defendant has

19  also shown the ability to abide by conditions of release. Defendant's previous exemplary

20  conduct while on supervision caused the court to grant early termination in accordance

21  with 18 U.S.C. § 3583(e)(1).

22

23           Considering the above, the court should find that the defendant's proffered evidence

24  has rebutted the rebuttable presumption that he is a flight risk. The court should also find

25  that Magistrate Judge Weksler's finding that "The defendant has not introduced sufficient

26  evidence to rebut the presumption above, and detention is ordered on that basis" (ECF No.

11) is clearly erroneous. As the Magistrate Judge details in the "OTHER REASONS OR FURTHER EXPLANATION," *Id.* Mr. Engstrom proffered the above rebuttal evidence at the his initial detention hearing on June 23, 2021. This information should be deemed sufficient to meet the burden of production required.

Additionally, the government has not sufficiently surrebutted defendant's evidence. The burden of persuading the Court that the defendant is a flight risk lies with the government. Defendant argues that the government has not established that defendant is a flight risk by the preponderance of the evidence.

**b.** **Consideration of 18 U.S.C. § 3142(g) Factors**

The Defendant argues that consideration of the factors enumerated under 18 U.S.C. § 3142(g) were unnecessary relative to the findings of Magistrate Judge Weksler. 18 U.S.C. § 3142(g) factors only become relevant if the court finds that a defendant has rebutted the rebuttable presumption enumerated in 18 U.S.C. § 3142(e)(3) and is found to be a flight risk or danger to the community precluding release under 18 U.S.C. § 3142(a)(1) and (b), therefore progressing to the possibility of release on a condition or combination of conditions in accordance with 18 U.S.C. § 3142(a)(2). See *supra.*

In this case, according to Magistrate Judge Weksler's findings, the consideration of the 18 U.S.C. § 3142(g) factors are not necessary for either risk of flight or danger to the community. Magistrate Judge Weksler found that Mr. Engstrom is not a danger to the community. See June 23, 2021 Detention Hearing and ECF No. 35 p. 6 footnote 4 (Government's Response to Opposition to Defendant's Motion to Reopen Detention). In regards to the question of risk of flight, Magistrate Judge Weksler found that "The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis" (ECF No. 11).

Judge Weksler's finding that Mr. Engstrom is not a danger to the community deems

him eligible for release on a personal recognizance or unsecured appearance bond in accordance with 18 U.S.C. § 3142(a)(1) and (b), subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. As such, 18 U.S.C. § 3142(g) factors need not be considered insofar as they relate mitigating danger to the community.

Judge Weksler's finding that, as related to risk of flight, Mr. Engstrom had not introduced sufficient evidence to rebut the rebuttable presumption triggered in this case, stops the inquiry prior to the consideration of the possibility of release under 18 U.S.C. § 3142(a)(2), deeming consideration of the factors enumerated in 18 U.S.C. § 3142(g) unnecessary as they relate to risk of flight.

Defendant requests that, if this court determines that consideration of the factors enumerated in 18 U.S.C. § 3142(g) are necessary to determine his eligibility to be granted pretrial release, he be allowed to proffer additional evidence at a hearing or through a supplemental filing. The right to present such evidence at detention hearings is guaranteed by 18 U.S.C. § 3142(f)(2)(B), which allows that "The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise."

**c.   Misplaced Burden of Persuasion Placed Upon Defendant**

The Magistrate Judge stated in their oral ruling denying defendant's Motion to Reopen Detention that the new information provided, specifically that defendant had not fled to a back office and had not barricaded himself (which were the specific actions the Magistrate Judge stated the defendant could not overcome that warranted detention in the initial detention hearing), but "While the new information has moved the needle somewhat

in favor of defendant, it has not moved it enough for the Court to find that government has not met it's burden." See August 17, 2021 Detention Hearing at 3:54. It should be noted that defendant stated at his initial detention hearing that he had followed the announced instructions to "stay away from all doors and windows," was arrested without incident, and denied that he had barricaded himself, but the Magistrate Judge relied on the hearsay evidence presented by the DEA Agent in the complaint as being credible and relied on AUSA's representation as told by the agent, stating "the Court relies on the US Attorney, as an officer of the court, that the information is true." ECF No. 11. After being presented with evidence at the second detention hearing that Mr. Engstrom did not flee, barricade himself in a room, nor fail to follow instructions to leave the room, the Magistrate Judge admonished the Government for arguing that defendant barricaded himself and the DEA Agent for making false statements in the Criminal Complaint, a sworn declaration.

The "moved the needle" statement made by the Magistrate Judge implies that the burden of persuasion to prove that release is warranted falls upon the defendant, but established case law shows that is not the case. "Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). It is not defendant's burden to persuade the court that release is appropriate, but the Government's burden to persuade that detention is necessary. If the Magistrate Judge was relying on the defendant to "move the needle" in favor of pretrial release, this implies that the Court was mistakenly requiring the defendant to persuade the Court in favor of release.

There is also considerable caselaw supporting that, outside of a clearcut showing by the Government that detention is warranted, the presumption is that the defendant should be released. see *United States v. Gebro*, 948 F.2d at 1121 (9th Cir. 1991), quoting United *States v. Motamedi*, 767 F.2d at 1405. (9th Cir. 1985) "Only in rare circumstances should

release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor."; see also *United States v. Hurtado*, 779 F.2d at 1470 n.4 (11th Cir. 1985) (if defendant has presented evidence to rebut section 3142(e) presumption, "when the government's showing is not clearcut, the presumption is that the defendant should not be detained"). The Supreme Court found that "doubts regarding the propriety of release should be resolved in the favor of the defendant" in *Herzog v. United States*, 99 L. Ed. 1299, 75 S. Ct. 349, 351 (1955). The Ninth Circuit cited this finding in *Motamedi*, 767 F.2d at 1405, establishing that this standard continues to apply post Bail Reform Act of 1984.

### d.   Government's Reliance on Presumption Alone

Simple restatement of the elements of the underlying case that trigger the statutory rebuttable presumption, without rebutting the evidence the defense produces to rebut the presumption, is insufficient to carry the burden of persuasion. "Rebuttable presumption of 18 USCS § 3142 allowing pretrial detention of defendant charged with serious narcotic offense upon finding that defendant presents either risk of flight or danger to community places on defendant only burden of production of evidence tending to rebut presumptions and requires government to rebut defendant's evidence," and "government may not rely on presumption alone" to rebut defendant's evidence. *United States v. Moore*, 607 F. Supp. 489 (N.D. Cal. 1985). Outside of the argument that the defendant barricaded himself on the day of his arrest, which the Magistrate found to be false and accordingly admonished the government, the government's arguments in favor of the defendants pretrial detention consist of nothing more than restatement of the criteria which trigger the rebuttable presumption under  18 U.S.C. § 3142(e)(3).

### e.   Due Process Violation

Magistrate Judge Weksler's finding that Mr. Engstrom might have ways to access the private keys necessary to transfer or spend his crypto holdings, despite Mr. Engstrom's

proffered testimony that he does not have access to the private keys and the Governments admitted seizure of all of Mr. Engstrom's computers, USB drives and hardware wallets, violates Mr. Engstrom's due process rights. Mr. Engstrom is entitled to a detention hearing in front of a neutral decisionmaker. Magistrate Judge Weksler's finding that Mr. Engstrom may still have access to his crypto keys was made absent of any like argument by the Government. This violates Mr. Engstrom's due process rights under the United States Constitution, where, as stated in *United States v. Salerno*, 481 U.S. 739, 747, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987), Mr. Engstrom is entitled to a hearing described as "a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Id.* 481 U.S. At 750. Simply put, Magistrate Judge Weksler is charged with being a neutral decisionmaker, meant to make rulings based on arguments that are presented by the two adversaries, the plaintiff and the defendant. By making a finding based on an argument that was not presented by the Government, Magistrate Judge Weksler has shown not to be the neutral decisionmaker that Mr. Engstrom is entitled, but instead, an additional adversary.

On August 19, 2021 and August 23, 2021, Mr. Engstrom received Notices of Administrative Forfeiture for numerous crypto coins that were seized by the DEA on June 21, 2021. This is further evidence that supports Mr. Engstrom's August 4, 2021 proffered testimony that he no longer has access to his crypto holdings – furthering the argument to show that the Government has seized control of Mr. Engstrom's crypto holdings.

**f.    Obstruction of Justice**

Magistrate Judge Weksler's finding that defendant **may** have obstructed justice by flushing drugs after the onset of search warrant is an error of both law and fact. This finding was stated in Judge Weksler's oral ruling on August 17, 2021, at 2:42 and used as a

1    basis for her finding that defendant's "arrest conduct" weighed in favor of detention.

### I.    Error of Law

Obstruction of justice, if it occurs, is a consideration when determining if a defendant is a danger to community, not a flight risk. See *United States v. Mancuso*, 726 F. Supp. 1210 (D. Nev. 1989), " It appears that the Court may consider obstruction of justice and tampering with witnesses as factors in determining the issue of safety (see *United States v. Knight*, 636 F. Supp. 1462 at 1467 (S.D. Fla. 1986)), but that the law requires in addition to obstruction itself a finding of a threat to physical safety, physical or psychological coercion, threat of harm to property, economic harm or the like before the Court may find a danger to the safety of any other person or the community." Obstruction of justice, as considered in the context of whether a defendant is a danger to the community, requires the finding meet the clear and convincing standard of burden of proof. Magistrate Judge Weksler mistakenly applied the lesser preponderance of the evidence standard to her finding. A finding of obstruction, absent a finding that defendant is "likely to commit those same offenses again during the course of the proceedings," is insufficient to find that defendant poses a safety risk. *United States v. Demmler*, 523 F. Supp. 2d 677 (S.D. Ohio 2007). The showing of the Government that the defendant obstructed justice is not clearcut, therefore "The doubt must be resolved in his favor." *United States v. Gebro*, 948 F.2d at 1121 (9th Cir. 1991).

### II.    Error of Fact

First and foremost, there is no evidence that drugs were in fact flushed down the toilet in question and the government has produced no evidence that Mr. Engstrom committed such an act. In the alternative, it seems more likely, considering the entirety of the evidence available, that the metal pan in question was jostled by the explosion of the charges that breached the front door, displacing it from where it was set on the tank of the

toilet, knocking it down to the bowl of the toilet and then to the ground. This would explain how spoons ended up sitting in the toilet bowl, whereas they would have been flushed down if the toilet had been flushed.

Magistrate Judge Weksler states in the August 17th ruling, "and as the Court mentioned earlier there is credible evidence that the defendant was destroying evidence after the polices arrival." at 3:06. It would be impossible for Mr. Engstrom to be in the bathroom destroying evidence when the HPD took control of that area of the office twenty-three seconds after entering the premises. Furthermore, Magistrate Judge Weksler's finding that there was "credible evidence that the defendant was destroying evidence," fails to reach the clear and convincing burden of proof required to find that obstruction of justice occurred. See *United States v. Mancuso*, 726 F. Supp. 1210 at 1213 (D. Nev. 1989) "It appears that the Court may consider obstruction of justice and tampering with witnesses as factors in determining the issue of safety." Defendant argues that a finding of "credible evidence" does not satisfy the clear and convincing burden of proof required to find that Mr. Engstrom obstructed justice by flushing drugs. Therefore, this finding should be found to be clearly erroneous and disregarded when considering Mr. Engstrom's release pending trial.

Magistrate Judge Weksler's finding that Mr. Engstrom may have accessed to the bathroom because one of the two doors leading to the room with access to it was locked does not meet the burden of clear and convincing evidence, especially considering the Magistrate also stated on the record that the defendant was likely in the office prior to the arrival of officers serving the search warrant.

The government's assertion that because, prior to fleeing to the garage area, one or both of defendants co-defendants attempted to open one of the doors leading to the room that accessed the bathroom, finding it locked, leads to the conclusion that  Mr. Engstrom

14

had exclusive access to said bathroom, purposely misled the court. The government failed to acknowledge or disclose that there was another door in the garage area that lead to the same room, and provided a closer path to the bathroom in question.

The Government failed to prove by clear and convincing evidence that obstruction of justice occurred. Even assuming in arguendo that obstruction of justice did occur there is not clear and convincing evidence that Mr. Engstrom is culpable.

**g.    Defendant's Arrest Conduct**

At the initial detention hearing on June 23, 2021, the record shows that Magistrate Judge Weksler's finding that Mr. Engstrom was a flight risk and that no condition or combination of conditions will reasonably assure the appearance of the person as required is primarily based on Mr. Engstrom's arrest conduct as proffered by DEA Agent Daniel Kurinec through the AUSA. Agent Kurinec, in his sworn criminal complaint states "Engstrom fled to a back office, locked the door, and refused commands to exit the office." (see 2:21-mj-00537-BNW ECF No. 1 at 11) and that "Engstrom was trying to hide from law enforcement." *Id.* at 12. The Court noted (see ECF No. 11):

- The defendant's ties to the communities are strong and he has been in Las Vegas, NV since 2007. There is conflicting information as to where the defendant has been residing, but ultimately there is information that the defendant can return to his residence and he has a long-established residence here. The defendant owns and works at his own business and can return to work if released.

and,

- What cannot be overcome is the risk of flight given the arrest conduct by the defendant in this case, which includes that the defendant barricaded himself in his house. While the defendant denies the allegation, the DEA Agent that informed the court as to the co-defendants has provided an account that the Court deems credible and the Court relies on the US Attorney, as an officer of the court, that the information is true.

Based on this information, the Court found that Mr. Engstrom was a flight risk. Specifically, the Court stated, "It's main concern was the arrest conduct of Mr. Engstrom barricading himself in a room." (Detention Hearing 6/23/2021 at 15:20).

15

Defendant, through counsel, filed a Motion to Reopen to Detention on 7/29/2021 (ECF No. 30). This motion was granted to the extent that the detention hearing was reopened based on the new information presented that had a material bearing on the issue of whether the defendant was a flight risk. This new information consisted of video's showing that Mr. Engstrom did not flee to a back office, did not barricade himself, and did not refuse commands to exit the office, contradicting the assertions made by the DEA Agent and the AUSA at the initial detention hearing. At the reopened detention hearing on 8/4/2021 Magistrate Judge Weksler found that Mr. Engstrom did not flee to the office he was eventually found in, and was likely in that office prior to the arrival of the SWAT Team executing the search warrant; that he did not barricade himself in the office, specifically finding that there was no barricade and that the door was very possibly locked prior to the arrival of the SWAT Team; that it was not clear that Mr. Engstrom failed to follow instructions to exit the office, and was likely acquiescing to the repeated directions to "stay away from all doors and windows." At this hearing, after questioning the veracity of the DEA Agent's statements regarding Mr. Engstrom's conduct on the day of his arrest, and after finding that Mr. Engstrom did not barricade himself as represented by the DEA Agent and the AUSA at the initial hearing, the Court admonished both the AUSA and the DEA Agent.

Mr. Engstrom argues that there is nothing regarding his conduct on the day of his arrest that supports a finding that he is a flight risk. Mr. Engstrom was taken into custody without incident, did not resist arrest, and did not attempt to flee. Mr. Engstrom was following instructions that were repeatedly stated over loudspeaker to "stay away from all door and windows." After hearing multiple explosions Mr. Engstrom stood in the middle of the room in which he was located and waited for the SWAT Team. Being able to hear some instructions given to the other occupants of the building, Mr. Engstrom understood that the

SWAT Team to be occupied with taking Mr. Elliott and Mr. Cuomo, who were apparently located in the garage, into custody. The video provided by the Government in discovery labeled 21_11265_06_21_2021_13_47_48_Forest_Shields.mp4 (ECF No. 36 Ex. A) reinforces this version of events, showing that after securing Cuomo and Elliott the members of the Henderson SWAT Team turned their attention to "taking" the back office where Mr. Engstrom was located. Although audio for this video doesn't start until 59 seconds have elapsed, there is 15 seconds of audio recorded prior to the breach of the back office. In those 15 seconds the members of the SWAT Team make no commands to exit the office, nor do they announce their intent to enter the office, prior to breaching the office door with a sledgehammer (*Id.* at 0:01:18). After entering the office Mr. Engstrom is removed without incident and handcuffed, with one of the SWAT Team members telling Mr. Engstrom "Good Job" in regards to his compliance with their orders (*Id.* at 0:01:58).

### h.    Use of Hearsay

As in a preliminary hearing for probable cause, the government may proceed in a detention hearing by proffer or hearsay. *United States v. Cardenas*, 784 F.2d 937, 938 (9th Cir. 1986) In a detention hearing, the magistrate judge determines the weight of the proffer or whether other information, evidence or testimony is warranted. *United States v. Acevedo-Ramos*, 755 F.2d 203, 208 (1st Cir. 1985) "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f). However, the judicial officer should make efforts to determine the reliability of such hearsay. *Acevedo-Ramos*, 755 F.2d at 207. Without a proffer from the defendant that the government's proffered information is incorrect, the magistrate judge is not required to allow the defendant to cross-examine the investigators and police officers. *United States v. Winsor*, 785 F.2d at 755 (9th Cir. 1986).

The defendant denied the Government's version of events surrounding his arrest, as

offered by proffer at his initial detention hearing. Additionally, defendant offered evidence that called into question the reliability or correctness of the Government's proffer. This additional evidence directly contradicted the hearsay testimony that was proffered by the AUSA as provided by DEA Agent Kurinec, some of which was provided to Kurinec by various members of the Henderson Police Department SWAT Team. At the Detention Hearing held on 8/4/2021, after directly questioning DEA Agent Kurinec, Magistrate Judge Weksler found that the hearsay testimony provided at the initial detention hearing was not reliable, and additionally found that DEA Agent Kurinec made false statements under oath in the Criminal Complaint he swore out to Magistrate Judge Weksler on 6/22/2021. At this hearing the Court admonished both the AUSA and the Agent Kurinec.

Nevertheless, at the detention hearing held on 8/4/2021 the Government continued to rely on hearsay evidence from the same sources. Specifically, testimony provided to the AUSA from Henderson SWAT Team members, regarding what occurred during the execution of the search warrant and the arrest of Mr. Engstrom on 6/21/2021. This testimony should be disregarded, not only because it has proven to be unreliable, but also due to the fact that the proffered testimony is not supported by the bodycam videos provided by the Government. These videos, which cover the entirety of the execution of the search warrant of 6145 Harrison Drive, at no point provide evidence that Mr. Engstrom was ordered or commanded to exit the office he was in, yet the Government proffered at the 8/4/2021 hearing that one of the member of the SWAT Team had told either DEA Agent Kurinec or the AUSA that he had made such a request. The AUSA conceded at the hearing that the request to exit the office could not be heard on the provided bodycam footage, but still asked the Court to accept the hearsay evidence that a request to exit the office had occurred.

The defendant requests that the Court find all hearsay evidence provided by DEA

Agent Kurinec and the members of the Henderson SWAT Team unreliable and require any future testimony from those parties to be made live, under oath, and subject to cross-examination.

       **i.**     **Additional Objections to Magistrate Judge Weksler's August 17, 2021 Oral Ruling**

       **I.**     **Magistrate Judge Judge Weksler's Finding that Mr. Engstrom Was Ordered to Exit the Office From Which He Was Located is Clearly Erroneous**

There is a dispute of fact as to whether Mr. Engstrom was ever ordered or commanded to leave the room from which he was located when the Henderson Police Department SWAT Team performed their search warrant on 6145 Harrison Unit 4. This is conduct that Magistrate Judge Weksler has expressly stated was critical in her decision to detain Mr. Engstrom as a flight risk. See August 17th, 2021 hearing at 2:03 where Magistrate Judge Weksler states "The Court relies on the same rationale it did previously and continues to rely primarily on the arrest conduct for its decision," explaining her reason for finding that no conditions can be fashioned to reasonably assure Mr. Engstrom's appearance. Magistrate Judge Weksler also appears to make a finding of fact that Mr. Engstrom was ordered to leave the room he was in and failed to do so. See *Id.* at 2:26 "It is not clear why defendant did not come out of the room when ordered to do so." Mr. Engstrom objects to this finding, and argues that there is no evidence that Mr. Engstrom was ordered to leave the office he was in – and that he was in fact following instructions to stay away from doors and windows. Additionally, defendant argues that Magistrate Judge Weksler's finding in regards to why Mr. Engstrom did not exit the room he was in is speculative, not supported by fact, and in fact impossible.

## II.  Mr. Engstrom was Not Commanded or Ordered to Exit the Office From Which He was Located

Mr. Engstrom proffers that the only commands he ever heard directed towards him during the service of the search warrant, prior to when the police breached the door to the office he was in, were to "stay away from the doors and windows," and "Occupants of unit four, step away from all windows and doors." These commands were stated over loudspeaker eight times, five times prior to the detonation of the charges that breached the front door and window, and three times after the front door was breached. See the Government provided bodycam footage titled 21_11265_439S (2).mp4 (ECF No. 36. Ex. A. 21_11265_439S (2).mp4) at 6:42 (three times), at 6:51 (two times), and at 7:19 (three times after the breach.). It is unclear what evidence Magistrate Judge Weksler relied upon to find that Mr. Engstrom was ordered to exit the office. At the hearing held on August 4th, 2021, for the Motion to Reopen Detention, the Government conceded that there were no discernible commands directed at Mr. Engstrom to exit the office on the bodycam video they provided. The proffered hearsay evidence that a Henderson Police Department (HPD) Officer had stated that he had made such a demand at around the 8:20 mark in one of the bodycam videos they provided, but also conceded that what the officer says is unintelligible in the video. Defendant was able to find what he believes to be the announcement the Government is relying on at 8:08 of the bodycam footage titled 21_11265_439S (2).mp4. Here, after breaching the first inner door that leads to the middle office, an HPD officer states "Search warrant, Henderson Police Department..." with the remainder of what was stated being spoken so fast it is unintelligible. It is not objectively reasonable to expect that Mr. Engstrom, who was behind a closed door in an office twenty to thirty feet away, was able to hear and discern what that officer said, when said statement is unclear in a recording that was made from only a few feet away. Therefore, Magistrate

Judge Weksler's finding of fact that Mr. Engstrom was ordered to exit the office is clearly erroneous.

### III.  Magistrate Judge Weklser's Posited Reasons as to Why Mr. Engstrom Did Not Exit the Office are Speculative, Not Supported By Evidence, and are in Fact Impossible

In the Courts oral order on August 17th, 2021, in regards to why Mr. Engstrom did not exit the office, the Magistrate states at 2:33 "On one hand he may have been responding to earlier commands to stay away from doors and windows. On the other hand, the reason for non-compliance may have been that he was destroying evidence given there was drug residue on the toilet seat from which it is believed drugs were flushed down." As stated above, Mr. Engstrom asserts that he was never ordered to exit the office where he was located. If, in arguendo, Mr. Engstrom was ordered to exit the office and he was able to hear and discern that order, the only possible time that the Government argues that order was made was after the HPD breached the first inner door and gained access to the middle office area, which also gave HPD control over the bathroom in question. The HPD gained access to the middle office area and bathroom twenty-three seconds after they make their entrance into the property. See  21_11265_439S (2).mp4 at 8:03. The office Mr. Engstrom was located in was breached by the HPD slightly over three minutes after they made their entry into the building. As such, it would be impossible for Mr. Engstrom to have spent that time flushing drugs down a bathroom that was inaccessible from the room in which he was located, and where the HPD had taken control of the room that accessed the bathroom three minutes prior to Mr. Engstrom being taken into custody. Therefore, Magistrate Judge Weksler's finding that Mr. Engstrom may have been destroying evidence during the three minutes he was waiting for the HPD to enter the room he was in is clearly erroneous.

Additionally, Magistrate Judge Weksler's postulated consideration of the reasons

that she believed Mr. Engstrom did not exit the office he was in are purely speculative. The Court's argument of on one hand vs. on the other hand fails to meet the required burden of proof. Also, considering that "Doubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d at 1405. (9th Cir. 1985), quoting *Herzog v. United States*, 99 L. Ed. 1299, 75 S. Ct. 349, 351 (1955) (Douglas, J., in chambers), defendant argues that controlling Ninth Circuit law supports a finding that Mr. Engstrom's remaining in the room in which he was located, after being commanded eight times to stay away from all doors and windows, can be construed as nothing but full compliance with the officers performing the search warrant.

### III.    Magistrate Judge Weksler's Finding That There is Evidence to Suggest That Defendant Locked Himself into the Room is Clearly Erroneous

The defendant objects to Magistrate Judge Weklser's finding that Mr. Engstrom locked himself into the room he was in, implying that this occurred after the arrival of the police. Magistrate Judge Weksler stated in her ruling at the August 17th, 2021 hearing that "there is evidence that defendant did lock himself into that room," (at 2:53) and "First, the co-defendants attempted to enter into that room once the police arrived which indicates that the room typically would have been unlocked." *Id.* at 2:59. First, there is no evidence that the co-defendants attempted to enter the room that Mr. Engstrom was located. Defendant provided video in conjunction with his Motion to Reopen Detention (ECF No. 30) that may show one or both of the co-defendants attempting to open the first inner door immediately after the SWAT team commences their announcements. Magistrate Judge Weksler has apparently mistaken the first inner door with the door to the office where defendant was located. Additionally, without any evidence presented as to the normal state of the door in question, there is no basis to determine whether a door is usually locked or

unlocked. Absent such evidence, Magistrate Judge Weksler's finding that the co-defendant(s) finding the first door locked was indicative that it would usually be unlocked is speculative and not supported by evidence.

The Magistrate Judge's apparent error in identifying the door that the co-defendant(s) attempted to open, as opposed to the door to the office that Mr. Engstrom was located constitutes a clear error in the Magistrate Judge's ruling.

**D.      Conclusion**

The defendant has satisfied the burden of producing evidence to rebut the presumption that he is a flight risk. The Government has failed to surrebut the evidence produced, and has not met the burden of showing by the preponderance of the evidence that the defendant 1) is a flight risk or 2) that no conditions or combination of conditions will reasonably assure the appearance of the person as required. For all of the foregoing reasons, defendant requests that the Court REVOKE the Detention Order and find that there are conditions that can be fashioned to ensure his appearance in court, releasing Mr. Engstrom pending trial, subject to whatever conditions the Court finds appropriate to reasonably ensure his appearance and the safety of the community as required.

DATED this 3rd day of October, 2021.

Respectfully Submitted,

Paul Engstrom
*In Proper Person*

Paul Engstrom 06370041
Nevada Southern Detention Center
2190 E Mesquite Ave
Pahrump, NV 89060

```
_____ FILED            _____ RECEIVED
_____ ENTERED          _____ SERVED ON
                  COUNSEL/PARTIES OF RECORD

            OCT - 6 2021

        CLERK US DISTRICT COURT
          DISTRICT OF NEVADA

BY: _____ DEPUTY
```

United States District Court
Attn: Clerk
333 Las Vegas Boulevard South
Room 1334
Las Vegas, NV 89101

XRAYED US MARSHALS SERVICE

