Paul Engstrom
2190 E. Mesquite Ave
Pahrump, NV 89060
*In Proper Person*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>VS.<br><br>PAUL ENGSTROM<br><br>Defendant, | CASE NO: 2:21-cr-00190-APG-EJY<br><br>MOTION TO RECONSIDER ORDER DENYING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DETENTION ORDER<br><br>(ECF No. 89) |

CERTIFICATION: This motion is timely.

This motion is filed by Paul Engstrom, in proper person, for the purpose of requesting the Court to reconsider their Order Denying Motion for Review of Magistrate Judge's Detention Order (ECF No. 89) pursuant to Federal Rule of Civil Procedure 59(e) or Federal Rule of Civil Procedure 60(b), and Local Rule II 59-1(b). Mr. Engstrom requests that the court reconsider it's ruling based on five points of law or fact that the court has overlooked or misunderstood as argued herein. Additionally, the transcripts from Mr. Engstrom's June 23rd, August 4th, and August 17, 2021, hearings were made available after the filing of Mr. Engstrom's motion and reply. There is additional information in the transcripts that may be considered new information, if that information has not been considered by the court.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. Procedural Background

On June 23, 2021, Mr. Engstrom made his initial appearance on a Criminal Complaint charging him with one count of Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii) and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). At this hearing the Magistrate Judge found that Mr. Engstrom was not a danger to the community, but that there were no conditions or combination of conditions that would reasonably assure his appearance as required, therefore detaining Mr. Engstrom pending trial. On July 6, 2021, the grand jury returned a nine-count indictment, closely following the allegations in the criminal complaint.

On July 29, 2021, Mr. Engstrom, through counsel, filed a Motion to Reopen Detention (ECF No. 30) based on new information, i.e. videos obtained by defendant that contradicted the government's account of defendant's conduct on the day of his arrest. Magistrate Judge Weksler found that there was new information presented that had a material bearing on the issue of whether Mr. Engstrom was a flight risk and reopened detention, setting a hearing for August 4, 2021. After considering the new information, Magistrate Judge Weksler ruled on August 17, 2021, orally denying the motion and found that the Government had continued to prove, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the appearance of the person as required.

On October 6, 2021, Mr. Engstrom filed a Motion for District Court Review of Magistrate Judge's Detention (ECF No. 63), to which the government responded (ECF No. 76) and Mr. Engstrom replied (ECF No. 82). On November 24, 2021, District Court Judge Andrew Gordon denied Mr. Engstrom's motion (ECF No. 89). This motion to reconsider follows.

## B. Legal Standard

While the Federal Rules of Criminal Procedure do not contain a provision specifically

2

allowing motions for reconsideration, numerous circuit courts have held that motions for reconsideration may be filed in criminal cases. See *United States v. Martin*, 226 F.3d 1042, 1047 n. 7 (9th Cir. 2000) (post-judgment motion for reconsideration may be filed in a criminal case and governed by Fed.R.Civ.P. 59(e)); *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) (motion for reconsideration allowed in criminal case and governed by Fed.R.Civ.P. 59(e) or Fed.R.Civ.P. 60(b)); *United States v. Clark*, 984 F.2d 31, 33-34 (2d Cir. 1993) (motion for reconsideration filed in criminal case within 10 days of subject order is treated under Fed.R.Civ.P. 59(e)). Motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings. See *United States v. Hector*, 368 F. Supp. 2d 1060, 1062-63 (C.D. Cal. 2005) rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007); see also *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) (motion for reconsideration allowed in criminal case and governed by Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b)).

Reconsideration is appropriate if the Court: (1) is presented with newly discovered evidence; (2) committed clear error, or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003). Motions for reconsideration are disfavored. Local Rule II 59-1(b). Reconsideration is "an extraordinary remedy, to be used sparingly and in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Local Rule II 59-1(a) states, "A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity."

C. **Argument**

Mr. Engstrom argues that, in the order denying Mr. Engstrom's motion, there are five points of law or fact that the court has overlooked or misunderstood, that these points constitute clear error,

and that the resulting denial of the motion is manifestly unjust.

The five points of law or fact are:

1. **Judge Gordon's finding that Mr. Engstrom's keychain held a key to the freezer is not evidence that was presented at previous detention hearings and should not be considered without allowing defendant the opportunity to confront that evidence at an adversarial evidentiary hearing.**

The government states in their reply, "The parties are not seeking to include any additional facts related to danger to the community and therefore, this Court can decide the issue without conducting an unnecessary third hearing," ECF No. 76 p. 10 at n. 5. This statement contradicts the substance of the government's reply, where their arguments in favor of detention include multiple allegations that were not argued at either of the defendant's previous detention hearings. Statements such as, "Since Engstrom's most recent detention hearing, the DEA has completed laboratory testing on approximately 20 samples of the white powder recovered..." (*Id.* p. 4 n. 1) and the the government's new allegation regarding the defendant's possession of a key to a freezer (*Id.* p. 15), are examples of the government's inclusion of new facts that had not been litigated at previous hearings before the Magistrate Judge. The Court specifically cites the alleged possession of the key in their order (ECF No. 89 p. 2), making a factual finding that the key to the freezer was on Mr. Engstrom's car keys.

Mr. Engstrom argues that new information submitted by the government should not have been considered by the Court in its de novo review absent an evidentiary hearing. See *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) ("under the proper "de novo" requirement, the district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate"). Consideration of new information without allowing the defendant to confront that information is a violation of defendant's rights under the confrontation clause of the Sixth Amendment of the United States Constitution.

4

### 2. Judge Gordon's finding that a prior conviction and Mr. Engstrom's alleged involvement in the charged offenses constitutes clear and convincing evidence that he is a danger to the community is not sufficient to support such a finding.

In their ruling the Court finds that Mr. Engstrom is a danger to the community based on a prior conviction and the allegations that he was involved in the charged offense eight months after termination of supervision from a previous case. ECF No. 89 p. 2-3. Defendant argues that these circumstances alone do not support a finding that Mr. Engstrom is one of the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." *United States v. Koon*, 6 F.3d 561, 566 (9th Cir. 1993).

Mr. Engstrom argues that his previous conduct on supervision, where his exemplary conduct led to the court granting his request for early termination, indicates that he is amicable to supervision and will abide by any conditions imposed by the Court.

Additionally, Mr. Engstrom argues that the offenses charged in the indictment, at this time, are nothing more than allegations supported by probable cause. As stated in the *Ninth Circuit Model Criminal Jury Instructions 1.2*, "The indictment is not evidence and does not prove anything." It could also be argued that probable cause as required to obtain an indictment is watered-down even further, considering that the prosecution is not required to disclose exculpatory evidence in its possession when seeking an indictment. See *United States v. Williams*, 504 U.S. 36, 46, 112 S. Ct. 1735, 1741, 118 L. Ed. 2D 352 (1992). The ease of obtaining indictments is acknowledged by the Ninth Circuit in *United States v. Navarro-Vargas*, 408 F.3d 1184, 1199 (9th Cir. 2004) where the appellate court states that the skepticism that the grand jury is no more than a "rubber stamp" for the prosecutor is best summarized by the Chief Judge of New York State, when he publicly stated that "a Grand Jury would indict a 'ham sandwich'." Quoting *In re Grand Jury Subpoena of Stewart*, 144 Misc. 2d 1012, 545 N.Y.S.2d 974, 977 n.1 (Sup. Ct.), aff'd as modified, 156 A.D.2d 294, 548

N.Y.S.2d 679 (App. Div. 1989). The Seventh Circuit has also held that the ham sandwich aphorism is not far from the truth. See Tyson v. Trigg, 50 F.3d 436, 441 (7th Cir. 1995) ("Instances in which grand juries refuse to return indictments at the behest of the prosecutor are almost as rare as hen's teeth."). As such, the defendant argues that the allegations in the indictment, which are supported only by probable cause, can not rise to the level necessary to constitute the clear and convincing evidence required to support a finding of dangerousness, especially considering that the government has not submitted any forward looking evidence that Mr. Engstrom's release would endanger the community.

Furthermore, this Court's recent ruling denying the government's motion to revoke the release of one of Mr. Engstrom's co-defendants further confounds the issue of dangerousness. Mr. Elliott was ordered release pending trial by Magistrate Judge Weksler on October 8, 2021 (ECF No. 67), the government requested the District Court revoke the order for release (ECF No. 66), and this Court denied the Government's motion (ECF No. 90). It is illogical that this Court find Mr. Elliott to have rebutted the presumption of dangerousness, while making a contrary finding in regards to Mr. Engstrom. This Court found that Mr. Elliott "has prior arrests and convictions for felonies and misdemeanors. He violated conditions of pretrial release and probation in prior cases." ECF No. 90 p. 2. The government establishes in their Motion for Revocation of Magistrate Judge's Release Order (ECF No. 66) that Mr. Elliott has five previous felony convictions, including a recent conviction for which he was sentenced to 84 months imprisonment and was on Federal Supervised Release until November 5, 2019–more than three months after the alleged conspiracy commenced in this case–and has a history of committing new crimes while on pretrial release and post-conviction supervision. *Id.* p. 14. This arbitrary and disparate treatment of co-defendants who are facing roughly the same charges and potential sentences, in orders issued by this Court on the same day, is confusing to say the least. Where Mr. Engstrom's past criminal history is significantly less serious than Mr. Elliott's; Mr. Engstrom's exemplary conduct while on supervision is objectively better than

Mr. Elliott's conduct to a great degree; and Mr. Elliott was on Federal Supervised Release at the time of the offenses alleged in the instant offense, where Mr. Engstrom was not; logic would follow that if Mr. Elliott is not a danger to the community than neither should be Mr. Engstrom.

It should also be noted, it appears that the only grounds for detention the government argued at defendant's June 23, 2021, detention hearing was flight risk. Stating at oral argument, "We believe this makes Mr. Engstrom a significant risk of flight and risk of nonappearance, and so we would move for his detention." See June 23, 2021, hearing transcript p. 11 at 7-8.

**3. Judge Gordon's finding in regards to Mr. Engstrom's access to cryptocurrency, specifically that "he could access those funds if the keys are stored or copied somewhere else," is not so much a finding of fact as a finding of supposition, unsupported by evidence.**

It is undisputed that prior to June 21, 2021, Mr. Engstrom's had significant cryptocurrency holdings. He voluntarily disclosed these assets during his pre-trial interview on June 23, 2021, and proffered to the court at both his June 23, 2021, and August 4, 2021, detention hearings that the government seizure of all of his electronic devices on June 21, 2021, has effectively made access to those holdings impossible. This issue was litigated at both the June 23, 2021, and August 4, 2021, detention hearings. The government did not provide any evidence to contradict Mr. Engstrom's claim that their seizures of June 21, 2021, denied Mr. Engstrom's access to these holdings.

This Courts finding that "he could access those funds if the keys are stored or copied somewhere else," is not supported by evidence. Mr. Engstrom has been unable to find any case law that supports a finding that a theoretical "if" is sufficient to deny someones liberty and hold them in pretrial detention. Courts in the Ninth Circuit have found the opposite, " it is true that a mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." See *United States v. Simon*, 2006 U.S. Dist. LEXIS 52979 (D. Nev., July 27, 2006) quoting *United States v. Himler*, 797 F.2d 156, 162 (5th Cir. 1986) and United States v. Channon, 2020 U.S. Dist. LEXIS 127556 (W.

7

Dis. Wash. 2020) ("a mere risk of flight does not warrant pretrial detention; there must be no conditions that 'reasonably assure' the defendant's appearance.").

In this case, the government has had ample opportunity to submit evidence that Mr. Engstrom would have access to any of his cryptocurrency holdings if granted pretrial release, and has failed to do so. The government has also failed to submit evidence that Mr. Engstrom has an intent to flee, has any foreign contacts, or is otherwise predisposed to flight. Mr. Engstrom's history of appearing as required for all court hearings, and the fact that he has no record of failing to appear should weigh in the favor of pretrial release.

### 4. Judge Gordon's finding that Mr. Engstrom has not rebutted the rebuttable presumption is an error of fact and law.

Judge Gordon's finding that Mr. Engstrom has not rebutted the rebuttable presumption present in this case is an error of law.

> This presumption "shifts a burden of production to the defendant," United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008), which requires the defendant to produce "some evidence" that there are conditions that would reasonably assure his or her appearance and the community's safety, United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). "The burden of production is not a heavy one to meet" and "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of . . . the presumption." United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986).

*United States v. Rhule*, 2020 U.S. Dist. LEXIS 187335 (W. Dis. Wash. 2020). Mr. Engstrom argues that he has submitted "some evidence" to rebut the presumption. Although Magistrate Judge Weksler checked the box on Mr. Engstrom's Order of Detention stating that "The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis," (ECF No. 11 p. 2) the record of the June 23, 2021, hearing states otherwise. See June 23, 2021, transcript p. 16 at 8-9, where the court states "I do agree here with Ms. Brooks that he has met his burden of production, and I'll list some of those factors in a moment." Regardless of Magistrate Judge Weksler's finding, the record from the June 23, 2021, and August 4, 2021, detention hearings

strongly support the finding that Mr. Engstrom met his burden of production in rebutting the presumptions. Transcripts of these hearings are now available for the Courts review. See Docket.

Mr. Engstrom's Motion for District Court Review was filed prior to his receipt of the transcripts of his June 23, 2021, detention hearing, and as such Mr. Engstrom believed that Magistrate Judge Weksler had found that he did not rebut the presumptions. The oral record proves otherwise and Mr. Engstrom asks the court to find that he did in fact rebut the presumptions, which shifts the burden of persuasion to the government, and allows the court to consider the statutory scheme of 18 U.S.C. § 3142(a), which provides alternatives to a finding of detention.

### 5. Judge Gordon's order that "Engstrom has not rebutted the presumption that there are no conditions that would...assure his appearance," constitutes and error of interpretation of the Bail Reform Act of 1984.

Judge Gordon's finding that "Engstrom has not rebutted the presumption that there are no conditions that would reasonably protect the community against the risk of danger he poses and *to assure his appearance*," (ECF No. 89 p.3) implies that Mr. Engstrom must be detained absent a finding that his appearance is assured, or guaranteed. This is an error of law. See *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985) ("the district court erred in interpreting the "reasonably assure" standard set forth in the statute as a requirement that release conditions 'guarantee' community safety and the defendant's appearance."). The finding that Mr. Engstrom's appearance must be "assured" may also create an undo burden for the defendant's production of evidence to rebut the presumptions and may lower standard of persuasion required of the government in proving flight risk by a preponderance of the evidence.

## CONCLUSION

For all of the foregoing reasons, defendant requests that the court RECONSIDER its order DENYING defendant's motion (ECF No. 89), REVOKE the Detention Order and find that there are conditions that can be fashioned to ensure his appearance in court, releasing Mr. Engstrom pending trial, subject to whatever conditions the Court finds appropriate to reasonably ensure his appearance and the safety of the community as required.

DATED this 7th day of December, 2021.

Respectfully Submitted,

Paul Engstrom
*In Proper Person*