

FILED _____      RECEIVED _____
ENTERED _____      SERVED ON
COUNSEL/PARTIES OF RECORD

APR 2 8 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY _____ DEPUTY

Paul Engstrom
2190 E. Mesquite Ave
Pahrump, NV 89060
*In Proper Person*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

              Plaintiff,

              VS.

PAUL ENGSTROM

              Defendant,

CASE NO: 2:21-cr-00190-ART-EJY

**MOTION FOR RETURN OF PROPERTY**
**(Evidentiary Hearing Requested)**

      **COMES NOW**, the Defendant Paul Engstrom, in proper person, and files this Motion for

Return of Property. This Motion is based on the Fourth Amendment, Sixth Amendment, 5 U.S.C. §

701 et seq., 18 U.S.C. § 983, Fed. R. Crim. P. 41(g), the attached Memorandum of Points and

Authorities, and argument and evidence which may be presented at a hearing on this Motion.

      Dated: April 25, 2022.

                           _____

                               Paul Engstrom
                               *In Proper Person*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Statement of Law**

28 U.S.C.S. § 1355(a) and 18 U.S.C. § 981(b)(3) grant this Court has jurisdiction over the seizure of the alleged property. 28 U.S.C. § 1331 conveys jurisdiction onto this Court to rule on federal questions and this Court is a "court of competent jurisdiction," as required by 5 U.S.C. § 703.

The Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures, provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. A search or seizure pursuant to an otherwise valid warrant is unreasonable under the Fourth Amendment to the extent it exceeds the scope of that warrant. *United States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2019).

In the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, Congress imposed specific deadlines for the processing of civil forfeiture claims. When a federal agency wishes to administratively forfeit seized property, it must send written notice to all parties with an interest in the seized property and publish a notice of its intent to administratively forfeit the property. 19 U.S.C. § 1607(a); 18 U.S.C. § 983(a)(1). After that, claimants to the property must file a claim with the appropriate official in accordance with 18 U.S.C. § 983(a)(2). After a party properly files a claim, all administrative forfeiture proceedings cease and the United States Attorney for the appropriate district must, not later than 90 days after the claim has been filed, initiate judicial forfeiture proceedings by either filing a civil forfeiture complaint; or by obtaining a criminal indictment containing an allegation that the property is subject to forfeiture, and taking the steps necessary to preserve the right to maintain custody of the property as provided by the applicable forfeiture statute. 18 U.S.C. §§ 983(a)(3)(A)-(B). If the government fails to initiate judicial forfeiture proceedings within the 90 days prescribed "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any

further action to effect the civil forfeiture of such property with the underlying offense." *Id.* "[T]he time limit imposed on the government by § 983(a)(3) is mandatory . . . ." *United States v. Wilson*, 699 F.3d 789, 791 (4th Cir. 2012). The requirement that the Government release the seized property where it fails to file a timely complaint for forfeiture is the "sanction" that CAFRA imposes for such failure. See *Id.* at 795-96. ("The statute imposes a 90-day deadline on the government and provides the sanction that the property will be released if the government does not meet its deadline.").

28 C.F.R. § 8.13 codifies the regulations promulgated by the Attorney General and governs the return of property pursuant to 18 U.S.C. § 983(a)(3)(B). Subsection (a) provides, among other things, that if a complaint for forfeiture is not filed nor an indictment obtained, "the U.S. Attorney in charge of the matter shall immediately notify the appropriate seizing agency that the 90-day deadline was not met," but that, "the United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law." 28 C.F.R. § 8.13(a). Subsection (b) provides that, "Upon becoming aware that the seized property must be released, the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property." 28 C.F.R. § 8.13(b).

The Administrative Procedure Act ("APA") guides judicial review of agency actions. 5 U.S.C. § 701 et seq. The APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to challenge the agency action. 5 U.S.C. § 702. Actions that are deemed reviewable under the APA consist of "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The APA allows judicial review of agency regulations claimed to have been promulgated in excess of statutory authority. 5 U.S.C. § 706(2)(C). The relevant provision of the APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and

determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .5 U.S.C. § 706(2)(C).

The district court "shall" also "hold unlawful and set aside agency action...found to be...without observance of procedure required by law," 5 U.S.C. § 706(2)(D). Upon a finding that a party is entitled to relief, "[t]he reviewing court shall...compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

Federal Rule of Criminal Procedure Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." When criminal proceedings are already underway against the aggrieved property owner, such motions can be heard as part of the criminal case itself. *United States v. Omidi*, 851 F.3d 859, 863 (9th Cir. 2017). The Ninth Circuit has held that to prevail on such a motion, the moving party must  "demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the Government's need for the property as evidence has ended." *United States v. Crow*, 651 Fed. Appx. 686, 688-89 (9th Cir. 2016) (citing *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987)).

**II.        Statement of Facts**

Paul Engstrom ("Engstrom") is charged with a series of crimes related to alleged drug distribution and money laundering. As part of this investigation and pending case, many of Mr. Engstrom's possessions were seized.

On June 17, 2021, Special Agent Jared Jeppson applied for search warrants based on a supporting affidavit. On June 17, 2021, United States Magistrate Judge Daniel J. Albregts authorized

search warrants for 305 St. Augustine Lane[1] and 6145 Harrison Drive, Suite 4.[2] In February 2022,

these warrants were provided by the government as Bates numbered file 001062 and 001034

respectively. The warrant for 305 St. Augustine Lane identifies the place to be search as "Please see

the Attachment A-5" and the items to be seized as "Please See Attachment B." Therefore, the

entirety of the 305 St. Augustine warrant consists of the warrant and attachments A-5 and B by

reference. The warrant for 6145 Harrison Drive, Suite 4 identifies the place to be search as "Please

see the Attachment A-3" and the items to be seized as "Please See Attachment B." Therefore, the

entirety of the 6145 Harrison Drive, Suite 4 warrant consists of the warrant and attachments A-3 and

B by reference.

Attachment B[3] of the above referenced warrants does not list motorcycles or ATM machines

among the "Items To Be Seized" in any of the twenty-one categories listed.

The properties relevant to this motion are the following items, seized by the DEA on June 21,

2021, from 305 Saint Augustine Lane[4]: $15,500 U.S. Currency, 0.33081041 Bitcoins (2),

0.13613809 Bitcoins (2), 10,214.4445896 Dogecoin, 0.451462387496977257 Ethereum,

1,165.68039959 Paxos Standard, one 2020 Ducati Superleggera VIN ZDMDAGUW1LB000138 (in

crate with accessories), one 2019 Ducati MC-Racer Motorcycle VIN ZDMVABDS0KB007875, one

2019 Ducati MC-Cruiser Motorcycle VIN ZDM13BKW2KB010548, one 2018 Ducati Panigale

Motorcycle VIN ZDMDAGNW8JB003209, one 2020 Harley-Davidson MC-Touring Motorcycle

VIN 1HD1TEH23LB954585, and one 2021 Harley-Davidson MC-Cruiser Motorcycle VIN

1HD1TCL13MB952002; and the following items, seized by the DEA on June 21, 2021, from 6145

Harrison Drive[5], Suite 4: $3,500 U.S. Currency, one 2019 Ducati XDiavel Motorcycle VIN

ZDM13BKW1MB000502, and three ATM machines.

1 *See* Exhibit A, Search Warrant Case No: 2:21-mj-518-DJA dated June 17, 2021.
2 *See* Exhibit B, Search Warrant Case No: 2:21-mj-516-DJA dated June 17, 2021.
3 *See* Exhibit C, Attachment B of Search Warrants.
4 *See* Exhibit D, Warrant Inventory for 305 Saint Augustine Lane.
5 *See* Exhibit E, Warrant Inventory for 6145 Harrison Drive, Suite 4.

With the exception of the three ATM machines, the U.S. Department of Justice/Drug Enforcement Administration sent a timely "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" ("Seizure Notice") for each of the above properties. The first notice was mailed on August 16, 2021, and the latest on August 20, 2021. The time for filing a claim varied, with the earliest notice stating that a claim must be filed by 11:59 PM EST on September 20, 2021, and the latest notice stating that a claim must be filed by 11:59 PM EST on September 24, 2021. Mr. Engstrom filed a timely claim for all of the above properties on September 18, 2021 and received a confirmation[6] stating "Your Claim Has Been Filed" that day.

When a claim is filed contesting an administrative forfeiture the government must, not later than 90 days after a claim has been filed, initiate judicial forfeiture proceedings by filing a civil forfeiture complaint or by obtain a criminal indictment containing an allegation that the property is subject to forfeiture and take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute. 18 U.S.C.S. §§ 983(a)(3)(A) and (B). Based on the claim date of September 18, 2021, the deadline for initiating judicial forfeiture proceedings was December 17, 2021. As of the filing of this motion the United States has not initiated judicial forfeiture proceedings against any of the property listed above, and as such, is forever precluded from taking any further action to effect the civil forfeiture of such property. *Id.*

On February 11, 2022, Mr. Engstrom received a letter[7] date stamped Feb 3, 2022, from David A. Zekoski, a Senior Attorney in the Asset Forfeiture Section of the DEA, which provided notice that the DEA had made the decision to return seven (7) of the above referenced properties. These properties are: $15,700[8] U.S. Currency, $3,500 U.S. Currency, 0.33081041 Bitcoins (2), 0.13613809 Bitcoins (2), 10,214.4445896 Dogecoin, 0.451462387496977257 Ethereum, and 1,165.68039959 Paxos Standard. In this letter the Asset ID numbers of each property corresponded

---

6 *See* Exhibit F, Confirmation of filing of Claim with a tracking number of 2178-4CB-172-C9E, dated Sept. 18, 2021.
7 *See* Exhibit G, Letter from Drug Enforcement Administration stating property would be returned, dated Feb. 3, 2022.
8 The amount of U.S. Currency that was reported seized for this asset in the Seizure Notice was $15,500.

with the Asset ID number listed on the Seizure Notice. Included with this letter were two serial numbered Unified Financial Management System (UFMS) Vendor Request Forms, where the serial number on the bottom of each form corresponded with the Asset ID of one of the seizures of U.S. Currency. There were no forms or other information provided to effectuate the return of the listed Bitcoins, Dogecoin, Ethereum, and Paxos Standard. On February 18, 2022, Mr. Engstrom sent a letter[9] to Mr. Zekoski seeking to facilitate the return of the seized U.S. Currency and asking for contact information for the property custodian responsible for the Bitcoins, Dogecoin, Ethereum, and Paxos Standard in order to facilitate their return. As of the date of filing of this motion this letter has received no reply and none of this property has been returned.

On February 18, 2022, Mr. Engstrom sent a letter[10] to AUSAs Kimberly Sokolich and Christopher Burton requesting the return of the seven motorcycles that were seized on June 21, 2021. In this letter Mr. Engstrom explained that the government was over 60 days past the December 17, 2021, deadline to initiate judicial forfeiture proceedings, and as such 18 U.S.C. § 983(a)(3)(B) required that "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." In a letter[11] dated March 16, 2022, Mr. Engstrom received a reply from AUSAs Sokolich and Burton, on behalf of Acting United States Attorney Christopher Chiou. This letter stated that, in accordance with 28 C.F.R. § 8.13(a), the United States was declining to return the property identified as it constitutes evidence of a crime and may be subject to forfeiture.

There is no dispute that the above referenced properties are owned by Mr. Engstrom. Mr. Engstrom has receipts and/or DMV documents for the seven motorcycles that corroborate this fact. The seven properties that the DEA has decided to return were either taken directly from Mr.

---

9 *See* Exhibit H, Letter From Mr. Engstrom to DEA Counsel Zekoski, dated Feb. 18, 2022.
10 *See* Exhibit I, Letter From Mr. Engstrom to AUSAs Sokolich and Burton, dated Feb. 18, 2022.
11 *See* Exhibit J, Letter from AUSAs Sokolich and Burton refusing to return property, dated March 16, 2022.

Engstrom or from one of his residences. The ATM machines are owned by Mr. Engstrom and are used in his ATM business. No other party has claimed ownership of these properties.

## III. Legal Argument

### A. The Court Should Find that the Regulations Stated in 28 C.F.R. § 8.13 (a) are Invalid Under the APA

Mr. Engstrom argues that the regulation as promulgated and enacted by the Attorney General in 28 C.F.R. § 8.13 to effectuate the return of property as required by 18 U.S.C. § 983(a)(3)(B) are in excess of statutory authority and therefore within this Court's scope of review in accordance with 5 U.S.C. §§ 703 and 706. Mr. Engstrom has standing as a person who is aggrieved by agency action as required by 5 U.S.C. § 702. Specifically, the government has refused to return his personal property as required by 18 U.S.C. § 983(a)(3)(B) which prescribes that "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." Promulgated regulations that have the force of law, are in final approved form, and are currently in effect are sufficient to satisfy the "final agency action" criteria. *See Romeo Community Schools v. United States Dep't of Health, Education, & Welfare,* 438 F. Supp. 1021, 14 Empl. Prac. Dec. (CCH) ¶7704, 14 Fair Empl. Prac. Cas. (BNA) 1177 (E.D. Mich. 1977), aff'd, 600 F.2d 581, 20 Empl. Prac. Dec. (CCH) ¶30029, 19 Fair Empl. Prac. Cas. (BNA) 1720 (6th Cir. 1979). Here, the regulation in question, 28 C.F.R. § 8.13, satisfies all three of those criteria, and is therefore ripe for judicial review. Mr. Engstrom also asserts that he has no other adequate remedy of law.

The statute and regulation in question are 18 U.S.C. § 983(a)(3)(B) and 28 C.F.R. § 8.13. 18 U.S.C. § 983(a)(3)(B) relates to the return of property that has been previously seized, where, after a claim is filed in response to a Notice of Administrative Forfeiture, the government has failed to seek judicial forfeiture within 90-days from the date the claim was filed. This section of the statute states "the Government shall promptly release the property pursuant to regulations promulgated by the

Attorney General." 28 C.F.R. § 8.13 codifies the regulations that were promulgated by the Attorney General to effectuate the release of property in accordance with 18 U.S.C. § 983(a)(3)(B). As such, 28 C.F.R. § 8.13 is titled "Return of property pursuant to 18 U.S.C. 983(a)(3)(B)."

28 C.F.R. § 8.13(a) states:

If, under 18 U.S.C. 983(a)(3), the United States is required to return seized property, the U.S. Attorney in charge of the matter shall immediately notify the appropriate seizing agency that the 90-day deadline was not met. Under this subsection, the United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law.

The problematic part of 28 C.F.R. § 8.13(a) is the second sentence, beginning with "Under this subsection..." This part of the regulation is in excess of statutory authority and limitations, contrary to the clear intention of Congress, and therefore within the scope of review as defined by 5 U.S.C. § 706(2)(C). To support this conclusion one must only look at the statute for which 28 C.F.R. § 8.13 was promulgated to effectuate, 18 U.S.C. § 983(a)(3)(B). Subsection 983(a)(3) states:

(3)(A) Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

(B) If the Government does not—

(I) file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or

(ii) before the time for filing a complaint has expired—

(I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and

(II) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute,

the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.

(C) In lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment. If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute.

(D) No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property.

In 28 C.F.R. § 8.13(a), the second sentence states "Under this subsection, the United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law."[12] On a plain reading of § 983(a)(3) one can see that the statute does not include language that makes the return of property under 983(a)(3)(B) conditional or discretionary, yet this part of the regulation injects both conditions and discretion, leading to a result other than the prompt release of property that Congress intended. Congressional intent becomes clear by analyzing the use of the word "shall" and considering the statutory construction of 18 U.S.C. § 983.

The mandatory implication imbued by Congress when choosing to use the word "shall" in a statute is well settled in the Ninth Circuit and recognized by the United States Supreme Court. The Honorable Valerie Baker Fairbank, Senior United States District Judge for the Central District of California, often explains this tenet in her rulings, stating:

> It is a venerable principle of construction that the word "shall" indicates that the action is mandatory. See *Sebelius v. Auburn Regional Med. Ctr.*, U.S., 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013); *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661, 127 S. Ct. 2518, 168 L. Ed. 2d 467 (2007); see also Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts 112* (2012) (referring to "[t]he traditional, commonly repeated rule . . . that shall is mandatory and may is permissive"); cf. *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) ("Ordinarily, legislation using 'shall' indicates a mandatory duty while legislation using 'may' grants discretion.") (citing *Lopez v. Davis*, 531 U.S. 230, 241, 121 S. Ct. 714, 148 L. Ed. 2D 635 (2001)).

*Henderson v. Madden*, 2016 U.S. Dist. LEXIS 73445 (C. D. Cal. 2016). Further support can be found in the Supreme Court's ruling in *Maine Community Health Options v. United States*, 140 S.

---

12 It is unclear if the subsection referenced as "Under this subsection" is 18 U.S.C. § 983(a)(3), which is the statute the regulation cites for authority in the previous sentence, or 28 C.F.R. § 8.13(a), the regulation itself. Either interpretation leads to the same conclusion — that the regulation exceeds statutory authority and contradicts the clear intent of Congress.

Ct. 1308, 1320, 206 L. Ed. 2D 764, 780 (2020), where the Court states:

> The first sign that the statute imposed an obligation is its mandatory language: "shall." "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Technologies, Inc. v. United States*, 579 U.S. ___, ___, 136 S. Ct. 1969, 195 L. Ed. 2d 334 (2016); see also *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998) (observing that " 'shall' " typically "creates an obligation impervious to . . . discretion").

Here, the plain text of the statute states, "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General." 18 U.S.C. § 983(a)(3)(B). The intention of Congress could not be more unambiguous, the property shall be promptly released. The use of the word "shall" indicates the creation of a discretionless obligation. Therefore, the regulations promulgated by the Attorney General to effectuate the return of such property must lead to only one end, the prompt release of the property. As enacted,  28 C.F.R. § 8.13 does not lead to this end. The inclusion of the second sentence of subsection (a) creates conditions subsequent that Congress did not intend, making the return of property subject to both discretion and conditions.

The tenets of statutory construction also strongly support a finding that 28 C.F.R. § 8.13 is invalid as written. "When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)). Here, one not need to look for differences in another section of the same Act but only at different subsections of 18 U.S.C. 983 to find a deliberate inclusion or exclusion that supports a finding that in 18 U.S.C. § 983(a)(3)(B) Congress intended to require the unconditional return of property. Upon comparing 18 U.S.C. § 983(a) with 18 U.S.C. §§ 983(f)(1), (6), and (8) the intent of Congress becomes readily apparent. 18 U.S.C. § 983(f), which allows for the release of seized property under circumstances different from § 983(a), imposes various conditions, stating in pertinent parts:

(1) A claimant under subsection (a) is entitled to immediate release of seized property if—

    (A) the claimant has a possessory interest in the property;

    (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;

    (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

    (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and

    (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1);

(6) If—

    (A) a petition is filed under paragraph (3); and

    (B) the claimant demonstrates that the requirements of paragraph (1) have been met,

    the district court shall order that the property be returned to the claimant, pending completion of proceedings by the Government to obtain forfeiture of the property.

18 U.S.C. § 983(f)(6); and

(8) This subsection shall not apply if the seized property—

    (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;

    (B) is to be used as evidence of a violation of the law;

    (C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or

    (D) is likely to be used to commit additional criminal acts if returned to the claimant.

18 U.S.C. § 983(f)(8).

Subsection (f) of 18 U.S.C. § 983 expressly creates conditions precedent and subsequent that must be considered prior to the return of property. The condition stated in 18 U.S.C. § 983(f)(1)(E), requiring that "none of the conditions set forth in paragraph (8) applies," is especially enlightening, as this clause, in its reference to 18 U.S.C. § 983(f)(8), creates the following disqualifying

conditions subsequent; (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized; (B) is to be used as evidence of a violation of the law; (C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or (D) is likely to be used to commit additional criminal acts if returned to the claimant.

The decision by Congress to exclude from 18 U.S.C. § 983(a) the language from 18 U.S.C. § 983(f) that created conditions to the release of property must be viewed as both intentional and purposeful. Had Congress intended to create conditions to the release property in § 983(a)(3)(B), it would have done so expressly as it did in § 983(f)(1). Again, the intent of Congress is clear — § 983(a)(3)(B) provides for the prompt release of property, without condition or discretion.

Additionally, the Supreme Court has advised that courts should hesitate "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Republic of Sudan v. Harrison*, 587 U. S. ___, ___, 139 S. Ct. 1048, 203 L. Ed. 2d 433, 443 (2019)) (quoting *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U. S. 825, 837, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988)). The conditions created by § 983(f)(1) and listed in §§ 983(f)(8)(A) and (B) that state that the release of property is not available if the seized property is "contraband" or "evidence of a violation of the law" would be meaningless had § 983(a)(3)(B) achieved the same end with silence.

Under 5 U.S.C. § 706(2)(C), a court must "set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Under this provision, courts apply the two-step framework established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1014 (9th Cir. 2008). The *Chevron* two-step analysis focuses on Congressional intent:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has

1   directly spoken to the precise question at issue. If the intent of Congress is clear, that is
2   the end of the matter; for the court, as well as the agency, must give effect to the
    unambiguously expressed intent of Congress. If, however, the court determines
    Congress has not directly addressed the precise question at issue, . . . the question for the
3   court is whether the agency's answer is based on a permissible construction of the
    statute. 467 U.S. At 842-43.

4       Here, Congress has spoken, and the statute unambiguously requires the prompt return of
5   property. Therefore, Congressional intent is clear and the first prong of *Chevron* is satisfied,
6   stopping the need for further inquiry. The Court should find that the second sentence of 28 C.F.R. §
7   8.13(a) is an unlawful agency action as described in 5 U.S.C. § 706(2)(C). As such, Congress directs
8   that the Court shall, without discretion, hold unlawful and set aside the agency action that is in
9   excess of statutory authority and limitations. *Id*. Mr. Engstrom suggests that the correct form of
10  relief is for this Court to issue a Declaratory Judgment excising the second sentence of 28 C.F.R. §
11  8.13(a). This would effectively set aside the unlawful agency action. The remaining regulation
12  would then comport with the clear text of the statute and give effect to the expressed intent of
13  Congress.

14

15  **B. The Court Should Order the DEA to Promptly Return the Property They Have**
16      **Indicated They Would Return**

17      Mr. Engstrom asks this Court to order the government to return the properties that their
18  February 3, 2022, letter declared they would return.[13] Mr. Engstrom argues that this is within the
19  Court's authority under 5 U.S.C. § 706(1), which allows the court to "compel agency action
20  unlawfully withheld or unreasonably delayed." As stated *supra*, the 90-day deadline for the
21  government to initiate judicial forfeiture proceedings expired on December 17, 2021. As such, Mr.
22  Engstrom was entitled to the prompt return of his property on December 18, 2021. While the statute
23  fails to define a specific time frame that qualifies as "prompt," courts have found that a delay of 30
24  days is not "prompt." *See United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572 (9th Cir. 1987)

25

26  ──────────────
    13 *See* Exhibit G.

(30 day delay...was not "prompt"). As of the filing of this motion, the government has retained Mr. Engstrom's property for over 120 days past the December 17, 2021, deadline, and over 60 days past the date on the letter which stated the property would be returned.

The relevant properties are: $15,500 U.S. Currency, $3,500 U.S. Currency, 0.33081041 Bitcoins (2), 0.13613809 Bitcoins (2), 10,214.4445896 Dogecoin, 0.451462387496977257 Ethereum, and 1,165.68039959 Paxos Standard.

Mr. Engstrom asks the Court to order the prompt return of the $15,500 in U.S. Currency that was seized. In this case the $15,500 seized from 305 St. Augustine Lane consisted of one-hundred uncirculated and sequential one-hundred dollar Federal Reserve notes, Federal Reserve "star" notes, and antique Federal Reserve notes dating back to as far as pre-1934. Mr. Engstrom argues that, due to the collectible nature and rarity of these notes, their value exceeds their face value, and therefore they are property other than money and are not considered fungible. See *Smith v. Comm'r, T.C.Memo*. 1998-148, 1998 WL 191835, at *3 (U.S. Tax Ct. 1998) ("When the fair market value of legal tender exceeds its face value, such legal tender is property other than money."). Alternatively, Mr. Engstrom requests that the actual U.S. Currency be ordered returned in accordance with 18 U.S.C. § 983(a)(3)(B), which requires that "the Government shall promptly release the property..." This statute requires that the actual property seized be returned, and does not authorize the government to return substitute property.

Mr. Engstrom asks the Court to order the prompt return of the $3,500 in U.S. Currency that was seized. Mr. Engstrom asks that the the actual U.S. Currency be ordered returned in accordance with 18 U.S.C. § 983(a)(3)(B), which requires that "the Government shall promptly release the property..." This statute requires that the actual property seized be returned, and does not authorize the government to return substitute property.

Mr. Engstrom asks the Court to order the prompt return of 0.33081041 Bitcoins (2), 0.13613809 Bitcoins (2), 10,214.4445896 Dogecoin, 0.451462387496977257 Ethereum, and

1 1,165.68039959 Paxos Standard. DEA Forfeiture Counsel Zekoski's letter stated that the DEA had

2 decided to return the above listed properties, but that letter did not identify the property custodian

3 whom Mr. Engstrom needs to contact to effectuate their return. See 28 C.F.R. § 8.13(b), "[u]pon

4 becoming aware that the seized property must be released, the agency shall promptly notify the

5 person with a right to immediate possession of the property, informing that person to contact the

6 property custodian within a specified period for release of the property." On February 18, 2022, Mr.

7 Engstrom sent a letter to the DEA Forfeiture Counsel requesting the contact information for the

8 property custodian. As of the filing of this motion he has received no reply.

9 **C. The Court Should Return Seven Motorcycles Pursuant to 18 U.S.C. § 983(a)(3)(B)**

10 Mr. Engstrom asks the Court to order, in accordance with 18 U.S.C. § 983(a)(3)(B), the

11 prompt return of the seven motorcycles that were seized on June 21, 2021. Mr. Engstrom argues that

12 this is within the Court's authority under 5 U.S.C. § 706(1). Mr. Engstrom has availed himself of all

13 legal remedies set forth in CAFRA, has come through empty-handed, and is left with no adequate

14 legal remedy. As stated supra, the 90-day deadline for the government to initiate judicial forfeiture

15 proceedings expired on December 17, 2021. As such, Mr. Engstrom was entitled to the prompt

16 return of his property on December 18, 2021. While the statute fails to define a specific time frame

17 that qualifies as "prompt", courts have found that a delay of 30 days is not "prompt." See *United*

18 *States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572 (9th Cir. 1987) (30 day delay...was not "prompt").

19 As of the filing of this motion, the government has retained Mr. Engstrom's property for over 120

20 days past the December 17, 2021, deadline.

21

22 The relevant properties are: one 2020 Ducati Superleggera VIN ZDMDAGUW1LB000138

23 (in crate with accessories), one 2019 Ducati MC-Racer Motorcycle VIN ZDMVABDS0KB007875,

24 one 2019 Ducati MC-Cruiser Motorcycle VIN ZDM13BKW2KB010548, one 2018 Ducati Panigale

25 Motorcycle VIN ZDMDAGNW8JB003209, one 2020 Harley-Davidson MC-Touring Motorcycle

26 VIN 1HD1TEH23LB954585, one 2021 Harley-Davidson MC-Cruiser Motorcycle VIN

1HD1TCL13MB952002; and one 2019 Ducati XDiavel Motorcycle VIN

ZDM13BKW1MB000502.[14]

Citing 18 U.S.C. § 983(a)(3)(B), the Ninth Circuit has found that failure to institute a judicial forfeiture within 90 days of the submission of a claim requires that the property be returned to the claimant. See *Carvajal v. United States*, 521 F.3d 1242, 1248 (9th Cir. 2008) ("A failure to institute a timely judicial forfeiture proceeding requires the return of the property and constitutes a waiver of the right to seek civil forfeiture in connection with the same underlying offense.") This holding is binding precedent in this circuit.

On February 18, 2022, Mr. Engstrom sent a letter to Assistant United States Attorneys Kimberly Sokolich and Christopher Burton requesting the return of the above motorcycles. Mr. Engstrom received the government's response in a letter dated March 16, 2022. In this letter the government stated, "[t]he United States is declining to return the property you identify in that letter at this time as it constitutes evidence of violations of the law, namely those charged in your indictment. *See* 28 C.F.R. § 8.13(a). Additionally, these items may be subject to forfeiture." As argued extensively supra, the portion of 28 C.F.R. § 8.13(a) that allows the government to retain property that "shall" be returned pursuant to 18 U.S.C. § 983(a)(3)(B) is unlawful. Therefore, this Court, as allowed by 5 U.S.C. § 706(1), should compel the agency action unlawfully withheld or unreasonably delayed, and order the prompt return of the motorcycles in accordance with § 983(a)(3)(B) and as required by *Carvajal*.

**D. The Court Should Return Three ATM Machines Pursuant to Fed. R. Crim. P. 41(g)**

Mr. Engstrom hereby moves, in accordance with Federal Rule of Criminal Procedure 41(g), for the return of three ATM machines that were seized without a warrant on June 21, 2021. The Fourth Amendment to the United States Constitution, which protects against unreasonable searches

---

14 *See* Exhibits D and E.

1   and seizures, provides that "no warrants shall issue, but upon probable cause, supported by oath or

2   affirmation, and particularly describing the place to be searched, and the persons or things to be

3   seized." U.S. Const. Amend. IV. A search or seizure pursuant to an otherwise valid warrant[15] is

4   unreasonable under the Fourth Amendment to the extent it exceeds the scope of that warrant. *United*

5   *States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2019). Mr. Engstrom argues that the seizure of the

6   three ATM machines on June 21, 2021, constitutes an illegal seizure, as they were seized outside of

7   the scope of the search warrant issued. *See United States v. Tamura*, 694 F.2d 591, 595 (9th Cir.

8   1982) ("As a general rule, in searches made pursuant to warrants only the specifically enumerated

9   items may be seized.").

10      The Ninth Circuit has held that to prevail on such a motion, the moving party must

11   "demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is

12   evidence has ended." *United States v. Crow*, 651 Fed. Appx. 686, 688-89 (9th Cir. 2016) (citing

13   *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987)). Mr. Engstrom asserts that

14   he satisfies all three criteria, he is entitled to lawful possession of the ATM machines, the ATM

15   machines are not contraband, and the ATM machines were illegal seized.

16      First, the ATM machines seized are lawfully owned property of Mr. Engstrom that are

17   utilized in his ATM business. Second, the ATM machines are not contraband. Third, the seizure of

18   the ATM machines were outside the scope of the search warrant and therefore illegal. This satisfies

19   the first of the two possible criteria listed in the third-prong of *Crow* and *Van Cauwenberghe*.

20      To prove the illegality of the seizure of the ATM machines one must only look as far as the

21   search warrant that was issued for 6145 Harrison Drive, Suite 4.[16] This warrant, issued by United

22   States Magistrate Judge Honorable Daniel J. Albregts on June 17, 2021, consists of three documents:

23   the warrant; Attachment A-3, which is incorporated by reference and describes the "Premises To Be

---

15 Mr. Engstrom does not concede that the warrants were in fact valid and reserves the right to challenge their validity
based upon further investigation, information, and discovery.
16 *See* Exhibit B.

Searched"; and Attachment B[17], which is incorporated by reference and describes the "Items To Be Seized". Attachment B lists twenty-one (21) categories of items to be seized. ATM machines are not listed in any of these categories. Interestingly, the ATM machines are not listed in the inventory of property seized[18], yet in the discovery provided by the government the ATM machines are noted as Exhibit N-162 and are described as being seized from Room A at 6145 Harrison, Unit 4 by SA Kurinec, witnessed by SA Barret on June 21, 2021. From the government provided Report of Investigation designated as Bates 000307:

```
Exhibit N-162 is three empty ATM machines seized from Room A at 6145
Harrison, Unit 4. The exhibit was seized by SA Kurinec, witnessed by SA
Barrett on June 21, 2021. The exhibit was transported to the LVDO where it
was submitted to Locker Storage by SA Kurinec. On July 14, 2021, SA
Kurinec removed the exhibit from Locker Storage and processed it as an
exhibit, as witnessed by TFO Noahr. On the same date, the exhibit was
returned to Locker Storage by SA Kurinec. On July 16, 2021, TFO Noahr
removed the exhibit from Locker Storage and submitted it to the LVDO Non-
Drug Evidence Vault.
```

Where, as stated in *Ramirez*, a seizure is unreasonable under the Fourth Amendment to the extent it exceeds the scope of a warrant, there can be no other conclusion than that the seizure of the ATM's was unreasonable and therefore illegal. The ATM machines in question were not listed among the "Items To Be Seized" in Attachment B, so their seizure exceeds the scope of the issued warrant. Therefore, the seizure of the ATM machines must be considered unreasonable and in violation of the particularity requirement of the Fourth Amendment and they should be returned.

**E. Alternatively, The Court Should Return Seven Motorcycles Pursuant to Fed. R. Crim. P. 41(g)**

Mr. Engstrom advances the following argument and request for relief as an alternative to that which was requested supra in the section titled The Court Should Return Seven Motorcycles Pursuant to 18 U.S.C. § 983(a)(3)(B).

Generally, the Ninth Circuit has held that a Rule 41(g) motion must be denied once a civil

---

17 *See* Exhibit C.
18 *See* Exhibit E.

forfeiture action has been initiated. This is exclusively due to the adequate legal remedy that is available through the initiated forfeiture proceedings, including administrative forfeiture. *See Return of Seized Prop. v. United States*, 625 F.Supp.2d 949, 955 (C.D. Cal. 2009) ( "the Ninth Circuit has held that a Rule 41(g) motion is properly denied once a civil forfeiture action has been filed."); *In re Seizure of One Blue Nissan Skyline Auto.*, 2009 U.S. Dist. LEXIS 105884, 2009 WL 3488675,*1 (C.D. Cal. 2009) (same); *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988) ("[W]hen a civil forfeiture proceeding has been filed, the claimant has adequate remedies to challenge any fourth amendment violation . . . . [Thus,] there is no need to fashion an equitable remedy to secure justice for the claimant."); and *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("where a claimant has received adequate notice of an earlier administrative forfeiture proceeding, and thus has had an adequate remedy at law."). Mr. Engstrom argues that all of the above cases are distinguishable from the instant case. In each of the above cases there were active forfeiture proceedings when the Rule 41(g) motion was filed. Compare this with the instant case, where, through government inaction, the administrative forfeiture proceedings have ended and the government may not take any further action to effect the civil forfeiture of the property.

Here, if Mr. Engstrom's request for review under the APA and the requested relief are not granted by this Court, he is left with no adequate legal remedy as there are no forfeiture proceedings pending. Having reached the end of the administrative forfeiture process, Mr. Engstrom would then ask the Court to consider this a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g).

A search or seizure pursuant to an otherwise valid warrant is unreasonable under the Fourth Amendment to the extent it exceeds the scope of that warrant. *United States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2019). Mr. Engstrom argues that the seizure of his seven motorcycles on June 21, 2021, constitutes an illegal seizure, as they were seized outside of the scope of the search warrant issued. *See United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) ("As a general rule, in

searches made pursuant to warrants only the specifically enumerated items may be seized.").

Under Federal Rule of Criminal Procedure 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." To prevail on a motion for return of property, the moving party must "demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the Government's need for the property as evidence has ended." *United States v. Crow*, 651 Fed. Appx. 686, 688-89 (9th Cir. 2016) (citing *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987)). Mr. Engstrom asserts that his motorcycles should be returned as he is entitled to their lawful possession, the motorcycles are not contraband, and they were illegally seized.

To satisfy criteria (1) Mr. Engstrom asserts that he is the lawful owner of all seven motorcycles. He has DMV documents and or receipts that corroborate this fact. To satisfy criteria (2) Mr. Engstrom asserts that the motorcycles are not contraband. Criteria (3) requires more consideration, as discussed below.

The motorcycles were seized on June 21, 2021, during the execution of search warrants issued by the United States Magistrate Judge Daniel J. Albregts. Without litigating the underlying validity of the warrants beyond that is which necessary to determine if the motorcycles were legally seized, Mr. Engstrom argues the following.

A search warrant, applied for by Special Agent Jared Jeppson and supported by an affidavit, was issued by the United States Magistrate Judge Daniel J. Albregts on June 17, 2021, authorizing the search of 305 St. Augustine Lane or before July 1, 2021.[19] This warrant consists of three documents: Attachment A-5, which is incorporated by reference and describes the "Premises To Be Searched"; and Attachment B[20], which is incorporated by reference and describes the "Items To Be

---

19 *See* Exhibit A.
20 *See* Exhibit C.

Seized". Attachment B lists twenty-one (21) categories of items to be seized. Motorcycles are not listed in any of the categories of items to be seized in Attachment B.

Six motorcycles were seized from 305 St. Augustine Drive on June 21, 2021. These were one 2020 Ducati Superleggera VIN ZDMDAGUW1LB000138 (in crate with accessories), one 2019 Ducati MC-Racer Motorcycle VIN ZDMVABDS0KB007875, one 2019 Ducati MC-Cruiser Motorcycle VIN ZDM13BKW2KB010548, one 2018 Ducati Panigale Motorcycle VIN ZDMDAGNW8JB003209, one 2020 Harley-Davidson MC-Touring Motorcycle VIN 1HD1TEH23LB954585, and one 2021 Harley-Davidson MC-Cruiser Motorcycle VIN 1HD1TCL13MB952002.[21]

A search warrant, applied for by Special Agent Jared Jeppson and supported by an affidavit, was issued by the United States Magistrate Judge Daniel J. Albregts on June 17, 2021, authorizing the search of 6145 Harrison Drive, Suite 4 on or before July 1, 2021.[22] This warrant consists of three documents: Attachment A-3, which is incorporated by reference and describes the "Premises To Be Searched"; and Attachment B, which is incorporated by reference and describes the "Items To Be Seized". Attachment B lists twenty-one (21) categories of items to be seized. Motorcycles are not listed in any of the categories of items to be seized in Attachment B.

One motorcycle was seized from 6145 Harrison Drive, Suite 4 on June 21, 2021. This was one 2019 Ducati XDiavel Motorcycle VIN ZDM13BKW1MB000502.[23]

The Ninth Circuit reiterated the fundamental importance of particularity in warrants in their decision in *United States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2019), stating:

> The particularity requirement serves foundational constitutional interests and must be zealously protected. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231, Treas. Dec. 42528 (1927). In addition, the particularity requirement "assures the individual whose property is searched or seized of the lawful

---

21 *See* Exhibit D.
22 *See* Exhibit B.
23 *See* Exhibit E at p.1. Although added to the return, this motorcycle was not included in the inventory left at the property at the conclusion of the search.

1   authority of the executing officer, his need to search, and the limits of his power to

2   search," *Groh v. Ramirez*, 540 U.S. 551, 561, 124 S. Ct. 1284, 157 L. Ed. 2d 1068

    (2004) (citation omitted), and "greatly reduces the perception of unlawful or intrusive

3   police conduct," *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527

    (1983). To serve these ends, the particularity requirement leaves nothing "to the

4   discretion of the officer executing the warrant." *Marron*, 275 U.S. At 196.

5   Further stating, "Thus, a search or seizure pursuant to an otherwise valid warrant is unreasonable

6   under the Fourth Amendment to the extent it exceeds the scope of that warrant." quoting *Horton v.*

7   *California*, 496 U.S. 128, 140, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). *Id*. Without conceding

8   that the warrant was otherwise valid, Mr. Engstrom asserts that the seizure of all seven motorcycles

9   was outside the scope of the warrants issued by the Magistrate Judge. Motorcycles were not listed as

10  "Items to be Seized" in Attachment B, therefore their taking must be considered an illegal

11  warrantless seizure in violation of the Fourth Amendment. This is sufficient to satisfy the third-

12  prong of *Crow* and *Van Cauwenbergh*.

13
           **F.  Defendants Right to Counsel is Threatened by Lack of Funds**
14
           As an additional consideration, Mr. Engstrom argues that the governments restraint of his

15
16  assets is preventing him from hiring the attorney of his choice. In addition to the assets above, the

17  government has made every attempt to restraint all of Mr. Engstrom's assets. This has left Mr.

18  Engstrom indigent and unable to hire representation in this matter.[24] "The Sixth Amendment

19  guarantees a defendant the right to be represented by an otherwise qualified attorney whom that

20  defendant can afford to hire." *Luis v. United States*, 136 S. Ct. 1083, 1089, 194 L. Ed. 2D 256

21  (2016). The Supreme Court has held that the pre-trial seizure of untainted assets can violate

22  adefendant's Sixth Amendment right to counsel if lack of funds prevents the defendant from hiring

23  the attorney of their choice. *Id*. at 1090. Mr. Engstrom argues that the continued restraint of his

24  above referenced properties, in addition to other assets restrained by the government, have denied

25
_____
26  24 *See* ECF No. 4.

him the right to hire counsel that he would otherwise have been able to afford to retain, a violation of his Sixth Amendment rights.

## IV.      Conclusion

After failing to abide by the procedures established by Congress in CAFRA, the government declined to promptly return property as mandated by statute and binding Ninth Circuit precedent. This failure was, at least in part, due to the governments reliance on a regulation promulgated by the Attorney General that is unlawful. For the reasons outlined above, Mr. Engstrom requests this Court to set aside the unlawful regulation and order the prompt return of his seven motorcycles as mandated by statute, or alternatively order the return of his seven motorcycles in accordance with Fed. R. Crim. P. 41(g), releasing the property to him or his agent. Additionally, Mr. Engstrom requests this Court to order the government to promptly return, to him or his agent, the seven properties they have indicated they would return. Mr. Engstrom also requests this Court to order the return of his three ATM machines, releasing these properties to him or his agent. Alternatively, Mr. Engstrom requests this Court set an evidentiary hearing to permit further factual development.

Dated: April 25, 2022.

Respectfully Submitted,

_Paul Engstrom_

Paul Engstrom
*In Proper Person*

# EXHIBIT A

## (Search Warrant Case No: 2:21-mj-518-DJA)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original         ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Nevada

FILED.

DATED: 3:10 pm, June 17, 2021

U.S. MAGISTRATE JUDGE

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
305 ST. AUGUSTINE LANE,
HENDERSON, NEVADA 89014

)
)
)
)
)
)

Case No.  2:21-mj-518-DJA

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Nevada _____
*(identify the person or describe the property to be searched and give its location)*:

Please see the Attachment A-5.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see the Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before         July 1, 2021         *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to         Honorable Daniel J. Albregts         
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   June 17, 2021 2:34 p.m.

_____
*Judge's signature*

City and state:     Las Vegas, Nevada              Honorable Daniel J. Albregts, U.S. Magistrate Judge
*Printed name and title*

US-001062

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>2:21-mj-518-DJA | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

US-001063



SEALED

US-001064

1

## ATTACHMENT "A-5"

2

### PREMISES TO BE SEARCHED – SUBJECT PREMISES 5

3        1.   The premises to be searched is described as follows, and include all locked and

4   closed containers, including safes, lockboxes, and vehicles found on or directly adjacent to the

5   property, found therein:

6            305 Saint Augustine Lane, Henderson, Nevada 89014 is a residential
             home leased by Virginia ENGSTROM. Subject Premises is a two story,
7            single family residence having primarily beige stucco exterior with light
             brown trim.  The residence has two separate garage doors that are beige
8            in color and face east. The numbers "305" are affixed to the east side of
             the residence to the right side of the north garage door. The front door of
9            the residence is brown in color and faces the east. Photo of Residence:



22

23

24

43

1
2

## ATTACHMENT "B"

### ITEMS TO BE SEIZED

3       1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of

4   violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1)  Distribution of

5   and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit

6   Controlled Substance Offense), and 843(b) (Unlawful Use of a Communication Facility,

7   Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "Subject

8   Offenses"), namely:

9       a.  Controlled substances, including cocaine and the items commonly associated with

10          the packaging and sales of controlled substances, including commercial plastic wrap,

11          plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

12       b.  Counterfeit controlled substances.

13       c.  Records reflecting the use of a dark web moniker or handle, or other online monikers

14          or pseudonyms, reflecting the use of vendor or buyer accounts on dark web

15          marketplaces.

16       d.  Records concerning the establishment or management of an online or dark web

17          controlled substance retail business, including documents and other records relating

18          to the creation or hosting of websites, evidence of dark web or Tor Browser access,

19          merchant accounts for customer transactions, product vendors or sources of supply,

20          invoices, order forms, and communications with co-conspirators and others about

21          any of the aforementioned subjects.

22       e.  Records concerning financial transactions associated with the operations or proceeds

23          of an online or dark web controlled substance retail business, including any paper or

24

US-001066

1       digital account opening documents, statements, deposit slips, checkbooks, orders or

2       confirmations of wire transfers.

3   f.  Records of any accounts or transactions within the traditional banking or credit

4       systems or via cryptocurrencies.

5   g.  Digital currency, cryptocurrency (or digital currency) private keys, and digital

6       currency recovery seeds, as further explained in paragraph 4 below.

7   h.  Packing material or inserts relating to any transactions with any cash-for-

8       cryptocurrency exchange.

9   i.  Books, records, correspondence, narcotic customers lists, narcotic suppliers lists,

10       ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts,

11       letters and memoranda of agreements between potential co-conspirators, formulas,

12       receipts, phone records, phone books, address books, notations and other papers,

13       and any files relating to the transporting, ordering, purchasing, or distributing of

14       controlled substances.

15   j.  Indicia of occupancy, residency, and/or ownership of the previously described

16       property, premises, or vehicles, and any other property, premises, or vehicles,

17       including utility and telephone bills, canceled mail, deeds, leases, rental agreements,

18       photographs, personal telephone books, diaries, envelopes, registration, receipts, and

19       keys which tend to show the identities of the occupants, residents, and/or owners,

20       not to exceed 15 items for any residence.

21   k.  Records concerning the use of commercial mail receiving agencies and/or post office

22       boxes.

23   l.  Photographs and/or videotapes, in particular photographs and/or videotapes of

24       potential co-conspirators and their criminal associates, assets, and/or controlled

US-001067

1    substances, along with personal address lists, and other documents with the names

2    and telephone numbers of potential co-conspirators.

3  m. Records relating to the use of and accumulation of proceeds derived from the sale of

4    illegal controlled substances, as well as the acquisition of property obtained from

5    drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment,

6    and/or expenditure of money obtained from drug sales, including precious metals,

7    jewelry, records of large purchases, receipts, keys and other items tending to establish

8    dominion and control of the location, canceled checks, bank records, credit card

9    records, wire transfers, wire transfer receipts, cashier's checks, cashier's check

10   receipts, addressed mail, express delivery receipts/envelopes, utility company

11   receipts, rent receipts, income tax returns, money drafts, money orders, and their

12   receipts.

13  n. Financial records including expenses incurred in obtaining the equipment and items

14   necessary for the transportation and/or distribution of controlled substances, income

15   derived from the sales of controlled substances, as well as records of legitimate

16   income or lack thereof, and general living expenses.

17  o. Financial records of persons in control of the property, premises, or vehicles,

18   including bank statements, bank receipts, passbooks, bank checks, money market or

19   similar accounts, money drafts, letters of credit, payroll documents, employer

20   information, income and expense records, Federal and State income tax returns,

21   money orders, cashier's checks, loan applications, credit card records, safe deposit

22   box and records, acquisitions, notes, and records reflecting vehicles, aircraft or

23   vessels owned, purchased, sold or leased.

24

51

US-001068

p.  Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

q.  United States currency in excess of $2,000, including the first $2,000 if more than $2,000 is seized, digital currency such as Bitcoin stored on electronic wallets or other forms of wallets or other means, cryptocurrency private keys and recovery seed, and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, cash cards, gift cards, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

r.  Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

s.  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices and cutting agents.

t.  Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

u.  With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

   i.  evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords,

52

1     documents, browsing history, user profiles, e-mail, e-mail contacts, chat and

2     instant messaging logs, photographs, and correspondence;

3     ii.  evidence of the presence or absence of software that would allow others to

4     control the device, such as viruses, Trojan horses, and other forms of

5     malicious software, as well as evidence of the presence or absence of security

6     software designed to detect malicious software;

7     iii.  evidence of the attachment of other devices;

8     iv.  evidence of counter-forensic programs (and associated data) that are designed

9     to eliminate data from the device;

10    v.  evidence of the times the device was used;

11    vi.  passwords, encryption keys, biometric keys, and other access devices that

12    may be necessary to access the device;

13    vii.  applications, utility programs, compilers, interpreters, or other software, as

14    well as documentation and manuals, that may be necessary to access the

15    device or to conduct a forensic examination of it;

16    viii.  records of or information about Internet Protocol addresses used by the

17    device;

18    ix.  records of or information about the device's Internet activity, including

19    firewall logs, caches, browser history and cookies, "bookmarked" or

20    "favorite" web pages, search terms that the user entered into any Internet

21    search engine, and records of user-typed web addresses.

22    2.     As used herein, the terms "records," "documents," "programs," "applications,"

23    and "materials" include records, documents, programs, applications, and materials created,

24

53

1    modified, or stored in any form, including in digital form on any digital device and any forensic

2    copies thereof.

3         3.    As used herein, the term "digital device" includes any electronic system or device

4    capable of storing or processing data in digital form, including central processing units; desktop,

5    laptop, notebook, and tablet computers; personal digital assistants; wireless communication

6    devices, such as telephone paging devices, beepers, mobile telephones, and smart phones;

7    digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes);

8    peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and

9    drives intended for removable media; related communications devices, such as modems,

10   routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory

11   cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such

12   as VHS); and security devices.

13        4.    Seizure of any cryptocurrency/digital currency private keys and recovery seeds

14   shall also be construed to include seizure of any cryptocurrency related to any such seized

15   private keys and/or recovery seeds, and such seizure shall allow transfer of any such related

16   cryptocurrency to one or more government controlled accounts, or "wallets."

17

18

19

20

21

22

23

24

54

US-001071

**ATTACHMENT "C"**
**PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED**
**PURSUANT TO THIS SEARCH WARRANT**

1.      In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2.      When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3.      The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B. The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law.  To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4.      Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B as Information to be Seized, and, if the

55

US-001072

United States pursues a criminal prosecution in this matter, all litigation including any appeal or collateral attack has been completed, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate Court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

     5.     The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a.  examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b.  searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c.  surveying various file directories and the individual files they contain;

    d.  opening files in order to determine their contents;

    e.  using hash values to narrow the scope of what may be found. Hash values are under-inclusive, but are still a helpful tool;

    f.  scanning storage areas;

    g.  performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

56

h.   performing any other data analysis technique that may be necessary to locate

and retrieve the evidence described in Attachment B.

**<u>Return and Review Procedures</u>**

6.      Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

(e) Issuing the Warrant.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.

(B) Inventory. An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

7.      Pursuant to this Rule, the government understands and will act in accordance with the following:

a.   Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of the warrant, an agent is required to file an inventory return with the Court, that is, to file an itemized list of the property seized.  Execution of the warrant begins when the United States serves the warrant on the named custodian; execution is complete when the custodian provides all Search Warrant Data to the United States.  Within fourteen (14) days of completion of the execution of the warrant, the inventory will be filed.

b.   Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which the electronically stored information must be seized after the issuance of the

57

warrant and copied after the execution of the warrant, not the "later review of the media or information" seized, or the later off-site digital copying of that media.

c.  Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the "physical storage media" into which the Search Warrant Data that was seized was placed, not an itemization of the information or data stored on the "physical storage media" into which the Search Warrant Data was placed;

d.  Under Rule 41(f)(1)(B), the government may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media on which the Search Warrant Data was placed plus a full image copy of the seized Search Warrant Data be retained by the government.

e.  If the person from whom any Search Warrant Data was seized requests the return of any information in the Search Warrant Data that is not set forth in Attachment B, that information will be copied onto appropriate media and returned to the person from whom the information was seized.

58

# EXHIBIT B

(Search Warrant Case No: 2:21-mj-516-DJA)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Nevada

FILED.

DATED: 3:09 pm, June 17, 2021

U.S. MAGISTRATE JUDGE

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
6145 HARRISON DRIVE, SUITE 4,
LAS VEGAS, NEVADA 89120

)
)
)
)
)
)

Case No.  2:21-mj-516-DJA

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Nevada _____
*(identify the person or describe the property to be searched and give its location)*:

Please see the Attachment A-3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see the Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before          July 1, 2021          *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to          Honorable Daniel J. Albregts          .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   June 17, 2021 2:34 p.m.

*Judge's signature*

City and state:      Las Vegas, Nevada

Honorable Daniel J. Albregts, U.S. Magistrate Judge
*Printed name and title*

US-001034

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| **Case No.:**<br>**2:21-mj-516-DJA** | **Date and time warrant executed:** | **Copy of warrant and inventory left with:** |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| Certification |
|---|

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                                _____
                                                *Executing officer's signature*

                                                _____
                                                *Printed name and title*

US-001035

**SEALED**

US-001036

1

## ATTACHMENT "A-3"

2

### PREMISES TO BE SEARCHED – SUBJECT PREMISES 3

3   1.   The premises to be searched is described as follows, and include all locked and

4   closed containers, including safes, lockboxes, and vehicles found on or directly adjacent to the

5   property, found therein:

6   6145 Harrison Drive Suite #4, Las Vegas, Nevada 89120 is a warehouse
space primarily utilized by Paul ENGSTROM, Vincent CUOMO and

7   Abraham ELLIOTT. Subject Premises is a single story, warehouse and
suite having a primarily brown stucco exterior.  The warehouse and suite

8   has a single car rollup door that is beige in color and faces north. The
number "4" is affixed to the glass front door just above eye level. The

9   door of the warehouse and suite is glass with black trim and faces north.
The address "6145 Harrison 1-12" is affixed to the north side of the

10   building on the far-east side and is black in color.  Photo of Warehouse
and Suite:

11

12

13

14

15



16

17

18

19

20

21

22

23

24

41

# ATTACHMENT "B"

## ITEMS TO BE SEIZED

1.      The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1)  Distribution of and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit Controlled Substance Offense), and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "Subject Offenses"), namely:

    a.  Controlled substances, including cocaine and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

    b.  Counterfeit controlled substances.

    c.  Records reflecting the use of a dark web moniker or handle, or other online monikers or pseudonyms, reflecting the use of vendor or buyer accounts on dark web marketplaces.

    d.  Records concerning the establishment or management of an online or dark web controlled substance retail business, including documents and other records relating to the creation or hosting of websites, evidence of dark web or Tor Browser access, merchant accounts for customer transactions, product vendors or sources of supply, invoices, order forms, and communications with co-conspirators and others about any of the aforementioned subjects.

    e.  Records concerning financial transactions associated with the operations or proceeds of an online or dark web controlled substance retail business, including any paper or

49

1  digital account opening documents, statements, deposit slips, checkbooks, orders or

2  confirmations of wire transfers.

3  f.  Records of any accounts or transactions within the traditional banking or credit

4  systems or via cryptocurrencies.

5  g.  Digital currency, cryptocurrency (or digital currency) private keys, and digital

6  currency recovery seeds, as further explained in paragraph 4 below.

7  h.  Packing material or inserts relating to any transactions with any cash-for-

8  cryptocurrency exchange.

9  i.  Books, records, correspondence, narcotic customers lists, narcotic suppliers lists,

10  ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts,

11  letters and memoranda of agreements between potential co-conspirators, formulas,

12  receipts, phone records, phone books, address books, notations and other papers,

13  and any files relating to the transporting, ordering, purchasing, or distributing of

14  controlled substances.

15  j.  Indicia of occupancy, residency, and/or ownership of the previously described

16  property, premises, or vehicles, and any other property, premises, or vehicles,

17  including utility and telephone bills, canceled mail, deeds, leases, rental agreements,

18  photographs, personal telephone books, diaries, envelopes, registration, receipts, and

19  keys which tend to show the identities of the occupants, residents, and/or owners,

20  not to exceed 15 items for any residence.

21  k.  Records concerning the use of commercial mail receiving agencies and/or post office

22  boxes.

23  l.  Photographs and/or videotapes, in particular photographs and/or videotapes of

24  potential co-conspirators and their criminal associates, assets, and/or controlled

50

US-001039

1           substances, along with personal address lists, and other documents with the names

2           and telephone numbers of potential co-conspirators.

3       m. Records relating to the use of and accumulation of proceeds derived from the sale of

4           illegal controlled substances, as well as the acquisition of property obtained from

5           drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment,

6           and/or expenditure of money obtained from drug sales, including precious metals,

7           jewelry, records of large purchases, receipts, keys and other items tending to establish

8           dominion and control of the location, canceled checks, bank records, credit card

9           records, wire transfers, wire transfer receipts, cashier's checks, cashier's check

10         receipts, addressed mail, express delivery receipts/envelopes, utility company

11         receipts, rent receipts, income tax returns, money drafts, money orders, and their

12         receipts.

13       n. Financial records including expenses incurred in obtaining the equipment and items

14           necessary for the transportation and/or distribution of controlled substances, income

15           derived from the sales of controlled substances, as well as records of legitimate

16           income or lack thereof, and general living expenses.

17       o. Financial records of persons in control of the property, premises, or vehicles,

18           including bank statements, bank receipts, passbooks, bank checks, money market or

19           similar accounts, money drafts, letters of credit, payroll documents, employer

20           information, income and expense records, Federal and State income tax returns,

21           money orders, cashier's checks, loan applications, credit card records, safe deposit

22           box and records, acquisitions, notes, and records reflecting vehicles, aircraft or

23           vessels owned, purchased, sold or leased.

24

US-001040

p. Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

q. United States currency in excess of $2,000, including the first $2,000 if more than $2,000 is seized, digital currency such as Bitcoin stored on electronic wallets or other forms of wallets or other means, cryptocurrency private keys and recovery seed, and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, cash cards, gift cards, checkbooks, check registers, securities, precious metals, jewelry, antique or modem automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

r. Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

s. Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices and cutting agents.

t. Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

u. With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

 i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords,

52

US-001041

1        documents, browsing history, user profiles, e-mail, e-mail contacts, chat and

2        instant messaging logs, photographs, and correspondence;

3    ii.  evidence of the presence or absence of software that would allow others to

4        control the device, such as viruses, Trojan horses, and other forms of

5        malicious software, as well as evidence of the presence or absence of security

6        software designed to detect malicious software;

7   iii.  evidence of the attachment of other devices;

8   iv.  evidence of counter-forensic programs (and associated data) that are designed

9        to eliminate data from the device;

10    v.  evidence of the times the device was used;

11   vi.  passwords, encryption keys, biometric keys, and other access devices that

12        may be necessary to access the device;

13  vii.  applications, utility programs, compilers, interpreters, or other software, as

14        well as documentation and manuals, that may be necessary to access the

15        device or to conduct a forensic examination of it;

16  viii.  records of or information about Internet Protocol addresses used by the

17        device;

18   ix.  records of or information about the device's Internet activity, including

19        firewall logs, caches, browser history and cookies, "bookmarked" or

20        "favorite" web pages, search terms that the user entered into any Internet

21        search engine, and records of user-typed web addresses.

22  2.    As used herein, the terms "records," "documents," "programs," "applications,"

23 and "materials" include records, documents, programs, applications, and materials created,

24

53

US-001042

1   modified, or stored in any form, including in digital form on any digital device and any forensic

2   copies thereof.

3       3.      As used herein, the term "digital device" includes any electronic system or device

4   capable of storing or processing data in digital form, including central processing units; desktop,

5   laptop, notebook, and tablet computers; personal digital assistants; wireless communication

6   devices, such as telephone paging devices, beepers, mobile telephones, and smart phones;

7   digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes);

8   peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and

9   drives intended for removable media; related communications devices, such as modems,

10  routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory

11  cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such

12  as VHS); and security devices.

13      4.      Seizure of any cryptocurrency/digital currency private keys and recovery seeds

14  shall also be construed to include seizure of any cryptocurrency related to any such seized

15  private keys and/or recovery seeds, and such seizure shall allow transfer of any such related

16  cryptocurrency to one or more government controlled accounts, or "wallets."

17

18

19

20

21

22

23

24

54

## ATTACHMENT "C"
## PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED
## PURSUANT TO THIS SEARCH WARRANT

1.      In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2.      When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3.      The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B. The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law. To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4.      Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B as Information to be Seized, and, if the

55

United States pursues a criminal prosecution in this matter, all litigation including any appeal or collateral attack has been completed, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate Court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

      5.     The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

      a.   examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

      b.   searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

      c.   surveying various file directories and the individual files they contain;

      d.   opening files in order to determine their contents;

      e.   using hash values to narrow the scope of what may be found. Hash values are under-inclusive, but are still a helpful tool;

      f.   scanning storage areas;

      g.   performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

56

h. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

### **Return and Review Procedures**

6. Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

(e) Issuing the Warrant.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.

(B) Inventory. An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

7. Pursuant to this Rule, the government understands and will act in accordance with the following:

a. Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of the warrant, an agent is required to file an inventory return with the Court, that is, to file an itemized list of the property seized. Execution of the warrant begins when the United States serves the warrant on the named custodian; execution is complete when the custodian provides all Search Warrant Data to the United States. Within fourteen (14) days of completion of the execution of the warrant, the inventory will be filed.

b. Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which the electronically stored information must be seized after the issuance of the

57

1         warrant and copied after the execution of the warrant, not the "later review of

2         the media or information" seized, or the later off-site digital copying of that

3         media.

4     c.  Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may

5         be limited to a description of the "physical storage media" into which the Search

6         Warrant Data that was seized was placed, not an itemization of the information

7         or data stored on the "physical storage media" into which the Search Warrant

        Data was placed;

8     d.  Under Rule 41(f)(1)(B), the government may retain a copy of that information

9         for purposes of the investigation. The government proposes that the original

10        storage media on which the Search Warrant Data was placed plus a full image

11        copy of the seized Search Warrant Data be retained by the government.

12     e.  If the person from whom any Search Warrant Data was seized requests the

13        return of any information in the Search Warrant Data that is not set forth in

14        Attachment B, that information will be copied onto appropriate media and

15        returned to the person from whom the information was seized.

16

17

18

19

20

21

22

23

24

US-001047

# EXHIBIT C

## (Attachment B of Search Warrants)

**ATTACHMENT "B"**

**ITEMS TO BE SEIZED**

1.  The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1)  Distribution of and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit Controlled Substance Offense), and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "Subject Offenses"), namely:

  a. Controlled substances, including cocaine and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

  b. Counterfeit controlled substances.

  c. Records reflecting the use of a dark web moniker or handle, or other online monikers or pseudonyms, reflecting the use of vendor or buyer accounts on dark web marketplaces.

  d. Records concerning the establishment or management of an online or dark web controlled substance retail business, including documents and other records relating to the creation or hosting of websites, evidence of dark web or Tor Browser access, merchant accounts for customer transactions, product vendors or sources of supply, invoices, order forms, and communications with co-conspirators and others about any of the aforementioned subjects.

  e. Records concerning financial transactions associated with the operations or proceeds of an online or dark web controlled substance retail business, including any paper or

1     digital account opening documents, statements, deposit slips, checkbooks, orders or

2     confirmations of wire transfers.

3     f.   Records of any accounts or transactions within the traditional banking or credit

4     systems or via cryptocurrencies.

5     g.   Digital currency, cryptocurrency (or digital currency) private keys, and digital

6     currency recovery seeds, as further explained in paragraph 4 below.

7     h.   Packing material or inserts relating to any transactions with any cash-for-

8     cryptocurrency exchange.

9     i.   Books, records, correspondence, narcotic customers lists, narcotic suppliers lists,

10     ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts,

11     letters and memoranda of agreements between potential co-conspirators, formulas,

12     receipts, phone records, phone books, address books, notations and other papers,

13     and any files relating to the transporting, ordering, purchasing, or distributing of

14     controlled substances.

15     j.   Indicia of occupancy, residency, and/or ownership of the previously described

16     property, premises, or vehicles, and any other property, premises, or vehicles,

17     including utility and telephone bills, canceled mail, deeds, leases, rental agreements,

18     photographs, personal telephone books, diaries, envelopes, registration, receipts, and

19     keys which tend to show the identities of the occupants, residents, and/or owners,

20     not to exceed 15 items for any residence.

21     k.   Records concerning the use of commercial mail receiving agencies and/or post office

22     boxes.

23     l.   Photographs and/or videotapes, in particular photographs and/or videotapes of

24     potential co-conspirators and their criminal associates, assets, and/or controlled

1    substances, along with personal address lists, and other documents with the names

2    and telephone numbers of potential co-conspirators.

3  m. Records relating to the use of and accumulation of proceeds derived from the sale of

4    illegal controlled substances, as well as the acquisition of property obtained from

5    drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment,

6    and/or expenditure of money obtained from drug sales, including precious metals,

7    jewelry, records of large purchases, receipts, keys and other items tending to establish

8    dominion and control of the location, canceled checks, bank records, credit card

9    records, wire transfers, wire transfer receipts, cashier's checks, cashier's check

10    receipts, addressed mail, express delivery receipts/envelopes, utility company

11    receipts, rent receipts, income tax returns, money drafts, money orders, and their

12    receipts.

13  n. Financial records including expenses incurred in obtaining the equipment and items

14    necessary for the transportation and/or distribution of controlled substances, income

15    derived from the sales of controlled substances, as well as records of legitimate

16    income or lack thereof, and general living expenses.

17  o. Financial records of persons in control of the property, premises, or vehicles,

18    including bank statements, bank receipts, passbooks, bank checks, money market or

19    similar accounts, money drafts, letters of credit, payroll documents, employer

20    information, income and expense records, Federal and State income tax returns,

21    money orders, cashier's checks, loan applications, credit card records, safe deposit

22    box and records, acquisitions, notes, and records reflecting vehicles, aircraft or

23    vessels owned, purchased, sold or leased.

24

51

p. Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

q. United States currency in excess of $2,000, including the first $2,000 if more than $2,000 is seized, digital currency such as Bitcoin stored on electronic wallets or other forms of wallets or other means, cryptocurrency private keys and recovery seed, and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, cash cards, gift cards, checkbooks, check registers, securities, precious metals, jewelry, antique or modem automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

r. Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

s. Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices and cutting agents.

t. Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

u. With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

    i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords,

documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii. evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v. evidence of the times the device was used;

vi. passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii. records of or information about Internet Protocol addresses used by the device;

ix. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

53

1  modified, or stored in any form, including in digital form on any digital device and any forensic

2  copies thereof.

3        3.    As used herein, the term "digital device" includes any electronic system or device

4  capable of storing or processing data in digital form, including central processing units; desktop,

5  laptop, notebook, and tablet computers; personal digital assistants; wireless communication

6  devices, such as telephone paging devices, beepers, mobile telephones, and smart phones;

7  digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes);

8  peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and

9  drives intended for removable media; related communications devices, such as modems,

10  routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory

11  cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such

12  as VHS); and security devices.

13        4.    Seizure of any cryptocurrency/digital currency private keys and recovery seeds

14  shall also be construed to include seizure of any cryptocurrency related to any such seized

15  private keys and/or recovery seeds, and such seizure shall allow transfer of any such related

16  cryptocurrency to one or more government controlled accounts, or "wallets."

17

18

19

20

21

22

23

24

# EXHIBIT D

## (Warrant Inventory for 305 Saint Augustine Lane)

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>2:21-mj-518-DJA | Date and time warrant executed:<br>6-21-2021 / 2:00 Pm | Copy of warrant and inventory left with:<br>VIRGINIA ENGSTROM |
| Inventory made in the presence of :    TFO BRIAN SACHS | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

SEE ATTACHED DEA 12

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 6-21-2021

_____
Executing officer's signature

TFO STEVE NOAHR
Printed name and title

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
**RECEIPT FOR CASH OR OTHER ITEMS**

TO: (Name, Title, Address (including ZIP CODE), if applicable)

VIRGINIA ENGSTROM
305 ST. AUGUSTINE LANE
HENDERSON, NEVADA 89014

FILE NO. RS-21-0005

G-DEP IDENTIFIER

FILE TITLE

DATE 6-21-2021

DIVISION/DISTRICT OFFICE

LVDO
LAFD

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | WHITE DUCATI   VIN # ZDMVABDS0KB007875 | |
| 1 | BLACK DUCATI   VIN # ZDM13DKW2KB010547 | |
| 1 | SILVER/BLACK DUCATI   VIN ZDMDAGN W8JB03299 | |
| 1 | GRAY HARLEY-DAVIDSON   VIN 1HD1TEH23LB954585 | |
| 1 | BLACK HARLEY-DAVIDSON   VIN 1HD1TCL13MB952002 | |
| 1 | BLUE CASE UNKNOWN AMOUNT   OSC | |
| 1 | WHITE APPLE IPHONE (MASTER CLOSET BOX) | |
| 1 | ROSEGOLD APPLE IPHONE (KITCHEN DRAWER) | |
| 1 | WHITE/ROSEGOLD APPLE IPHONE (MASTER CLOSET BOX) | |
| 1 | WHITE IPHONE CRACKED SCREEN | |
| 1 | BIT LIQUID BANK BAG (MISC PAPER WORK AND TITLE | |
| 1 | BOXED DUCATI (CRATE) WITH MISC PARTS | |
| 1 | HP LAPTOP (UPPER LEFT SHELF OF CLOSET, SERIAL # 5CD4073328 | |
| 1 | WESCO FLOOR JACK | |

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)
VIRGINIA ENGSTROM

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)
TFO STEVE NOHAR

FORM DEA-12 (9-00) Previous editions obsolete

# EXHIBIT E

## (Warrant Inventory for 6145 Harrison Drive)

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>2:21-mj-516-DJA | Date and time warrant executed:<br>June 21, 2021, apx 1:45 p.m. | Copy of warrant and inventory left with:<br>6145 Harrison Unit 4 |
| Inventory made in the presence of :   SA Scott Barrett | | |

Inventory of the property taken and name(s) of any person(s) seized:

    1 - Kawasaki Motorcycle
    1 - Ducati Motorcycle
    Additional items listed on attached DEA-12

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:   July 14, 2021

                                        _Executing officer's signature_

                              Daniel J. Kurinec, Special Agent
                                   _Printed name and title_

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
### RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable)

6145 Harrison Drive Unit 4
Las Vegas, NV

| FILE NO | | G-DEP IDENTIFIER |
|---|---|---|
| FILE TITLE | | |
| DATE  6-21-2021 | | |

DIVISION/DISTRICT OFFICE

LVDO①

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (if Applicable) |
|---|---|---|
| 5 | Ziplock bags w/ white powder | Evidence |
| 1 | Cup w/ white powder | |
| 3 | Digital Scales | |
| 1 | Rubbermaid plastic bin w/ packaging | |
| 9 | Kilo packages w/ BMW Logo | |
| 1 | Metal pot w/ utensil | |
| 1 | Metal pan w/ lid | |
| 1 | misc statements, receipts, paper work | |
| 2 | key chains | |
| 1 | metal pan | |
| 1 | Powder substance | |
| 1 | Box of Fentanyl test kit | |
| 4 | Bottles of drug test kit | |
| 4 | Vials mandellin | |
| 4 | Vials marquis | |
| 4 | vials Liebermann | |

RECEIVED BY (Signature)

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)
SA Kurinec

NAME AND TITLE (Print or Type)
SA Barrett

FORM DEA-12 (8-02) Previous editions obsolete

Electronic Form Version Designed in JetForm 5.2 Version

2

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**
## RECEIPT FOR CASH OR OTHER ITEMS

| TO: (Name, Title, Address (including ZIP CODE), if applicable) | FILE NO. | G-DEP IDENTIFIER |
|---|---|---|
| 6145 Harrison Drive Unit 4<br>Los Vegas, NV | FILE TITLE | |
| | DATE 6·21·2021 | |

DIVISION/DISTRICT OFFICE

LVDO

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | Box containing pills & White powder | Evidence |
| 1 | Bag packaging materials | |
| 2 | Plastic Bins containing packaging | |
| 13 | Plastic Bins containing envelopes | |
| 1 | Metal pan w/ lid | |
| 2 | brick of white substance "BMW" | |
| 1 | Bin containing packaging and gas mask | |
| 4 | glass pans w/ lids | |
| 4 | metal containers w/ lid | |
| 2 | Ziplock bags of white powder | |
| 1 | Box containing pills & packaging | |
| 26 | Jars containing powders | |
| 1 | Metal tray w/ utensils & digital scale | |
| 1 | Razer Laptop Mod'l RZ09 0270   S/N: 3Y1843A54300667 | |
| 1 | Razer Laptop Mod'l RZ0902385   S/N: BY1901A4470K88 | |
| 1 | 1 - Phone - white | |

| RECEIVED BY (Signature) | NAME AND TITLE (Print or Type) |
|---|---|
| | SA Kurinec |
| WITNESSED BY (Signature) | NAME AND TITLE (Print or Type) |
| | SA Barrett |

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

3

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**
## RECEIPT FOR CASH OR OTHER ITEMS

| TO: (Name, Title, Address (including ZIP CODE), if applicable) | FILE NO. | G-DEP IDENTIFIER |
|---|---|---|

6145 Harrison Drive Unit 4
Las Vegas, NV

FILE TITLE

DATE 6-21-21

DIVISION/DISTRICT OFFICE

LVDO

I hereby acknowledge receipt of the following described cash or other item(s).
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | 1-Phone - white | Evidence |
| 1 | 1-Phone - Gray | |
| 2 | Brick of white substance | |
| 2 | Pyrex containers w/ lid | |
| 1 | Black 1-Phone | |
| 1 | Silver 1-Phone model 1549 SN 354060622446126 | |
| 1 | Gray 1-Phone | |
| 1 | Samsung Imei: 352620111428722 | |
| 1 | Red 1-Phone | |
| 1 | 64 gig Samsung Flash drive | |
| 1 | 32 gig Samsung Flash drive | |
| 5 | Samsung Flash drive 256g, 3 64g, 32g | |
| 1 | Green notebook | |
| 1 | Kilo wrapper remnants | |
| 4 | Bottles of ethanol | |
| 5 | File cases | |

| RECEIVED BY (Signature) | NAME AND TITLE (Print or Type) |
|---|---|
| | SA Karine |

| WITNESSED BY (Signature) | NAME AND TITLE (Print or Type) |
|---|---|
| | SA Barrett |

FORM DEA-12 (8-02) *Previous editions obsolete*                    Electronic Form Version Designed in JetForm: 5.2 Version

4

## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address ((including ZIP Code)), if applicable)

6145 Harrison Drive Unit 4
Las Vegas, NV

FILE NO.

FILE TITLE

G-DEP IDENTIFIER

DATE 6/21/21

DIVISION / DISTRICT OFFICE

LVDO

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | Bottle of Acetone | Evidence |
| 1 | Money counter | |
| 1 | Key chain w/ KEYS | |
| 1 | Fridge key | |
| 1 | Undetermined amount of U.S. Currency | |
| 1 | Shipping labels | |
| 1 | Misc. papers | |
| 1 | Black Backpack | |

Nothing
Follows

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)
SA Kurinec

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)
SA Barrett

DEA Form — 12
(Apr. 1983)

Previous edition dated 9/77 may be used until stock is exhausted.

# EXHIBIT F

(Confirmation of filing of Claim)



THE UNITED STATES DEPARTMENT *of* JUSTICE

# Your Claim Has Been Filed

## Filing Information

Your claim, tracking number: **2178-4CB-172-C9E**, has been filed at **2:00:54 PM EST** on **Saturday, September 18, 2021**. You will get a confirmation email to your registration email address once the appropriate agency or agencies receive it. Please print this page for your records.

If you did not receive a confirmation email for the claim you filed, then please visit Claim Frequently Asked Questions (https://www.forfeiture.gov/FilingClaimFAQs.htm) and look under the technical problems question for more information.

Be aware that filing an online claim does not make your filing valid. Your claim will be ruled on by the appropriate agency or agencies and a response will be provided to you via U.S. mail.

You may use your email address and tracking number to log back in and view and/or print your filed form until **Tuesday, September 28, 2021**.

## Amendments

If you wish to file an amendment to your filed claim, you must provide your documentation and a written explanation to the appropriate agency via U.S. mail. The agency mailing address can be found at https://www.forfeiture.gov/FilingClaim.htm (https://www.forfeiture.gov/FilingClaim.htm).

📄 Print filed claim for your records

# EXHIBIT G

## (Letter from DEA dated Feb. 3, 2022)

**U. S. Department of Justice**
Drug Enforcement Administration

www.dea.gov

FEB 0 3 2022

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Paul Philip Engstrom
305 Saint Augustine Lane
Henderson, NV 89014

Re: Asset ID No.:   21-DEA-679937
    Property:        $15,700.00 U.S. Currency
    Asset ID No.:   21-DEA-679940
    Property:        $3,500.00 U.S. Currency
    Asset ID No.:   21-DEA-681152
    Property:        0.33081041 Bitcoins (2), Approx. VL: $10,936.70
    Asset ID No.:   21-DEA-681176
    Property:        0.13613809 Bitcoins (2), Approx. VL: $4,473.16
    Asset ID No.:   21-DEA-681190
    Property:        10,214.4445896 Dogecoin, Approx. VL: $2,608.04
    Asset ID No.:   21-DEA-681205
    Property:        0.451462387496977257 Ethereum, Approx. VL: $1,067.11
    Asset ID No.:   21-DEA-681211
    Property:        1,165.68039959 Paxos Standard, Appox. VL: $1,165.16

Dear Mr. Engstrom:

I am writing to inform you of the decision to return the above-referenced properties. In order to receive the funds, you must complete the "Employee/Vendor/Payee Information" and "Financial Institution Information" sections on the enclosed "UFMS Vendor Request Forms." The completed forms must be returned to this office at the DEA address or e-mail noted below within thirty (30) days of your receipt of this letter. **The "Employee/Vendor/Payee Information" section of the "UFMS Vendor Request Forms" must contain your name and taxpayer ID number. Please print or type when completing the form(s).** The payment will be made by electronic funds transfer to the bank account designated on the UFMS Vendor Request Forms. Please be advised it may take a minimum of 60 days before the properties can be returned to you.

The Debt Collection Improvement Act of 1996, 31 United States Code § 3716, requires the Department of the Treasury and other disbursing officials to offset Federal payments to collect delinquent non-tax debts owed to the United States, or delinquent debts owed to states, including past-due child support enforced by states. If an offset is made during an electronic funds transfer, the claimant will receive a notification from the Department of the Treasury at the last address provided by the debtor to the creditor. If you believe that your payment may be subject to an offset,

you may contact the Treasury Department at the following number: 1-800-304-3107.  Failure to return the forms may result in the initiation of abandonment proceedings pursuant to Title 41, Code of Federal Regulations, Part 128-48.

Further correspondence with this office, including the completed "UFMS Vendor Request Forms," must include the Asset ID numbers referenced above and be addressed to the Forfeiture Counsel, Asset Forfeiture Section, Drug Enforcement Administration, HQs Forfeiture Response, 8701 Morrissette Drive, Springfield, Virginia 22152.  Alternatively, you may e-mail (*preferred method*) the forms to DEA.AFS-ACH.Processing@usdoj.gov.

Sincerely,

David A. Zekoski
Senior Attorney
Asset Forfeiture Section

Enclosure(s)

## U.S. DEPARTMENT OF JUSTICE

## Unified Financial Management System (UFMS)
## Vendor Request Form

*This form must be electronically filled out, no handwritten forms will be accepted*

**1.** Request Type: New

**2.** Is Vendor Required to Register in SAM? N

If the vendor is required to register in SAM.gov, please have them do so before completing this form. SAM.gov Registration exceptions can be found in FAR 4.1102. The assumption is that the SAM.gov information is valid. If the information currently listed at SAM.gov or in the UFMS is incorrect, then the vendor should be contacted to update their SAM.gov information.

**3.** If No, What is the FAR Exemption?  Refund Vendor

### USDOJ Component Information

| | | | |
|---|---|---|---|
| **4.** Date of Request: | | **5.** Requesting Component: | U.S. Marshals Service |
| **6.** Component Contact: | AFD.ACHForms@usdoj.gov | **7.** Office Phone Number: | (703) 740-9326 |
| **8.** Purpose of Request: | Asset Forfeiture - Return of Funds/Settlement Payment | | |
| **9.** UFMS Security Org: | USMS | **10.** Vendor Type: | Non-Vendor (NON) |
| **11.** Component-Specific Justification: | N/A | | |
| **12.** Payment Type: | PPD | **13.** Prompt Pay Type: | Non-PromptPayAct (NONPPA) |

### Employee/Vendor/Payee Information

| | | | |
|---|---|---|---|
| **14.** Vendor Name: | Paul Philip Engstrom | | |
| **15.** DUNS Number +4: | N/A | **16.** SSN | |
| **17.** Street Address: | | | |
| **18.** City, State, Zip: | | | |
| **19.** Country: | United States of America | **20.** Email Address: | |
| **21.** Vendor Phone Number: | | **22.** Fax Number: | |
| **23.** Vendor Contact: | | **24.** NCIC/TPID Code: | 2152955 |
| **25.** Federal Government Agency Location Code (ALC): | N/A | | |

### Financial Institution Information

| | | | |
|---|---|---|---|
| **26.** Bank Name: | | | |
| **27.** Street Address: | | | |
| **28.** City, State, Zip: | | | |
| **29.** Country: | United States of America | **30.** Bank Phone Number: | |
| **31.** ABA Number: | | **32.** Account Number: | |
| **33.** Account Type: | | Re-Enter Account Number: | |

**PRIVACY ACT STATEMENT:** *The following information is provided to comply with the Privacy Act of 1974 (P.L. 93-579). All information on this form is required under the provisions of 31 U.S.C. 3322 and 31 CFR 210. This information will be used by the Treasury Department to transmit payment data, by electronic means to vendor's financial institution. Failure to provide the requested information may delay or prevent the receipt of payments through the Automated Clearing House Payment System.*

21-679937-039

## U.S. DEPARTMENT OF JUSTICE

**UFMS Vendor Request Form Instructions for Asset Forfeiture - Return of Funds - Settlement Payment**

### USDOJ Component Information

| | | |
|---|---|---|
| Box 4. | Date of Request: | Enter the **Date** the request will be submitted |
| Box 12. | Payment Type: | Review the options below: |
| | | - Enter **CCD** for payment to a Corporate account |
| | | - Enter **PPD** for payment to a Personal account |
| | | - Enter **Check** if requesting to be paid by check *Note: If Check is selected, Boxes 17- 19 must contain valid mailing address and Boxes 26 - 33 will remain blank.* |

### Employee/Vendor/Payee Information

| | | |
|---|---|---|
| Box 14. | Vendor Name: | Enter the name of the individual/business (i.e., Defendant, Claimant, Petitioner) legally entitled to the funds |
| | | - If an attorney filling out this form on behalf of a client - Enter the **Client's name** followed by "c/o [Attorney's name]" |
| Box 16. | EIN/SSN/TIN | Enter the Tax ID Number of the individual/business legally entitled to the funds |
| | | - If a business  - Select EIN/TIN and enter **Tax ID Number** (e.g., 12-3456789) |
| | | - If an individual - Select SSN and enter the **Social Security Number** (e.g., 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) |
| | | - If an attorney filling out form on behalf of client - Select SSN and enter the **Client's Social Security Number** (e.g., 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) |
| Box 17. | Street Address: | Enter **current address** |
| Box 18. | City, State, Zip Code: | Enter **current city, state, and zip code** |
| Box 19. | Country: | Enter the **country** of address in Boxes 17 and 18 |
| Box 20. | E-mail Address: | Enter **e-mail address** relative to party identified in Box 14 |
| Box 21. | Vendor Phone No.: | Enter **phone number** relative to party identified in Box 14 |
| Box 23. | Contact Name: | Enter the **name of the point of contact** relative to party identified in Box 14 |

### Financial Institution Information (If applicable)

| | | |
|---|---|---|
| Box 26. | Bank Name: | Enter the **name of the bank** where funds are to be transferred |
| Box 27. | Street Address: | Enter the **address for the bank** in Box 26 |
| Box 28. | City, State, Zip Code: | Enter the **city, state, and zip code for the bank** in Box 26 |
| Box 30. | Bank Phone No.: | Enter the **phone number** for the bank in Box 26 |
| Box 31. | ABA Number: | Enter the nine digit **routing number for the bank** holding the account where funds are to be transferred |
| Box 32. | Account Number: | Enter the **account number** where funds are to be transferred |
| Box 33. | Account Type: | Enter the appropriate **account type** for the account number in Box 32 |
| | | -Corporate Savings |
| | | -Corporate Checking (i.e. Trust, IOLTA, etc.) |
| | | -Personal Checking |
| | | -Personal Savings |

**Submit completed form(s) to DEA.AFS-ACH.Processing@usdoj.gov.**

# U.S. DEPARTMENT OF JUSTICE

## Unified Financial Management System (UFMS)
## Vendor Request Form

This form must be electronically filled out, no handwritten forms will be accepted

**1. Request Type:** New

**2. Is Vendor Required to Register in SAM?** N

If the vendor is required to register in SAM.gov, please have them do so before completing this form. SAM.gov Registration exceptions can be found in FAR 4.1102. The assumption is that the SAM.gov information is valid. If the information currently listed at SAM.gov or in the UFMS is incorrect, then the vendor should be contacted to update their SAM.gov information.

**3. If No, What is the FAR Exemption?** Refund Vendor

### USDOJ Component Information

| | | | |
|---|---|---|---|
| **4. Date of Request:** | | **5. Requesting Component:** | U.S. Marshals Service |
| **6. Component Contact:** | AFD.ACHForms@usdoj.gov | **7. Office Phone Number:** | (703) 740-9326 |
| **8. Purpose of Request:** | Asset Forfeiture - Return of Funds/Settlement Payment | | |
| **9. UFMS Security Org:** | USMS | **10. Vendor Type:** | Non-Vendor (NON) |
| **11. Component-Specific Justification:** | N/A | | |
| **12. Payment Type:** | PPD | **13. Prompt Pay Type:** | Non-PromptPayAct (NONPPA) |

### Employee/Vendor/Payee Information

| | | | |
|---|---|---|---|
| **14. Vendor Name:** | Paul Philip Engstrom | | |
| **15. DUNS Number +4:** | N/A | **16.** | SSN |
| **17. Street Address:** | | | |
| **18. City, State, Zip:** | | | |
| **19. Country:** | United States of America | **20. Email Address:** | |
| **21. Vendor Phone Number:** | | **22. Fax Number:** | |
| **23. Vendor Contact:** | | **24. NCIC/TPID Code:** | 2152995 |
| **25. Federal Government Agency Location Code (ALC):** | N/A | | |

### Financial Institution Information

| | | | |
|---|---|---|---|
| **26. Bank Name:** | | | |
| **27. Street Address:** | | | |
| **28. City, State, Zip:** | | | |
| **29. Country:** | United States of America | **30. Bank Phone Number:** | |
| **31. ABA Number:** | | **32. Account Number:** | |
| **33. Account Type:** | | Re-Enter Account Number: | |

**PRIVACY ACT STATEMENT:** *The following information is provided to comply with the Privacy Act of 1974 (P.L. 93-579). All information on this form is required under the provisions of 31 U.S.C. 3322 and 31 CFR 210. This information will be used by the Treasury Department to transmit payment data. by electronic means to vendor's financial institution. Failure to provide the requested information may delay or prevent the receipt of payments through the Automated Clearing House Payment System.*


21-679940-039

JMD/UFSG - Vendor Request Form

February 2019

**U.S. DEPARTMENT OF JUSTICE**

**UFMS Vendor Request Form Instructions for Asset Forfeiture - Return of Funds - Settlement Payment**

### USDOJ Component Information

| | | |
|---|---|---|
| Box 4. | Date of Request: | Enter the **Date** the request will be submitted |
| Box 12. | Payment Type: | Review the options below: |

- Enter **CCD** for payment to a Corporate account
- Enter **PPD** for payment to a Personal account
- Enter **Check** if requesting to be paid by check *Note: If Check is selected, Boxes 17 - 19 must contain the mailing address and Boxes 26 - 33 will remain blank.*

### Employee/Vendor/Payee Information

| | | |
|---|---|---|
| Box 14. | Vendor Name: | Enter the name of the individual/business (i.e., Defendant, Claimant, Petitioner) legally entitled to the funds |

- If an attorney filling out this form on behalf of a client - Enter the **Client's name** followed by "c/o [Attorney's name]"

| | | |
|---|---|---|
| Box 16. | EIN/SSN/TIN: | Enter the Tax ID Number of the individual/business legally entitled to the funds |

- If a business - Select **EIN/TIN** and enter **Tax ID Number** (e.g., 12-3456789)
- If an individual - Select SSN and enter the **Social Security Number** (e.g., 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)
- If an attorney filling out form on behalf of client - Select SSN and enter the **Client's Social Security Number** (e.g., 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)

| | | |
|---|---|---|
| Box 17. | Street Address: | Enter **current address** |
| Box 18. | City, State, Zip Code: | Enter **current city, state, and zip code** |
| Box 19. | Country: | Enter the **country** of address in Boxes 17 and 18 |
| Box 20. | E-mail Address: | Enter **e-mail address** relative to party identified in Box 14 |
| Box 21. | Vendor Phone No.: | Enter **phone number** relative to party identified in Box 14 |
| Box 23. | Contact Name: | Enter the **name of the point of contact** relative to party identified in Box 14 |

### Financial Institution Information (If applicable)

| | | |
|---|---|---|
| Box 26. | Bank Name: | Enter the **name of the bank** where funds are to be transferred |
| Box 27. | Street Address: | Enter the **address** for the bank in Box 26 |
| Box 28. | City, State, Zip Code: | Enter the **city, state, and zip code** for the bank in Box 26 |
| Box 30. | Bank Phone No.: | Enter the **phone number** for the bank in Box 26 |
| Box 31. | ABA Number: | Enter the nine digit **routing number for the bank** holding the account where funds are to be transferred |
| Box 32. | Account Number: | Enter the **account number** where funds are to be transferred |
| Box 33. | Account Type: | Enter the appropriate **account type** for the account number in Box 32 |

  -Corporate Savings
  -Corporate Checking (i.e. Trust, IOLTA, etc.)
  -Personal Checking
  -Personal Savings

**Submit completed form(s) to** DEA.AFS-ACH.Processing@usdoj.gov.

# EXHIBIT H

## (Letter to DEA dated Feb. 18, 2022)

Paul Engstrom 06870-041
2190 E Mesquite Ave
Pahrump, NV 89060

To:

Forfeiture Counsel, Asset Forfeiture Section
Drug Enforcement Administration, HQs Forfeiture Response
8701 Morrissette Drive
Springfield, VA 22152

2/18/2022

Re: PAUL PHILIP ENGSTROM return of property

Dear Mr. David A. Zekoski,

      I am writing in response to your letter dated February 3, 2021, that was received on February 11, 2021, regarding the return of property that was seized by the DEA on June 21, 2021. The letter included two serial numbered forms, 21-679937-039 and 21-679940-039, which appear to correspond with the Asset ID numbers for the two seizures of U.S. Currency. I have issues with both the stated conditions required for the return of that property and the method of return of the property, as detailed below for each specific property.

Asset ID No: 21-DEA-679937

Property:    $15,700 U.S. Currency

1. I do not agree to a change in form from the U.S. Federal Reserve Notes seized to a wire transfer. The property seized were non-fungible collectible notes worth more than face value. This includes 100 sequential uncirculated $100 US Notes, retired US Notes dating pre-1934, and US "Star" Notes whose value depends on their rarity. Both 18 U.S.C.S. § 983(a)(3)(B) and 28 C.F.R. § 8.13, the statute and rule that relate to the return of property, provide for the return of actual property seized, which is what I expect in this instance.

2. Your letter states that the Debt Collection Improvement Act of 1996 (DCIA) requires the Department of the Treasury and other disbursing officials to offset Federal payments to collect

delinquent non-tax debts owed to the United States, or delinquent debts owed to states, including past-due child support debts enforced by states. I do not believe the return of the above referenced property is subject to an offset for the following reasons.

a) The U.S. Federal Reserve Notes seized were at all times the private property of the claimant.

b) Until the government proves its right to ownership under the applicable forfeiture statute, the government is only a claimant to the property. See *United States v. 37.29 Pounds of Semi-Precious Stones*, 7 F.3d 480, 485 (6th Cir. 1993).

c) As the seized property was not contraband the government does not own the property until it proves right to ownership under the applicable forfeiture statute; see *United States v. 37.29 Pounds of Semi-Precious Stones*, 7 F.3d 480, 485 (6th Cir. 1993); United States v. 116,850 in United States Currency, 2016 U.S. Dist. LEXIS 198790 (S.C. Columbia 2016) ("The Government is not entitled to an asset in a civil forfeiture proceedings until it proves illegality"); the seized property was never property of the United States, and therefore was not public monies available to be disbursed by a disbursing official as directed by 31 U.S.C. § 3716(c)(1)(A).

d) As the seized property was not "public moneys" but instead remained at all times the private property of the claimant, the return of such property does not require the involvement of a disbursing official as defined by 31 C.F.R. § 285.5 (b) to mean "an official who has authority to disburse public money."

e) Multiple courts have held that seized currency is property that is not subject to administrative offset under the DCIA and its regulations, as a return of private property does not constitute a "federal payment." See *United States v. 116,850 in United States Currency*, 2016 U.S. Dist. LEXIS 198790 (S.C. Columbia 2016), and *In re Return of Seized Property*, 2011 U.S. Dist. LEXIS 95290, 2011 WL 3759702 (S.D. Cal. Aug. 23, 2011).

3. Your letter states, "it may take a minimum of 60 days before the properties can be returned to you." This is contrary to both statute (18 U.S.C.S. § 983(a)(3)(B)) and rule(28 C.F.R. § 8.13). Statutorily, 18 U.S.C.S. § 983(a)(3)(B) mandates "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General." While the statute fails to define a specific time frame that qualifies as "prompt", courts have found that a delay of 30 days is not "prompt." See *United States v. Fernandez-Alfonso*, 813 F.2d 1571 (9th Cir. 1987) (30 day delay...was not "prompt"). The rule promulgated by the Attorney General for the return

2

of property, 28 C.F.R. § 8.13, is even more limiting in the time allowed to release a persons property, stating "[u]pon becoming aware that the seized property must be released, the agency shall promptly notify the person with a right to *immediate possession* of the property." In light of the statutory requirement of promptness and the rule identifying the right to "immediate possession" it should be obvious that a minimum delay of 60 days is legally unacceptable. I ask that you direct me to the property custodian as directed by 28 C.F.R. § 8.13(b) so that I can take immediate possession of the property in question.

Asset ID No:  21-DEA-679940

Property:      $3,500 U.S. Currency

1. I do not agree to a change in form from the U.S. Federal Reserve Notes seized to a wire transfer. Both 18 U.S.C.S. § 983(a)(3)(B) and 28 C.F.R. § 8.13, the statute and rule that relate to the return of property, provide for the return of actual property seized, which is what I expect in this instance.

2. Your letter states that the Debt Collection Improvement Act of 1996 (DCIA) requires the Department of the Treasury and other disbursing officials to offset Federal payments to collect delinquent non-tax debts owed to the United States, or delinquent debts owed to states, including past-due child support debts enforced by states. I do not believe the return of the above referenced property is subject to an offset for the following reasons.

   a) The U.S. Federal Reserve Notes seized were at all times the private property of the claimant.

   b) Until the government proves its right to ownership under the applicable forfeiture statute, the government is only a claimant to the property. See *United States v. 37.29 Pounds of Semi-Precious Stones*, 7 F.3d 480, 485 (6th Cir. 1993).

   c) As the seized property was not contraband the government does not own the property until it proves right to ownership under the applicable forfeiture statute; see *United States v. 37.29 Pounds of Semi-Precious Stones*, 7 F.3d 480, 485 (6th Cir. 1993);  United States v. 116,850 in United States Currency, 2016 U.S. Dist. LEXIS 198790 (S.C. Columbia 2016) ("The Government is not entitled to an asset in a civil forfeiture proceedings until it proves illegality"); the seized property was never property of the United States, and therefore was not public monies available to be disbursed by a disbursing official as directed by 31 U.S.C. § 3716(c)(1)(A).

3

    d)  As the seized property was not "public moneys" but instead remained at all times the private property of the claimant, the return of such property does not require the involvement of a disbursing official as defined by 31 C.F.R. § 285.5 (b) to mean "an official who has authority to disburse public money."

    e)  Multiple courts have held that seized currency is property that is not subject to administrative offset under the DCIA and its regulations, as a return of private property does not constitute a "federal payment." See *United States v. 116,850 in United States Currency*, 2016 U.S. Dist. LEXIS 198790 (S.C. Columbia 2016), and *In re Return of Seized Property*, 2011 U.S. Dist. LEXIS 95290, 2011 WL 3759702 (S.D. Cal. Aug. 23, 2011).

3.  Your letter states, "it may take a minimum of 60 days before the properties can be returned to you." This is contrary to both statute (18 U.S.C.S. § 983(a)(3)(B)) and rule(28 C.F.R. § 8.13). Statutorily, 18 U.S.C.S. § 983(a)(3)(B) mandates "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General." While the statute fails to define a specific time frame that qualifies as "prompt", courts have found that a delay of 30 days is not "prompt." See *United States v. Fernandez-Alfonso*, 813 F.2d 1571 (9th Cir. 1987) (30 day delay...was not "prompt").  The rule promulgated by the Attorney General for the return of property, 28 C.F.R. § 8.13, is even more limiting in the time allowed to release a persons property, stating "[u]pon becoming aware that the seized property must be released, the agency shall promptly notify the person with a right to *immediate possession* of the property." In light of the statutory requirement of promptness and the rule identifying the right to "immediate possession" it should be obvious that a minimum delay of 60 days is legally unacceptable. I ask that you direct me to the property custodian as directed by 28 C.F.R. § 8.13(b) so that I can take immediate possession of the property in question.

As mentioned previously, the letter I received on February 11, 2022, appears to include forms that correspond only to the two seizures of U.S. Currency. As such, in regards to the seized Bitcoins, Dogecoin, Ethereum, and Paxos Standard, the notice does not comply with the requirement as stated in 28 C.F.R. § 8.13(b) that, "[u]pon becoming aware that the seized property must be released, the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property." The Asset ID numbers for these properties are:

Asset ID No. 21-DEA-681152 Property: 0.33081041 Bitcoins (2), Approx. VL: $10,936.70

Asset ID No. 21-DEA-681176 Property: 0.13613809 Bitcoins (2), Approx. VL: $4,473.16

Asset ID No. 21-DEA-681190 Property: 10,214.4445896 Dogecoin, Approx. VL: $2,608.04

Asset ID No. 21-DEA-681205 Property: 0.451462387496977257 Ethereum, Approx. VL: $1,067.11

Asset ID No. 21-DEA-681211 Property: 1,165.68039959 Paxos Standard, Approx. VL: $1,1165.16

I request that I be provided, as required by 28 C.F.R. § 8.13(b), with the contact information for the property custodian so I can expedite the return of my property without undue delay. I will provide the necessary addresses for the Bitcoins, Dogecoin, Ethereum, and Paxos Standard to be facilitate their return. I presume the property will be available for release back to me in a prompt manner, as discussed in paragraph 3 above.

Sincerely,

Paul Engstrom

# EXHIBIT I

(Letter to AUSAs dated Feb. 18, 2022)

Paul Engstom 06870-041
2190 E Mesquite Ave
Pahrump, NV 89060

To:

Kimberly Sokolich
Christopher Burton
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, NV 89101

2/18/2022

Re: ENGSTROM return of property (related Case No. 2:21-cr-00190-APG-EJY)

Dear Ms. Kimberly Sokolich and Mr. Christopher Burton,

I am writing to request the return of property seized on June 21, 2021. The following motorcycles were seized on June 21, 2021 during the search of 305 Saint Augustine Lane (the first six motorcycles listed) and 6145 Harrison Dr #4 (the seventh motorcycle). These motorcycles are:

| Asset ID Number | Description of Seized Property |
| --- | --- |
| 21-DEA-680480 | 2020 Ducati Superleggera VIN ZDMDAGUW1LB000138 |
| 21-DEA-680433 | 2019 Ducati MC-Racer Motorcycle VIN ZDMVABDS0KB007875 |
| 21-DEA-680436 | 2019 Ducati MC-Cruiser Motorcycle VIN ZDM13BKW2KB010548 |
| 21-DEA-680445 | 2018 Ducati Panigale Motorcycle VIN ZDMDAGNW8JB003209 |
| 21-DEA-680428 | 2020 Harley-Davidson MC-Touring Motorcycle VIN 1HD1TEH23LB954585 |
| 21-DEA-680477 | 2021 Harley-Davidson MC-Cruiser Motorcycle VIN 1HD1TCL13MB952002 |
| 21-DEA-680476 | 2019 Ducati XDiavel Motorcycle VIN ZDM13BKW1MB000502 |

The DEA sent a "NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS" for each of the above referenced properties between August 16, 2021 and August 19, 2021. A claim contesting the forfeiture was filed for each property on September 18, 2021, within 35 days as required by 18 U.S.C.S. § 983(a)(2), ending the administrative forfeiture process.

When a claim is filed contesting an administrative forfeiture the government must, not later than 90 days after a claim has been filed, file a complaint for forfeiture or obtain a criminal indictment

1

containing an allegation that the property is subject to forfeiture, 18 U.S.C.S. § 983(a)(3)(A). The deadline for the filing of a complaint or obtaining a criminal indictment was December 17, 2021.

The government failed to file a complaint or obtain a criminal indictment alleging the property is subject to forfeiture within 90 days, therefore the property must be returned in accordance with 18 U.S.C. § 983(a)(3)(B), which states in pertinent part "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." The regulations that relate to the release of property in accordance with 18 U.S.C. § 983(a)(3)(B) are codified in 28 C.F.R. § 8.13 Return of property pursuant to 18 U.S.C. 983(a)(3)(B).

28 C.F.R. § 8.13 governs the return of property pursuant to 18 U.S.C. § 983(a)(3)(B). Paragraph (a) provides that if a complaint for forfeiture is not filed nor an indictment obtained, "the U.S. Attorney in charge of the matter shall immediately notify the appropriate seizing agency that the 90-day deadline was not met." Paragraph (b) provides that, "Upon becoming aware that the seized property must be released, the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property."

As we are now over 60 days past the December 17, 2021, deadline, please consider this a formal request that the government comply with 18 U.S.C. § 983(a)(3)(B) and release the above referenced property in accordance with  28 C.F.R. § 8.13.


Sincerely,

Paul Engstrom

2

# EXHIBIT J

## (Letter from AUSAs dated March 16, 2022)



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Nevada*

| | | |
|---|---|---|
| *Christopher Chiou* | *501 Las Vegas Boulevard South* | *Phone (702)388-6336* |
| *Acting United States Attorney* | *Suite 1100* | *Fax (702)388-5087* |
| | *Las Vegas, Nevada 89101* | |

March 16, 2022

Paul Engstrom 06870-041
2190 E Mesquite Ave.
Pahrump, NV 89060

Re:   *United States v. Paul Engstrom*, 2:21-cr-000190-APG-EJY

Mr. Engstrom:

The United States is writing in response to your letter dated February 18, 2022. The United States is declining to return the property you identify in that letter at this time as it constitutes evidence of violations of law, namely those charged in the indictment. *See* 28 C.F.R. 8.13(a). Additionally, these items may be subject to forfeiture.

Sincerely,

CHRISTOPHER CHIOU
Acting United States Attorney

//s//
CHRISTOPHER BURTON
KIMBERLY SOKOLICH
Assistant United States Attorneys

2190 East Mesquite Ave
Pahrump, NV 89060

United States District Court
Attn: Clerk
333 Las Vegas Blvd S
Room 1334
Las Vegas, NV 89101