

Paul Engstrom
2190 E. Mesquite Ave
Pahrump, NV 89060
*In Proper Person*

```
                              FILED          ___ RECEIVED
                        ___ ENTERED          ___ SERVED ON
                            COUNSEL/PARTIES OF RECORD

                            JUL 2 1 2022

                        CLERK US DISTRICT COURT
                         DISTRICT OF NEVADA
                    BY:                          DEPUTY
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

        Plaintiff,

        VS.

PAUL ENGSTROM

        Defendant,

CASE NO: 2:21-cr-00190-ART-EJY

**Defendant's Response in Opposition to Government's Motion for a Protective Order Regarding Forfeitable Property Pending the Criminal Case [ECF No. 146]**

CERTIFICATION: This response is timely.[1]

## I.    Introduction

On June 21, 2021, government agents, in circumvention or willful disregard of the limitations stated in search warrants, seized nine motorcycles, three ATM machines, and other items. The seizure of these items violated Mr. Engstrom's rights under the Fourth Amendment to the United States Constitution. The government now seeks a protective order, asking the Court to judicially approve this illegal taking of property ex post, allowing the government to retain the property pending the outcome of the criminal case against Mr. Engstrom via continued seizure under the

---

1    Deadline to file Response is extended three days when service is made by mail, extending the filing deadline to July 18, 2022. *See* Fed. R. Crim. P. 49(a)(4)(C) and Fed. R. Crim. P. 45(c). These Objections were mailed on July 18, 2022, and in accordance with the "prison mailbox rule," should be considered filed on that date. *See* ECF No. 144, pp. 2-5 for argument in support of applicability of the "prison mailbox rule." See included "Declaration of Mailing," filed in accordance with 28 U.S.C. § 1746.

guise of a protective order. The government has no basis to retain the six motorcycles that were illegally seized, and their motion for a protective order restraining these items should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

### II.    Factual and Procedural Background

On June 21, 2021, the Drug Enforcement Administration ("DEA") executed criminal search warrants on four residences and one commercial property. During the course of that search, DEA agents seized numerous items that were outside the scope of the search warrant. These items include nine motorcycles, three ATM machines, one floor jack, and other items. Within months of the seizure, the DEA, on their own volition, returned some of the illegally seized items. Specifically, the DEA returned one motorcycle to Defendant Cuomo, one motorcycle to Defendant Elliott, and the floor jack to Mr. Engstrom's spouse.[2]

On July 6, 2021, the Grand Jury returned an indictment against Mr. Engstrom, charging him with conspiracy to distribute a controlled substance, distribution of a controlled substance, possession with intent to distribute a controlled substance, and conspiracy to commit money laundering. The indictment included four forfeiture allegations. It is important to note that the property at issue was not named in the forfeiture allegations, hence the Grand Jury made no probable cause finding on the nexus between the charged offenses and the property.

Between August 16-20, 2021, the DEA sent a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" ("Seizure Notice") for each of the properties for which the government is seeking a protective order.[3] These Seizure Notices initiated the administrative forfeiture process as regulated by 18 U.S.C. § 983. On September 18, 2021, Mr. Engstrom filed a

---

2      The government initially refused to return any of the seven motorcycles that remained in in their custody. In response to the Motion for Return of Property (ECF No. 132) filed in this case, the government agreed to return the 2018 Ducati Panigale that was seized from 305 Saint Augustine Lane and the three ATM machines that were seized from 6145 Harrison Drive. This motorcycle was released to Mr. Engstrom's spouse on July 11, 2022, and the three ATM machines were released to Mr. Engstrom's spouse on July 15, 2022.
3      *See* ECF No. 143, pp. 26-37.

timely claim for the six motorcycles the government seeks to restrain.[4] The September 18, 2021, claim triggered the 90-day clock prescribed in 18 U.S.C. § 983(a)(3)(A) where the government must 1) file a complaint for forfeiture against the res or return the property,[5] or 2) obtain a criminal indictment containing an allegation that the property is subject to forfeiture;[6] and take the steps necessary to preserve its right to maintain the property as provided in the applicable criminal forfeiture statute.[7] At the expiration of the 90-day period, which was December 17, 2021, the government had not availed itself of either option.[8] Therefore, Congress mandates that "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."[9]

On February 18, 2022, 60 days after the expiration of the December 17, 2021, deadline for the government to seek judicial forfeiture, Mr. Engstrom sent a letter to AUSAs Sokolich and Burton. This letter requested the return of his seven motorcycles, informing the government that the 90-day period prescribed by 18 U.S.C. § 983(a)(3)(A) had expired, and therefore 18 U.S.C. § 983(a)(3)(B) required their prompt return.[10] The government responded with a letter dated March 16, 2022, stating "The United States is declining to return the property you identify in the letter at this time as it constitutes evidence of violations of law, namely those charged in the indictment. See 28 C.F.R. 8.13(a). Additionally, these items may be subject to forfeiture."[11]

Mr. Engstrom next sought court intervention in seeking the return of his property, arguing

---

4       *See* ECF No. 132, p. 72. Mr. Engstrom claim did not include the Monero the government seeks to restrain and he is unaware if this property was claimed by another party.
5       18 U.S.C. § 983(a)(3)(B)(i).
6       18 U.S.C. § 983(a)(3)(B)(ii)(I).
7       18 U.S.C. § 983(a)(3)(B)(ii)(II).
8       The government contends in their motion that "Engstrom filed an administrative claim requesting judicial civil forfeiture *in rem* action." *See* ECF No. 146, p. 3. This is incorrect. The filing of a claim requests only judicial forfeiture action, either civilly *in rem* or criminally *in personam*.
9       18 U.S.C. § 983(a)(3)(B).
10      *See* ECF No. 132, Ex. I.
11      *See Id.*, Ex. J.

that the return of his property was both required to be returned in accordance with 18 U.S.C. § 983(a)(3)(B) and, alternatively, that its return was required pursuant to Federal Rule of Criminal Procedure 41(g) as property that was illegally seized. On April 28, 2022, Mr. Engstrom filed a Motion for Return of Property.[12] This motion sought the return of seven motorcycles, including the six motorcycles relevant to the requested protective order, three ATM machines, and cash and cryptocurrency previously claimed by Mr. Engstrom that the DEA had indicated they would return.

On May 10, 2021, the government filed a Bill of Particulars for Forfeiture of Property.[13] The Bill of Particulars lists the six motorcycles as property to which the government will seek forfeiture. The Bill of Particulars does not argue that the six motorcycles have the requisite nexus to the charged offenses and does not identify the government's basis for seeking forfeiture of the six motorcycles. The Bill of Particulars also lists 284.742879735905 Monero Cryptocurrency as property to which the government will seek forfeiture. Again, the government fails to argue that the Monero Cryptocurrency has the requisite nexus to the charged offense and does not identify the government's basis for seeking its forfeiture.

The government filed a response to Mr. Engstrom's Motion for Return of Property on May 13, 2022.[14] In this response the government agreed to return cash, cryptocurrency, three ATM machines, and one 2018 Ducati Panigale.[15] The government opposed the return of the six remaining motorcycles, stating "the government will be seeking forfeiture as to those items."[16]

The deadline for Mr. Engstrom to file a reply to the government's response was May 23, 2022, and, as allowed by the "prison mailbox rule," he delivered his reply to staff at the Nevada Southern Detention Center for forwarding to the Court that day. This timely reply was received by the Clerk on May 26, 2022, and filed as ECF No. 140.

---

12    ECF No. 132.
13    ECF No. 136.
14    ECF No. 137.
15    *Id.*, p. 12.
16    *Id.*

Unfortunately for Mr. Engstrom, on May 26, 2022, prior to receiving his reply, Magistrate Judge Youchah filed a Report and Recommendation (R&R).[17] This R&R, which recommended that Defendant's Motion for Return of Property be Granted in part and Denied in part, stated that Mr. Engstrom did not file a Reply, and wholly adopted the arguments averred by the government in their response.[18]

On June 15, 2022, Mr. Engstrom filed Objections to the R&R.[19] These objections, while extensive, appropriately specified the portions of the Magistrate Judge's R&R to which Mr. Engstrom objected.[20] The Magistrate Judge's recommendation regarding  On June 29, 2022, the government filed a Response to the Objections.[21] As this matter is now fully briefed, Mr. Engstrom believes that his Motion for Return of Property is now ripe for consideration in front of Honorable District Court Judge Anne R. Traum.

The government filed a Motion for a Protective Order Regarding Forfeitable Property Pending the Criminal Case on June 29, 2022.[22] Mr. Engstrom's response follows.

## III.    Argument

### A.    Rule 32.2 does not provide a basis to justify pretrial seizure or the issuance of a protective order

The government argues that they are authorized to pursue criminal forfeiture without pursuing civil forfeiture proceedings, further implying that a protective order can be issued based on

---

17    ECF No. 139.
18    Mr. Engstrom filed a document titled "Memorandum Re: Report and Recommendation (ECF No. 139)" on June 9, 2021, making the Court aware that he had filed a timely Reply. ECF No. 141. The government filed a response arguing that the Mr. Engstrom was not eligible to benefit from the "prison mailbox rule." ECF No. 142. Mr. Engstrom then filed a reply in support of his Memorandum, providing further argument and relevant case law to support his belief that the "prison mailbox rule" should apply to all of his filings. ECF No. 144.
19    ECF No. 143.
20    Two of the objections made to the R&R relate to the Magistrate Judge's reliance on unsworn representations made by the attorneys for the United States and the recommended finding of probable cause based on those representations.
21    ECF No. 145.
22    ECF No. 146.

their compliance with Rule 32.2.[23] Mr. Engstrom argues that the government's compliance, or lack

thereof, with Fed. R. Crim. P. 32.2 is wholly irrelevant, as Rule 32.2 details the *post-conviction*

procedure for criminal forfeiture. As post-conviction forfeiture and the pretrial restraint of assets are

wholly different animals, the government's reliance on Rule 32.2 in seeking a protective order is

without basis.[24]

Specifically, the provision of Rule 32.2 that relates to seizure of property, Rule 32.2(b)(3), is

predicated on authorization derived from the entry of a preliminary order of forfeiture, and a

preliminary order of forfeiture is only entered after the court finds that property is subject to

forfeiture,[25] which is an issue that is determined after a finding of guilty, or the acceptance of a plea

of guilty or nolo contendere.[26] As such, seizure under Rule 32.2 can only occur after a finding of

guilt, providing no legal basis to justify the pretrial seizure and continued restraint of Mr. Engstrom's

property.

In their motion, the government cites Rule 32.2(b)(1)(C),[27] (e)(1)(A) and (e)(2)(A), then

states "[t]he government followed the above-mentioned procedures and subsequently filed the bill of

particulars identifying the specific properties and a specific criminal forfeiture money judgement."[28]

Here, the government puts the cart before the horse. Rule 32(b)(2)(C) describes the procedures that

must be followed after a finding of guilt when entering a preliminary order of forfeiture.[29] Rule

32.2(e) relates to "Subsequently Located Property; Substitute Property," where the procedures, to

which the government purports to have followed, require the previous existence of an order of

---

23   *See* ECF No. 146, p. 4, ("The government has met the criminal forfeiture requirements of
Federal Rules of Criminal Procedure.").
24   *See United States v. Razmilovic*, 419 F.3d 134 (2d Cir. 2005) ("The distinction between
forfeiture and pretrial restraint is no technical play on words. Pretrial restraint is a severe remedy
independent of a right to damages or property following a finding of liability. Indeed, the Supreme
Court has dubbed pretrial restraint as a 'nuclear weapon' of the law.'").
25   *See* Rule 32.2(b)(2)(A).
26   *See* Rule 32.2(b)(1)(A).
27   It appears that the government intended to cite Rule 32.2(b)(2)(C).
28   ECF No. 146, p. 4.
29   *See* Rule 32(b)(2) ("Preliminary order.")

forfeiture.[30] Temporally, Rule 32.2(e) would only become operative after the entry of a final order of forfeiture, which can only be entered after sentencing. As such, the government's reliance on Rule 32.2 in providing legal justification for the issuance of a pretrial protective order misses the mark by a wide margin.

**B.      The government is subject to the requirements of 18 U.S.C. § 983**

The government devotes a significant portion of their motion arguing that they did not pursue civil forfeiture and therefore should not be subject to the requirements of 18 U.S.C. § 983. For the following reasons, this argument must fail.

First, the government admits in the instant motion that, "DEA started the administrative forfeiture process."[31] The initiation of the administrative forfeiture process subjects the United States to the requirements of 18 U.S.C. § 983. The provisions of CAFRA, which is codified in 18 U.S.C. § 983, offer the government a streamlined process when seeking forfeiture, but when the government chooses to avail themselves of that process it does not come without a cost. CAFRA was enacted, at least in part, to increase the protections of claimants, as explained succinctly by the Honorable Charles R. Pyle:

> In 2000, Congress enacted the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983, to provide increased protections for claimants. *United States v. Ritchie*, 342 F.3d 903, 910 n. 1 (9th Cir. 2003); *see also Stefan D. Cassella, The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J.Legis. 97, 122-25 (2001) ("Cassella"). "The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well." *Cassella*, at pp. 122-25. CAFRA imposed the 90-day deadline for the government to file a complaint set out at 18 U.S.C. § 983(a)(3)(A). The 90-day time limit is mandatory and "[t]he requirement that the Government release the seized property where it fails to file a timely complaint for forfeiture is the 'sanction' that CAFRA imposes for such

---

30   *See* Rule 32.2(e)(1)(A) ("is subject to forfeiture under an existing order of forfeiture...").
31   *See* ECF No. 146, p. 3.

> failure." United States v. One *2007 Harley Davidson Street Glide Motorcycle*,982 F.Supp.2d 634 (D.Md. 2013) (citing *United States v. Wilson*, 699 F.3d 789, 791 (4th Cir. 2012)). Moreover, because forfeitures are disfavored, forfeiture laws are strictly construed against the government. *Ritchie*, 342 F.3d at 910.

*United States v. $229,850.00 in United States Currency*, 2014 U.S. Dist. LEXIS 135298 (D. Ariz., Sept. 25, 2014). Consequently, as stated above, the cost to the United States when first attempting to forfeit property administratively is both facing the deadlines prescribed by CAFRA in 18 U.S.C. § 983 and suffering the consequences of missing those deadlines.[32] The government cannot, as they argue in their motion, initiate administrative forfeiture proceedings, and then when a claim is filed simply abdicate themselves of the the statutory requirements that entail.

In the instant motion, and the government's opposition to Mr. Engstrom's Motion for Return of Property which seeks the return of the same six motorcycles, the government is adamant that the protections provided by CAFRA, which require the return of his property, should not apply to Mr. Engstrom. First, in their response to Mr. Engstrom's Motion for Return of Property, the government makes the obviously false claim that "In this case, the government is simply not pursuing forfeiture under Section 983."[33] The government now claims that the following circumstances obviate their statutory obligations under 18 U.S.C. § 983, that "[t]he grand jury returned an indictment before Engstrom filed his civil administrative claim.";[34] "[w]hen the returned criminal indictment with forfeiture allegations is obtained before the 90-day requirement even starts, the government has met the forfeiture requirements of Rule 32.2, is no longer subject to 18 U.S.C. § 983(a)(3)(A) and (B) and need not pursue civil forfeiture.";[35] and somewhat confusingly "[t]emporally, if the criminal indictment with forfeiture allegations is filed during the 90 days, then the government must use

---

32    *See also United States v. Wilson*, 699 F.3d 789, 795 (4th Cir. 2012). ("The statute imposes a 90-day deadline on the government and provides the sanction that the property will be released if the government does not meet its deadline.").
33    *See* ECF No. 137, p. 15.
34    *See* ECF No. 146, p. 4.
35    *See* ECF No. 146, pp. 5-6.

the applicable criminal forfeiture procedures to possess the property. But again, here the indictment with forfeiture allegations was returned before the 90 days began to run and the government is seeking forfeiture under 21 U.S.C. § 853."[36]

The fatal flaw in the governments argument regarding the timing of the indictment, as it relates to its compliance with the deadlines of 18 U.S.C. § 983, is that the indictment was not sufficient for the purposes of 18 U.S.C. § 983(a)(3)(B)(ii)(I), where the plain language of the statute requires more specificity than that which was stated in the indictment.[37] In requiring that a criminal indictment must contain an allegation that "the property"[38] is subject to forfeiture, Congress imbued a specificity requirement to 18 U.S.C. § 983(a)(3)(B)(ii)(I) that surpasses the forgiving provision found in Fed. R. Crim. P. 32.2(a).[39] Here, the government did not obtain an indictment that comports with the heightened requirements found in 18 U.S.C. § 983(a)(3)(B)(ii)(I) prior to the expiration of the 90-day deadline, and as such, remain subject to both the deadlines and sanctions prescribed by statute.

C.    The government's temporal argument must fail

It should also be noted that the timing of the government's actions in obtaining an indictment and then subsequently initiating the administrative forfeiture process do not lead to the conclusion towhich the government urges the Court to reach. In the instant motion the government avers, that because an indictment was returned "*before* the 90-day requirement even starts, the government has met the forfeiture requirements of Rule 32.2, is no longer subject to 18 U.S.C. § 983(a)(3)(A) and

---

36    *See* ECF No. 146, p. 6.
37    *See United States v. 2015 Chevrolet City Express LS*, 2019 Dist. LEXIS 60969 at 16 (S. D. Ind. 2019) ("the plain language of [18 U.S.C. § 983(a)(3)(B)(ii)(I)] requires the government to 'obtain a criminal indictment containing an allegation that the property is subject to forfeiture.' It does not contain any forgiving provision like that found in Fed. R. Crim. P. 32.2(a), stating that an indictment need not identify the property subject to forfeiture.").
38    *See Roblin v. Newmar Corp.*, 859 Fed. Appx. 171 (9th Cir. 2021) ("A statute's use of "the definite article, 'the,' indicates something specific.").
39    *Compare* 18 U.S.C. § 983(a)(3)(B)(ii)(I) ("obtain a criminal indictment containing an allegation that the property is subject to forfeiture," with Fed. R. Crim. P. 32.2(a) ("The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks.").

(B) and need not pursue civil forfeiture."[40] The timing the government describes is a circumstance that Congress anticipated and one which 18 U.S.C. § 983(a)(1)(A)(iii)(I) and (II) specifically addresses, where the statute states:

> (iii) If, before the 60-day period expires, the Government does not file a civil judicial forfeiture action, but does obtain a criminal indictment containing an allegation that the property is subject to forfeiture, the Government shall either—
>
>> (I) send notice within the 60 days and continue the nonjudicial civil forfeiture proceeding under this section; or
>>
>> (II) terminate the nonjudicial civil forfeiture proceeding, and take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute.[41]

Here, the government obtained an indictment on July 6, 2021, and then initiated administrative forfeiture proceedings by sending Seizure Notices between August 16-20, 2021. The government's assertion that the fact that Mr. Engstrom's claim was filed after the indictment, when the administrative seizure action was also initiated after the filing of the indictment, somehow obviates the government from subjection to the requirements of 18 U.S.C. § 983(a)(3)(A) and (B) is absurd.[42] In this case, it appears that even if the government had obtained an indictment that was sufficient, they chose to proceed under 18 U.S.C. § 983(a)(1)(A)(iii)(I) and continue the nonjudicial civil forfeiture proceeding. This further vitiates the government's position that they should not be subject to the requirements of 18 U.S.C. § 983.[43]

**D.** **The government's reliance on 18 U.S.C. § 983(a)(3)(C) is misplaced.**

In support of their argument that the filing of an indictment absolves them of being subject to

---

40    ECF No. 146, pp. 5-6.
41    18 U.S.C. § 983(a)(1)(A)(iii)(I) and (II).
42    *See* ECF No. 146, p. 4. ("[w]hen the returned criminal indictment with forfeiture allegations is obtained before the 90-day requirement even starts, the government has met the forfeiture requirements of Rule 32.2, is no longer subject to 18 U.S.C. § 983(a)(3)(A) and (B).").
43    It should also be noted in both 18 U.S.C. § 983(a)(1)(A)(iii)(I) and (II) Congress again uses the phrase "the property." For the reasons stated supra, this imbues a specificity requirement higher than that is included in the verbiage of Rule 32.2.

CAFRA, the government cites 18 U.S.C. § 983(a)(3)(C).[45] Mr. Engstrom argues the following in response.

It is significant that 18 U.S.C. § 983(a)(3)(C) states that "In lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment..." as this begs the question of as to which subsection of  18 U.S.C. § 983(a)(3) subsection (C) relates. The obvious answer is that subsection (C) relates to only subsection (a)(3)(A), for if subsection (C) was read to be operative on subjection (B) the result would render 18 U.S.C. § 983(a)(3)(B)(ii)(I) and (II) superfluous and void.[46]

To explain further, subsection (A) states "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint..." 18 U.S.C. § 983(a)(3)(A). In subsection (A), there is no mention that the filing of a criminal indictment will suffice to satisfy the government's obligations to institute a judicial forfeiture action, hence, the verbiage of subsection (C) is necessary. It informs the government and the claimant of two things. First, the filing of a criminal forfeiture complaint within the 90 day period is sufficient to satisfy the government's obligation to institute judicial forfeiture proceedings after a claim is filed in an administrative forfeiture. Second, it informs the government and the claimant that if criminal forfeiture is the only judicial action instituted within the 90 day period, the government's right to continued possession of property shall be governed by the applicable criminal forfeiture statute.[47] An effect subsection (C) of 983 does not have is one that alters the requirement

---

45    *See* ECF No. 146, p. 6, n. 11.
46    *See Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) ("[a] statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (quoting Hibbs v. Winn, 542 U.S. 88, 101, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004)).
47    *See* 18 U.S.C. § 983(a)(3)(C) ("In lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment. If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute.").

that judicial forfeiture must commence within 90 days. So, by the plain reading of the statute, when the government fails to commence a judicial forfeiture action within 90 days, whether it be civil or criminal in nature, 18 U.S.C. § 983(a)(3)(B) requires the "prompt release of property." 18 U.S.C. § 983(a)(3)(B).[48]

If one were to argue that subsection (C) of 983 also has an operative effect on subsection (B) this argument would fail, as this reading would impose the dictates of subsection (C) onto subsection (B)(ii)(I), making subsection (B)(ii)(II) wholly superfluous.[49]

Subsection (C), read in conjunction with subsection (A), serves to clarify and supplement the intent of Congress in subsection (A), and does not alter or alleviate the government obligation to return property under subsection (B) when no judicial forfeiture is commenced within 90 days from the date a claim is filed. It is the law of the circuit in the Ninth Circuit that "[a] failure to institute a timely judicial forfeiture proceeding requires the return of property and constitutes a waiver of the right to seek civil forfeiture in connection with the same underlying offense."[50] While the holding in *Carvajal* does not preclude the government from seeking criminal forfeiture the language is unequivocally clear, when the government fails to meet the deadlines of 18 U.S.C. § 983(a)(3)(A) the property must be returned.

Courts in other districts have found that the failure to institute a timely judicial forfeiture proceeding requires the return of property, while acknowledging that the government is not precluded from seeking criminal forfeiture of the property. In *United States v. Goodchild*, 347 F. Supp. 3D 258 (E.D. Pa., Nov. 14, 2018), is a case with facts analguous to the instant case. Where the

---

48    *See also United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994) ("forfeiture statutes are strictly construed against the government.").

49    *See* 18 U.S.C. § 983(a)(3)(B)(i) and (ii)(I)-(II) ("(B) If the Government does not—(i) file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or (ii) before the time for filing a complaint has expired—(I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and (II) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute.").

50    *Carvajal v. United States*, 521 F.3d 1242, 1248 (9th Cir. 2008).

government sought a order under 21 U.S.C. § 853(e) after failing to satisfy its obligations under 18 U.S.C. § 983(a)(3), the court stated, "I find it significant that § 983(a)(3)(B) addresses both the civil and criminal remedies afforded to the Government: the filing of a civil complaint or the return of an indictment are each subject to the 90-day window. If that deadline is violated, 'the Government shall promptly release the property' seized."[51] In *Goodchild* the government had filed a time barred civil forfeiture complaint, but the impetus behind the finding that the property must be returned was that the government failed to abide by the 90-day deadline in § 983(a)(3), which is the same failing of the government in this case.[52]

This holding of the court in *Carvajal* and the ruling in *Goodchild* are further bolstered if one considers that Congress included verbiage in 18 U.S.C. § 983(a)(1)(F) that demonstrates that the members of Congress were cognizant of their ability to enact law with more forgiving language when that is their intent.[53] Here, the absence in section 983(a)(3)(B) of the forgiving provisions found in 983(a)(1)(F) must be presumed to be intentional.[54]

A literal interpretation of 18 U.S.C. § 983(a)(3)(C) also leads to the conclusion that the initiation of administrative forfeiture proceedings are a "forfeiture proceeding commenced by the Government" as considered by the second sentence of § 983(a)(3)(C), and therefore, once a administrative forfeiture proceeding is commenced, the right of to continued possession of the

---

51    *Goodchild*, 347 F. Supp. 3d at 262-63.
52    *See Goodchild*, 347 F. Supp. 3d at 266.
53    *Compare* 18 U.S.C. § 983(a)(1)(F) ("If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.") and § 983(a)(3)(B) ("the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.").
54    *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed 17 (1983)) ( "When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

1  property should not be governed by the applicable criminal forfeiture statute but by CAFRA. First,

2  the plain text of the statute as written states "if criminal forfeiture is the only forfeiture proceeding

3  commenced..."[56] There are three different types of forfeiture considered in 18 U.S.C. § 983,

4  nonjudicial civil forfeiture, civil judicial forfeiture, and criminal judicial forfeiture. One should

5  assume that if it was the intention of Congress to exclude the commencement nonjudicial civil

6  forfeiture from the reading of the second sentence in subsection (C) they would have instead written

7  "if criminal forfeiture is the only judicial forfeiture proceeding commenced." The legislative history

8  of CAFRA also leads to the conclusion that administrative (nonjudicial) forfeiture is to be

9  considered a forfeiture proceeding commenced.[57]

10      Further, reading the commencement of an administrative forfeiture proceeding out of

11  sentence two would lead to the general nullification CAFRA. As the the sending of notice is what

12  instutes the administrative forfeiture process, and gives effect to the provisions of CAFRA, it must

13  be considered a "forfeiture proceeding commenced." To interpret otherwise would render the

14  provisions of  18 U.S.C. § 983(a)(1)(A)(iii)(I) and (II) useless and eviscerate any effect of the

15  deadlines set forth in CAFRA. For anytime the government proceeded dually, seeking administrative

16  forfeiture and criminal forfeiture simultaneously, criminal forfeiture would be deemed to be the only

17  forfeiture proceeding commenced and the right to continued possession would be governed by the

18  applicable criminal forfeiture statute. This would eviscerate the protections promised by CAFRA

19  and the deadlines imposed by 18 U.S.C. § 983(a)(3)(A)-(B) would be made irrelevant.[58]

20

21  56      18 U.S.C. § 983(a)(3)(C); *see also Griffin v Oceanic Contractors, Inc.*, 458 US 564, 570, 73 L Ed 2d 973, 102 S Ct 3245 (1982) ("Our task is to give effect to the will of Congress, and where it

22  will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.") (internal quotation marks omitted).

23  57      *See United States v. One Piper Aztec F Deluxe Model Aircraft*, 321 F.3d 355, 359 (3d Cir. 2003) ("Subsequent legislative history demonstrates that 'the date on which a forfeiture proceeding

24  is commenced is the date on which the first administrative notice of forfeiture relating to the property is sent.'") (quoting 146 Cong. Rec. H2040, H2051 (daily ed. April 11, 2000)).

25  58      This appears to the governments position, as in a concurrent filing, after conceding that administration forfeiture proceedings were initiated, they state, "[t]herefore, Section 983 is

26  irrelevant," ECF No. 145, p. 14. and argue that they should be allowed to proceed "without regard to the irrelevant time limit imposed in 18 U.S.C. § 983." *Id.*, p. 15.

**E.     The facts of cases relied upon by the government, where protective orders were granted, are distinguishable from the facts of this case.**

In their motion the government cites a handful of cases in support of their argument that they are entitled to maintain possession of seized property through the issuance of a protective order.[59] In each of those cases there existed two conditions precedent to the issuance of a protective order, the property had been seized pursuant to a warrant and there had been a judicial finding of probable cause, leading to the government lawfully possessing the res. Neither of those conditions are present in this case, and as such, in this case the government does not lawfully possess the motorcycles.

**F.     The government argument in support of seizure contradict their arguments in previous pleadings**

In their motion, the government argues, "[i]ndeed, the facts of the instant case are more favorable for the granting of a protective order than those cited above. First, the property to be forfeited was not seized pursuant to a criminal search warrant or a civil seizure warrant. Instead, the government executed a criminal search warrant on a residence for evidence and seized the property under an exception to the Fourth Amendment warrant requirement."[60] The claim that the motorcycles were seized under an exception to the Fourth Amendment warrant requirement contradicts the argument the previously made by the government. In the Government's Response in Opposition to Defendant's Motion for Return of Property,[61] in justification of the warrantless seizures of the motorcycles, the government states, "[i]deed, law enforcement is statutorily permitted to seize property found during a lawful search that it when it has probable cause to believe

---

59     Mr. Engstrom, who is detained, only has access to LexisNexis. A majority of the government's cited cases were unpublished, to which the government cited using West Law annotations. This made it incredibly difficult for Mr. Engstrom to find the referenced cases, and impossible for him to find the pages the government identified. Of the cases that only included West Law citations, he was able to locate *David Young*, *Abrahams*, and *Zazueta-Hernandez*. *Scarmazzo*, which the government relies upon in their argument that a bill of particulars is sufficient to support the issuance of a protective order, apparently does not exist in LexisNexis, and as such Mr. Engstrom was not able to review.

60     *See* ECF No. 146, p. 9.

61     ECF No. 137.

it is subject to forfeiture."[62] The government then cited 18 U.S.C. 981(b)(2)(B)(i) in support of this argument.[63]

While it is not a surprise that the government has now abandoned their claim that the agents conducting the search were "statutorily permitted to seize property," as Mr. Engstrom included presented extensive argument in both his reply[64] and his objections[65] detailing why that position was precluded by controlling law, unconstitutional, and a violation of Department of Justice policy. This incongruity should be noted by the Court.

### G.   The government's position that probable cause is not necessary to issue a protective order offends the United States Constitution.

In their motion the government claims "probable cause is not necessary to issue a protective order."[66] Due to the government's choice in citing using West Law pagination, Mr. Engstrom was unable to locate the actual citation, but such a claim necessitates a response regardless.

Considering the facts of the instant case, if the Court were to adopt this position of the government, the result would eviscerate the Due Process Clause of the Fifth Amendment, throw CAFRA out the window, and leave United States citizens subject to unfettered seizure the likes of which has not been seen since the proliferation of the odious general warrant utilized by the English crown known as the writ of assistance.[67]

### H.   The government's reliance on a probable cause determination made by law enforcement officers violates well established law and the protections of the Fourth Amendment

To clarify, it is the government's position that there has been no judicial finding of probable

---

62    *Id.*, p. 17.
63    *Id.*, p. 17., n. 49.
64    ECF No. 140, pp. 7-9.
65    ECF No. 143, pp. 11-12.
66    ECF No. 146, p. 10, n. 28.
67    *See United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 118, 113 S. Ct. 1126, 122 L. Ed. 2d 469 (1993) ("the misuse of the hated general warrant is often cited as an important cause of the American Revolution.").

cause made in regards to the subject motorcycles. Yet the government does not see this as an

impediment to their quest to retain possession of the property. It is the government's position that

they can seize any property they want, without seeking judicial intervention, and then, when the

legal owner requests for the return of their property, request a court to issue a protective order, which

they purport can be issued without any necessary finding of probable cause, allowing them to retain

possession of the property indefinitely.

Some obstacles do in fact stand in their way. First, the Due Process Clause of the Fifth

Amendment to the United States Constitution, which states in pertinent part, "[n]o person shall...be

deprived of life, liberty, or property, without due process of law," is an obvious impediment to the

position the government asks the Court to adopt. The due process that the Fifth Amendment

guarantees, as it relates to seizure, is protected in part by the particularity requirement contained

within the warrant requirement of the Fourth Amendment to the United States Constitution, stating

"no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized."[68] The Fourth

Amendment further guarantees, in the Unreasonableness Clause, "[t]he right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

Here, the seizure of the motorcycles exceeded the scope of the warrant that was being executed, and

was therefore unreasonable.[69] The Fourth Amendment's warrant requirement is crucial when

---

[68]   *See United States v. United States District Court for Eastern Dist. of Mich.*, 407 U.S. 297, 318, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972) ("Prior review by a neutral and detached magistrate is the time-tested means of effectuating Fourth Amendment rights."); *and United States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2019) ("The particularity requirement serves foundational constitutional interests and must be zealously protected. The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.'").

[69]   *See Ramirez*, 976 F.3d at 952 ("a search or seizure pursuant to an otherwise valid warrant is unreasonable under the Fourth Amendment to the extent it exceeds the scope of that warrant."); *see also Bivens v. Six Unknown Agents*, 403 U.S. 388, 394 n. 7, 91 S. Ct. 1999, 2004 n. 7, 29 L. Ed. 2D 619 (1971) ("the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant.").

protecting the rights of the people to be free from unreasonable searches. As such, the United States Supreme Court has stated, "Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police."[70] The government now asks the Court to disregard the Constitutional protections afforded to all individuals, dispense with the need to secure a warrant, and allow them to seize and retain any property when a law enforcement agent makes a determination that probable cause exists to justify the seizure. The idea that law enforcement officers can be depended upon to determine the existence of probable cause is another notion that has been considered by the Supreme Court. Their finding was, "[p]ower is a heady thing; and history shows that the police acting on their own cannot be trusted."[71]

The facts of the case reinforce the importance of the interposition of the neutral magistrate when seeking a warrant, where on June 21, 2021, law enforcement agents seized nine motorcycles, three ATM machines, and one floor jack, all of which were outside the scope of the warrants that were being executed. The government has argued in other pleadings that the seizure of the six subject motorcycles was justified based on a probable cause determination made by the law enforcement officers conducting the search. This reliance on the "on the fly" determination of probable cause made by law enforcement officers, outside the judicial process, is in itself a violation of the Fourth Amendment.[72] The Ninth Circuit reiterated the fundamental importance of particularity in warrants in their decision in *Ramirez*, stating:

> The particularity requirement serves foundational constitutional interests and must be zealously protected. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed.

---

70    *See McDonald v. United States*, 335 U.S. 451, 455, 69 S. Ct. 191, 93 L. Ed. 153 (1948).
71    *Id.* at 456.
72    It is theoretically possible that in this case the Magistrate Judge who issued the warrant, after looking at the affidavit, determined that probable cause did not exist to seize the items that officers nonetheless decided to seize. This is a situation postulated by the Supreme Court in *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

231, Treas. Dec. 42528 (1927). In addition, the particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search," *Groh v. Ramirez*, 540 U.S. 551, 561, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (citation omitted), and "greatly reduces the perception of unlawful or intrusive police conduct," *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). To serve these ends, the particularity requirement leaves nothing "to the discretion of the officer executing the warrant." *Marron*, 275 U.S. At 196.[73]

It appears that the government's taking of the nine subject motorcycles, the three ATM machines, and the floor jack violates three holdings of *Ramirez* found in the paragraph quoted above. First, the particularity requirement is meant to "make general searches under [warrants] impossible and prevents the seizure of one thing under a warrant describing another."[74] In this case, the actions of the law enforcement officers can be seen as nothing but a violation of the particularity requirement of the Fourth Amendment. Next, the particularity requirement is meant to "assure[] the individual whose property is searched or seized of the lawful authority of the executing officer...and the limits of his power to search."[75] Here, Mr. Engstrom, and the other occupants of the premises that were searched, were denied this protection. When officers executing a search warrant are allowed to seize anything they desire, regardless if the warrant authorizes the seizure of those items, is that not the exact description of a general search that the Fourth Amendment is meant to protect? Finally, "the particularity requirement leaves nothing 'to the discretion of the officer executing the warrant.'"[76]

---

73    *Ramirez*, 976 F.3d 946 at 952.
74    *Id.*
75    *Id.*
76    *Id.; see also United States v. Sedaghaty*, 728 F.3d 885, 913 (9th Cir. 2013) ([T]he particularity requirement of the fourth amendment prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."); and *Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436 (1948) ("The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.").

Here, the government has conceded that the items that were seized outside of the scope of the warrant were taken at the discretion of the officer executing the warrant.[77] The law of the Ninth Circuit in regards to seizure of items outside the scope of an issued warrant is clear, stating "in searches made pursuant to warrants only the specifically enumerated items may be seized."[78] In this case, law enforcement agents acted in violation of the Fourth Amendment and well established precedent and should not be rewarded.[79]

The probable cause finding made by officers is problematic in itself. The information relied upon by the officers when making the probable cause determination included, "[t]hey were also aware that one of Engstrom's residences had multiple motorcycles parked in the garage and determined those vehicles belonged to Engstrom and had been purchase during the date range of the conspiracy."[80] There are two problems with relying on an officers probable cause determination. First, being "purchased during the date range of the conspiracy" is not sufficient to satisfy the requirement of probable cause necessary to seize property as potentially forfeitable. What a Magistrate Judge would know, and the law enforcement agents apparently did not, is that "in order for property to be seized, the government must have probable cause to believe that the seized property is subject to forfeiture. See 18 U.S.C. §§ 981, 982; 21 U.S.C. § 853(f); 28 U.S.C. §

---

77  *See* ECF No. 137, p. 17. ("However, that the motorcycles were not specifically listed in the search warrant is not alone fatal to the government's seizure of them. Indeed, law enforcement is statutorily permitted to seize any property found during a lawful search when it has probable cause to believe it is subject to forfeiture.").

78  *Sedaghaty*, 728 F.3d 885 at 913 (quoting *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982)).; *see also United States v Place*, 462 US 696, 701, 77 L Ed 2d 110, 103 S Ct 2637 (1983) ("In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.").

79  *See United States v. Comprehensive Drug Testing Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2008) ("When, as here, the government comes into possession of evidence by circumventing or willfully disregarding limitations in a search warrant, it must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence or any fruits thereof. When the district court determines that the government has obtained the evidence through intentional wrongdoing--rather than through a technical or good faith mistake--it should order return of the property without the need for balancing that is applicable in the more ordinary case.").

80  ECF No 137, p. 17.

2461(c). To demonstrate probable cause, the government must establish a nexus between the property and the illegal activity."[81] Here, law enforcement officers did not establish a nexus between the property and the illegal activity, with the government only claiming that the property was "purchased during the date range of the conspiracy."

Notwithstanding that when the property is purchased is not sufficient to establish a nexus, that law enforcement officers made the determination that the property was purchased during the date range of the conspiracy is another incongruous claim, where the search warrant materials upon which the officers would have depended did not specify any temporal range for the alleged illegal activity. As stated in previous pleadings, the warrant for each premises consists of three documents, the Warrant, Attachment A, and Attachment B, where Attachment A is specific to each subject property and describes the location to be searched and Attachment B lists the "Items to be Seized."[82] That the warrants consist of only these three documents is a fact that has been uncontested by the government. Additionally, these Warrants were provided by the government in discovery as Bates number documents 1034 (Harrison Warrant), 1048 (Midseason Mist Warrant), and 1062 (Saint Augustine Warrant).[83] If the date range for the alleged conspiracy wasn't stated in the warrant, how then did TFO Robb J Lovell make the determination that the Ducati Monster MC-Racer that he seized from 10388 Midseason Mist was purchased during the date range of the conspiracy; SA Daniel Kurinec determine that the Kawasaki 750-P and Ducati Sports bike he seized from 6145 Harrison Drive was purchased during the date range of the conspiracy; or TFO Steve B Noahr make the determination that the seven motorcycles he seized from 305 Saint Augustine were purchased during the date range of the conspiracy? The simple answer is that they could not have made such a determination.

This is a perfect example of the importance of the interposition of a neutral and detached

---

81   *See United States v. Dupree*, 781 F. Supp 2d 115, 126 (2d Cir. 2011).
82   *See* ECF No. 132, pp. 18-19 and 21-22.
83   *See* Exhibit A, B and C. (Search Warrants)

1  magistrate between the police and the citizens, especially when the decision involves the seizure of

2  property, where the law enforcement agencies themselves stand to benefit from the taking of

3  property. The fact that the government has conceded the return of three of the nine motorcycles, the

4  three ATM machines, and the floor jack, proves that the determinations made by the officers were

5  unreliable. If the officers conducting the searches encountered items outside of the scope of the

6  warrant that they thought were relevant to the investigation or subject to seizure the Ninth Circuit

7  guidance on how to lawfully proceed is clear, stating "[t]o the extent the agents wanted to seize

8  relevant information beyond the scope of the warrant, they should have sought a further warrant."[84]

9  **I.      The government's position that a finding of probable cause has been made in**

10  **this case is not supported by the record.**

11        The government finally argues that "to the extent this Court believes a protective order such

12  as the one being requested requires a finding of probable cause that the property is subject to

13  forfeiture, that finding has already been made in this case."[85] The government then cites the

14  Magistrate Judges Report and Recommendation, filed in this case as ECF No. 139, to support this

15  argument. Mr. Engstrom argues that the suggested findings contained in Magistrate Judge's Report

16  and Recommendation do not constitute res judicata in this case.

17        Mr. Engstrom has filed objections, objecting to, among other things, both the Magistrate

18  Judge's findings as they relate to probable cause[86] and the Magistrate Judge's reliance on assertions

19  made by the government attorney when determining factual issues.[87] As timely objections were filed

20  in regards to these parts of the Report and Recommendation, these issues are now subject to a de

21  novo review by the District Court.[88] Therefore, issues in the Magistrate Judge's report which have

22  been objected to should not, as suggested by the government, be considered a "finding" upon which

---

84    *See Sedaghaty*, 728 F.3d 885 at 914.

85    ECF No. 146, p. 10.

86    *See* ECF No. 143, p. 15.

87    *Id.*

88    *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985) ("Any party that desires plenary consideration by the Article III judge of any issue need only ask.").



this Court can rely when determining if a protective order shall be issued. It should also be noted that Mr. Engstrom has objected to the government's contention, and the Magistrate Judge's suggested finding, that the motorcycles have evidentiary value. The fact that the motorcycles have been released to the USMS and are currently held at a private tow yard belies the government's contention that there remains any evidentiary value.

### III.   Conclusion

The Defendant hopes that the Court will not heed the government's request and partake in the semantic gymnastics that would be necessary to find that issuance of a protective order, which would for all intents and purposes bestow judicial approval to the unconstitutional taking of property which belongs to an individual who is presumed to be innocent, is appropriate in this case.

For all of the foregoing reasons, this Court should deny the Motion.

Dated: July 18, 2022.

Respectfully Submitted,

Paul Engstrom

In Proper Person

# EXHIBIT A

## (Warrant for 6145 Harrison Drive)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means                    ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

District of Nevada

FILED.

DATED: 3:09 pm, June 17, 2021

U.S. MAGISTRATE JUDGE

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| 6145 HARRISON DRIVE, SUITE 4, LAS VEGAS, NEVADA 89120 | ) Case No. **2:21-mj-516-DJA** |
| | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Nevada _____
*(identify the person or describe the property to be searched and give its location):*
   Please see the Attachment A-3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
   Please see the Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     ___   July 1, 2021 ____   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable Daniel J. Albregts ____
                                                                                                       *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:    June 17, 2021 2:34 p.m. _____          _____
                                                                                                       *Judge's signature*

City and state:        Las Vegas, Nevada _____          Honorable Daniel J. Albregts, U.S. Magistrate Judge
                                                                                                       *Printed name and title*

US-001034

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>2:21-mj-516-DJA | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

US-001035



# SEALED

US-001036

ATTACHMENT "A-3"

**PREMISES TO BE SEARCHED – SUBJECT PREMISES 3**

1.  The premises to be searched is described as follows, and include all locked and closed containers, including safes, lockboxes, and vehicles found on or directly adjacent to the property, found therein:

> 6145 Harrison Drive Suite #4, Las Vegas, Nevada 89120 is a warehouse space primarily utilized by Paul ENGSTROM, Vincent CUOMO and Abraham ELLIOTT. Subject Premises is a single story, warehouse and suite having a primarily brown stucco exterior.  The warehouse and suite has a single car rollup door that is beige in color and faces north. The number "4" is affixed to the glass front door just above eye level. The door of the warehouse and suite is glass with black trim and faces north. The address "6145 Harrison 1-12" is affixed to the north side of the building on the far-east side and is black in color.  Photo of Warehouse and Suite:



41

## ATTACHMENT "B"

### ITEMS TO BE SEIZED

1. The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1) Distribution of and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit Controlled Substance Offense), and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "Subject Offenses"), namely:

    a. Controlled substances, including cocaine and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

    b. Counterfeit controlled substances.

    c. Records reflecting the use of a dark web moniker or handle, or other online monikers or pseudonyms, reflecting the use of vendor or buyer accounts on dark web marketplaces.

    d. Records concerning the establishment or management of an online or dark web controlled substance retail business, including documents and other records relating to the creation or hosting of websites, evidence of dark web or Tor Browser access, merchant accounts for customer transactions, product vendors or sources of supply, invoices, order forms, and communications with co-conspirators and others about any of the aforementioned subjects.

    e. Records concerning financial transactions associated with the operations or proceeds of an online or dark web controlled substance retail business, including any paper or

49

1       digital account opening documents, statements, deposit slips, checkbooks, orders or

2       confirmations of wire transfers.

3   f.  Records of any accounts or transactions within the traditional banking or credit

4       systems or via cryptocurrencies.

5   g.  Digital currency, cryptocurrency (or digital currency) private keys, and digital

6       currency recovery seeds, as further explained in paragraph 4 below.

7   h.  Packing material or inserts relating to any transactions with any cash-for-

8       cryptocurrency exchange.

9   i.  Books, records, correspondence, narcotic customers lists, narcotic suppliers lists,

10      ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts,

11      letters and memoranda of agreements between potential co-conspirators, formulas,

12      receipts, phone records, phone books, address books, notations and other papers,

13      and any files relating to the transporting, ordering, purchasing, or distributing of

14      controlled substances.

15   j.  Indicia of occupancy, residency, and/or ownership of the previously described

16      property, premises, or vehicles, and any other property, premises, or vehicles,

17      including utility and telephone bills, canceled mail, deeds, leases, rental agreements,

18      photographs, personal telephone books, diaries, envelopes, registration, receipts, and

19      keys which tend to show the identities of the occupants, residents, and/or owners,

20      not to exceed 15 items for any residence.

21   k.  Records concerning the use of commercial mail receiving agencies and/or post office

22      boxes.

23   l.  Photographs and/or videotapes, in particular photographs and/or videotapes of

24      potential co-conspirators and their criminal associates, assets, and/or controlled

50

1        substances, along with personal address lists, and other documents with the names

2        and telephone numbers of potential co-conspirators.

3    m. Records relating to the use of and accumulation of proceeds derived from the sale of

4        illegal controlled substances, as well as the acquisition of property obtained from

5        drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment,

6        and/or expenditure of money obtained from drug sales, including precious metals,

7        jewelry, records of large purchases, receipts, keys and other items tending to establish

8        dominion and control of the location, canceled checks, bank records, credit card

9        records, wire transfers, wire transfer receipts, cashier's checks, cashier's check

10       receipts, addressed mail, express delivery receipts/envelopes, utility company

11       receipts, rent receipts, income tax returns, money drafts, money orders, and their

12       receipts.

13    n. Financial records including expenses incurred in obtaining the equipment and items

14       necessary for the transportation and/or distribution of controlled substances, income

15       derived from the sales of controlled substances, as well as records of legitimate

16       income or lack thereof, and general living expenses.

17    o. Financial records of persons in control of the property, premises, or vehicles,

18       including bank statements, bank receipts, passbooks, bank checks, money market or

19       similar accounts, money drafts, letters of credit, payroll documents, employer

20       information, income and expense records, Federal and State income tax returns,

21       money orders, cashier's checks, loan applications, credit card records, safe deposit

22       box and records, acquisitions, notes, and records reflecting vehicles, aircraft or

23       vessels owned, purchased, sold or leased.

24

51

US-001040

p.  Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

q.  United States currency in excess of $2,000, including the first $2,000 if more than $2,000 is seized, digital currency such as Bitcoin stored on electronic wallets or other forms of wallets or other means, cryptocurrency private keys and recovery seed, and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, cash cards, gift cards, checkbooks, check registers, securities, precious metals, jewelry, antique or modem automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

r.  Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

s.  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices and cutting agents.

t.  Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

u.  With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

   i.  evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords,

52

US-001041

documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.  evidence of the attachment of other devices;

iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.  evidence of the times the device was used;

vi.  passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii.  applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.  records of or information about Internet Protocol addresses used by the device;

ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

53

US-001042

1  modified, or stored in any form, including in digital form on any digital device and any forensic

2  copies thereof.

3      3.    As used herein, the term "digital device" includes any electronic system or device

4  capable of storing or processing data in digital form, including central processing units; desktop,

5  laptop, notebook, and tablet computers; personal digital assistants; wireless communication

6  devices, such as telephone paging devices, beepers, mobile telephones, and smart phones;

7  digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes);

8  peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and

9  drives intended for removable media; related communications devices, such as modems,

10  routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory

11  cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such

12  as VHS); and security devices.

13      4.    Seizure of any cryptocurrency/digital currency private keys and recovery seeds

14  shall also be construed to include seizure of any cryptocurrency related to any such seized

15  private keys and/or recovery seeds, and such seizure shall allow transfer of any such related

16  cryptocurrency to one or more government controlled accounts, or "wallets."

17

18

19

20

21

22

23

24

54

US-001043

### ATTACHMENT "C"
### PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED
### PURSUANT TO THIS SEARCH WARRANT

1.      In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2.      When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3.      The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B.  The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law.  To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4.      Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B as Information to be Seized, and, if the

55

US-001044

United States pursues a criminal prosecution in this matter, all litigation including any appeal or collateral attack has been completed, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate Court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

5.   The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a.   examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

b.   searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.   surveying various file directories and the individual files they contain;

d.   opening files in order to determine their contents;

e.   using hash values to narrow the scope of what may be found. Hash values are under-inclusive, but are still a helpful tool;

f.   scanning storage areas;

g.   performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

56

h.  performing any other data analysis technique that may be necessary to locate

and retrieve the evidence described in Attachment B.

**Return and Review Procedures**

6.     Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

(e) Issuing the Warrant.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.

(B) Inventory. An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

7.     Pursuant to this Rule, the government understands and will act in accordance with the following:

a.  Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of

the warrant, an agent is required to file an inventory return with the Court, that

is, to file an itemized list of the property seized.  Execution of the warrant begins

when the United States serves the warrant on the named custodian; execution is

complete when the custodian provides all Search Warrant Data to the United

States. Within fourteen (14) days of completion of the execution of the warrant,

the inventory will be filed.

b.  Pursuant to Rule 41(c)(2)(B), Rule 41(e)(2)(A) governs the time within which

the electronically stored information must be seized after the issuance of the

57

US-001046

warrant and copied after the execution of the warrant, not the "later review of the media or information" seized, or the later off-site digital copying of that media.

c.  Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the "physical storage media" into which the Search Warrant Data that was seized was placed, not an itemization of the information or data stored on the "physical storage media" into which the Search Warrant Data was placed;

d.  Under Rule 41(f)(1)(B), the government may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media on which the Search Warrant Data was placed plus a full image copy of the seized Search Warrant Data be retained by the government.

e.  If the person from whom any Search Warrant Data was seized requests the return of any information in the Search Warrant Data that is not set forth in Attachment B, that information will be copied onto appropriate media and returned to the person from whom the information was seized.

58

US-001047

# EXHIBIT B

(Warrant for 10388 Midseason Mist)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

District of Nevada

FILED

DATED: 3:09 pm, June 17, 2021

U.S. MAGISTRATE JUDGE

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

**10388 MIDSEASON MIST STREET,
LAS VEGAS, NEVADA 89183**

)
)
)
)
)
)

Case No. 2:21-mj-517-DJA

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Nevada _____

*(identify the person or describe the property to be searched and give its location):*

Please see the Attachment A-4.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see the Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 1, 2021 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Daniel J. Albregts _____ .

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     June 17, 2021 2:34 p.m.                          _____

*Judge's signature*

City and state:     Las Vegas, Nevada                      Honorable Daniel J. Albregts, U.S. Magistrate Judge

*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>2:21-mj-517-DJA | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*



SEALED

US-001050

**ATTACHMENT "A-4"**

**PREMISES TO BE SEARCHED – SUBJECT PREMISES 4**

1.   The premises to be searched is described as follows, and include all locked and closed containers, including safes, lockboxes, and vehicles found on or directly adjacent to the property, found therein:

> 10388 Midseason Mist Street, Las Vegas, Nevada 89183 is the residential home of Abraham ELLIOTT. Subject Premises is a two story, single family residence having primarily beige stucco exterior with reddish brown trim.  The residence has a single car garage door that is beige in color and faces west. The numbers "10388" are affixed to the south side of the residence above the garage. The front door of the residence is an unknown color encased by a white security door and faces west. Photo of Residence:



42

US-001051

# ATTACHMENT "B"

## ITEMS TO BE SEIZED

1.  The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1) Distribution of and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit Controlled Substance Offense), and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "Subject Offenses"), namely:

a.  Controlled substances, including cocaine and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

b.  Counterfeit controlled substances.

c.  Records reflecting the use of a dark web moniker or handle, or other online monikers or pseudonyms, reflecting the use of vendor or buyer accounts on dark web marketplaces.

d.  Records concerning the establishment or management of an online or dark web controlled substance retail business, including documents and other records relating to the creation or hosting of websites, evidence of dark web or Tor Browser access, merchant accounts for customer transactions, product vendors or sources of supply, invoices, order forms, and communications with co-conspirators and others about any of the aforementioned subjects.

e.  Records concerning financial transactions associated with the operations or proceeds of an online or dark web controlled substance retail business, including any paper or

49

US-001052

1   digital account opening documents, statements, deposit slips, checkbooks, orders or

2   confirmations of wire transfers.

3   f.   Records of any accounts or transactions within the traditional banking or credit

4   systems or via cryptocurrencies.

5   g.   Digital currency, cryptocurrency (or digital currency) private keys, and digital

6   currency recovery seeds, as further explained in paragraph 4 below.

7   h.   Packing material or inserts relating to any transactions with any cash-for-

8   cryptocurrency exchange.

9   i.   Books, records, correspondence, narcotic customers lists, narcotic suppliers lists,

10   ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts,

11   letters and memoranda of agreements between potential co-conspirators, formulas,

12   receipts, phone records, phone books, address books, notations and other papers,

13   and any files relating to the transporting, ordering, purchasing, or distributing of

14   controlled substances.

15   j.   Indicia of occupancy, residency, and/or ownership of the previously described

16   property, premises, or vehicles, and any other property, premises, or vehicles,

17   including utility and telephone bills, canceled mail, deeds, leases, rental agreements,

18   photographs, personal telephone books, diaries, envelopes, registration, receipts, and

19   keys which tend to show the identities of the occupants, residents, and/or owners,

20   not to exceed 15 items for any residence.

21   k.   Records concerning the use of commercial mail receiving agencies and/or post office

22   boxes.

23   l.   Photographs and/or videotapes, in particular photographs and/or videotapes of

24   potential co-conspirators and their criminal associates, assets, and/or controlled

50

US-001053

1   substances, along with personal address lists, and other documents with the names

2   and telephone numbers of potential co-conspirators.

3   m. Records relating to the use of and accumulation of proceeds derived from the sale of

4   illegal controlled substances, as well as the acquisition of property obtained from

5   drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment,

6   and/or expenditure of money obtained from drug sales, including precious metals,

7   jewelry, records of large purchases, receipts, keys and other items tending to establish

8   dominion and control of the location, canceled checks, bank records, credit card

9   records, wire transfers, wire transfer receipts, cashier's checks, cashier's check

10  receipts, addressed mail, express delivery receipts/envelopes, utility company

11  receipts, rent receipts, income tax returns, money drafts, money orders, and their

12  receipts.

13  n. Financial records including expenses incurred in obtaining the equipment and items

14  necessary for the transportation and/or distribution of controlled substances, income

15  derived from the sales of controlled substances, as well as records of legitimate

16  income or lack thereof, and general living expenses.

17  o. Financial records of persons in control of the property, premises, or vehicles,

18  including bank statements, bank receipts, passbooks, bank checks, money market or

19  similar accounts, money drafts, letters of credit, payroll documents, employer

20  information, income and expense records, Federal and State income tax returns,

21  money orders, cashier's checks, loan applications, credit card records, safe deposit

22  box and records, acquisitions, notes, and records reflecting vehicles, aircraft or

23  vessels owned, purchased, sold or leased.

24

51

US-001054

p.  Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

q.  United States currency in excess of $2,000, including the first $2,000 if more than $2,000 is seized, digital currency such as Bitcoin stored on electronic wallets or other forms of wallets or other means, cryptocurrency private keys and recovery seed, and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, cash cards, gift cards, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

r.  Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

s.  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices and cutting agents.

t.  Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

u.  With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

   i.  evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords,

52

US-001055

1        documents, browsing history, user profiles, e-mail, e-mail contacts, chat and

2        instant messaging logs, photographs, and correspondence;

3      ii.   evidence of the presence or absence of software that would allow others to

4        control the device, such as viruses, Trojan horses, and other forms of

5        malicious software, as well as evidence of the presence or absence of security

6        software designed to detect malicious software;

7     iii.   evidence of the attachment of other devices;

8     iv.   evidence of counter-forensic programs (and associated data) that are designed

9        to eliminate data from the device;

10     v.   evidence of the times the device was used;

11    vi.   passwords, encryption keys, biometric keys, and other access devices that

12        may be necessary to access the device;

13   vii.   applications, utility programs, compilers, interpreters, or other software, as

14        well as documentation and manuals, that may be necessary to access the

15        device or to conduct a forensic examination of it;

16  viii.   records of or information about Internet Protocol addresses used by the

17        device;

18    ix.   records of or information about the device's Internet activity, including

19        firewall logs, caches, browser history and cookies, "bookmarked" or

20        "favorite" web pages, search terms that the user entered into any Internet

21        search engine, and records of user-typed web addresses.

22   2.     As used herein, the terms "records," "documents," "programs," "applications,"

23  and "materials" include records, documents. programs, applications, and materials created,

24

1    modified, or stored in any form, including in digital form on any digital device and any forensic

2    copies thereof.

3          3.     As used herein, the term "digital device" includes any electronic system or device

4    capable of storing or processing data in digital form, including central processing units; desktop,

5    laptop, notebook, and tablet computers; personal digital assistants; wireless communication

6    devices, such as telephone paging devices, beepers, mobile telephones, and smart phones;

7    digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes);

8    peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and

9    drives intended for removable media; related communications devices, such as modems,

10   routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory

11   cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such

12   as VHS); and security devices.

13         4.     Seizure of any cryptocurrency/digital currency private keys and recovery seeds

14   shall also be construed to include seizure of any cryptocurrency related to any such seized

15   private keys and/or recovery seeds, and such seizure shall allow transfer of any such related

16   cryptocurrency to one or more government controlled accounts, or "wallets."

17

18

19

20

21

22

23

24

54

## ATTACHMENT "C"
## PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED
## PURSUANT TO THIS SEARCH WARRANT

1. In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2. When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3. The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B. The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law. To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4. Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B as Information to be Seized, and, if the

55

United States pursues a criminal prosecution in this matter, all litigation including any appeal or collateral attack has been completed, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate Court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

     5.     The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

     a.  examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

     b.  searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

     c.  surveying various file directories and the individual files they contain;

     d.  opening files in order to determine their contents;

     e.  using hash values to narrow the scope of what may be found. Hash values are under-inclusive, but are still a helpful tool;

     f.  scanning storage areas;

     g.  performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

US-001059

h. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

**Return and Review Procedures**

6. Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

(e) Issuing the Warrant.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.

(B) Inventory. An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

7. Pursuant to this Rule, the government understands and will act in accordance with the following:

a. Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of the warrant, an agent is required to file an inventory return with the Court, that is, to file an itemized list of the property seized. Execution of the warrant begins when the United States serves the warrant on the named custodian; execution is complete when the custodian provides all Search Warrant Data to the United States. Within fourteen (14) days of completion of the execution of the warrant, the inventory will be filed.

b. Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which the electronically stored information must be seized after the issuance of the

57

warrant and copied after the execution of the warrant, not the "later review of the media or information" seized, or the later off-site digital copying of that media.

c.   Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the "physical storage media" into which the Search Warrant Data that was seized was placed, not an itemization of the information or data stored on the "physical storage media" into which the Search Warrant Data was placed;

d.   Under Rule 41(f)(1)(B), the government may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media on which the Search Warrant Data was placed plus a full image copy of the seized Search Warrant Data be retained by the government.

e.   If the person from whom any Search Warrant Data was seized requests the return of any information in the Search Warrant Data that is not set forth in Attachment B, that information will be copied onto appropriate media and returned to the person from whom the information was seized.

58

# EXHIBIT C

## (Warrant for 305 St. Augustine Lane)

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Nevada

FILED.

DATED. 3:10 pm, June 17, 2021

U.S. MAGISTRATE JUDGE

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 2:21-mj-518-DJA |
| 305 ST. AUGUSTINE LANE, | ) |
| HENDERSON, NEVADA 89014 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Nevada _____
*(identify the person or describe the property to be searched and give its location)*:

Please see the Attachment A-5.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see the Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ____ July 1, 2021 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Daniel J. Albregts _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   June 17, 2021 2:34 p.m. _____        _____
                                                                                              *Judge's signature*

City and state:      Las Vegas, Nevada _____        Honorable Daniel J. Albregts, U.S. Magistrate Judge
                                                                                              *Printed name and title*

US-001062

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>2:21-mj-518-DJA | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                   _____
                                      *Executing officer's signature*

                                   _____
                                      *Printed name and title*

US-001063



SEALED

1

## ATTACHMENT "A-5"

2

### PREMISES TO BE SEARCHED – SUBJECT PREMISES 5

3    1.   The premises to be searched is described as follows, and include all locked and

4    closed containers, including safes, lockboxes, and vehicles found on or directly adjacent to the

5    property, found therein:

6    305 Saint Augustine Lane, Henderson, Nevada 89014 is a residential
    home leased by Virginia ENGSTROM. Subject Premises is a two story,

7    single family residence having primarily beige stucco exterior with light
    brown trim. The residence has two separate garage doors that are beige

8    in color and face east. The numbers "305" are affixed to the east side of
    the residence to the right side of the north garage door. The front door of

9    the residence is brown in color and faces the east. Photo of Residence:

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

43

US-001065

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>ATTACHMENT "B"</u>

ITEMS TO BE SEIZED

1.     The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1)  Distribution of and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit Controlled Substance Offense), and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "Subject Offenses"), namely:

a.  Controlled substances, including cocaine and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

b.  Counterfeit controlled substances.

c.  Records reflecting the use of a dark web moniker or handle, or other online monikers or pseudonyms, reflecting the use of vendor or buyer accounts on dark web marketplaces

d.  Records concerning the establishment or management of an online or dark web controlled substance retail business, including documents and other records relating to the creation or hosting of websites, evidence of dark web or Tor Browser access, merchant accounts for customer transactions, product vendors or sources of supply, invoices, order forms, and communications with co-conspirators and others about any of the aforementioned subjects.

e.  Records concerning financial transactions associated with the operations or proceeds of an online or dark web controlled substance retail business, including any paper or

49

1          digital account opening documents, statements, deposit slips, checkbooks, orders or

2          confirmations of wire transfers.

3    f.   Records of any accounts or transactions within the traditional banking or credit

4          systems or via cryptocurrencies.

5    g.   Digital currency, cryptocurrency (or digital currency) private keys, and digital

6          currency recovery seeds, as further explained in paragraph 4 below.

7    h.   Packing material or inserts relating to any transactions with any cash-for-

8          cryptocurrency exchange.

9    i.   Books, records, correspondence, narcotic customers lists, narcotic suppliers lists,

10         ledgers, logs. journals, accounts payable and receivable, pay-owe sheets, contracts,

11         letters and memoranda of agreements between potential co-conspirators, formulas,

12         receipts, phone records, phone books, address books, notations and other papers,

13         and any files relating to the transporting, ordering, purchasing, or distributing of

14         controlled substances.

15    j.   Indicia of occupancy, residency, and/or ownership of the previously described

16         property, premises, or vehicles, and any other property, premises, or vehicles,

17         including utility and telephone bills, canceled mail, deeds, leases, rental agreements,

18         photographs, personal telephone books, diaries, envelopes, registration, receipts, and

19         keys which tend to show the identities of the occupants, residents, and/or owners,

20         not to exceed 15 items for any residence.

21    k.   Records concerning the use of commercial mail receiving agencies and/or post office

22         boxes.

23    l.   Photographs and/or videotapes, in particular photographs and/or videotapes of

24         potential co-conspirators and their criminal associates, assets, and/or controlled

US-001067

1   substances, along with personal address lists, and other documents with the names
2   and telephone numbers of potential co-conspirators.
3   m. Records relating to the use of and accumulation of proceeds derived from the sale of
4   illegal controlled substances, as well as the acquisition of property obtained from
5   drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment,
6   and/or expenditure of money obtained from drug sales, including precious metals,
7   jewelry, records of large purchases, receipts, keys and other items tending to establish
8   dominion and control of the location, canceled checks, bank records, credit card
9   records, wire transfers, wire transfer receipts, cashier's checks, cashier's check
10  receipts, addressed mail, express delivery receipts/envelopes, utility company
11  receipts, rent receipts, income tax returns, money drafts, money orders, and their
12  receipts.
13  n. Financial records including expenses incurred in obtaining the equipment and items
14  necessary for the transportation and/or distribution of controlled substances, income
15  derived from the sales of controlled substances, as well as records of legitimate
16  income or lack thereof, and general living expenses.
17  o. Financial records of persons in control of the property, premises, or vehicles,
18  including bank statements, bank receipts, passbooks, bank checks, money market or
19  similar accounts, money drafts, letters of credit, payroll documents, employer
20  information, income and expense records, Federal and State income tax returns,
21  money orders, cashier's checks, loan applications, credit card records, safe deposit
22  box and records, acquisitions, notes, and records reflecting vehicles, aircraft or
23  vessels owned, purchased, sold or leased.
24

51

US-001068

p.  Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

q.  United States currency in excess of $2,000, including the first $2,000 if more than $2,000 is seized, digital currency such as Bitcoin stored on electronic wallets or other forms of wallets or other means, cryptocurrency private keys and recovery seed, and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, cash cards, gift cards, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

r.  Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

s.  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices and cutting agents.

t.  Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

u.  With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

    i.  evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords,

52

documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.  evidence of the attachment of other devices;

iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.  evidence of the times the device was used;

vi.  passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii.  applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.  records of or information about Internet Protocol addresses used by the device;

ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

53

US-001070

1    modified, or stored in any form, including in digital form on any digital device and any forensic

2    copies thereof.

3          3.      As used herein, the term "digital device" includes any electronic system or device

4    capable of storing or processing data in digital form, including central processing units; desktop,

5    laptop, notebook, and tablet computers; personal digital assistants; wireless communication

6    devices, such as telephone paging devices, beepers, mobile telephones, and smart phones;

7    digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes);

8    peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and

9    drives intended for removable media; related communications devices, such as modems,

10   routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory

11   cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such

12   as VHS); and security devices.

13         4.      Seizure of any cryptocurrency/digital currency private keys and recovery seeds

14   shall also be construed to include seizure of any cryptocurrency related to any such seized

15   private keys and/or recovery seeds, and such seizure shall allow transfer of any such related

16   cryptocurrency to one or more government controlled accounts, or "wallets."

17

18

19

20

21

22

23

24

54

US-001071

## ATTACHMENT "C"
## PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED
## PURSUANT TO THIS SEARCH WARRANT

1.        In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2.        When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3.        The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B.  The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law.  To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4.        Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B as Information to be Seized, and, if the

55

US-001072

United States pursues a criminal prosecution in this matter, all litigation including any appeal or collateral attack has been completed, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate Court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

5.     The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

   a.  examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

   b.  searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

   c.  surveying various file directories and the individual files they contain;

   d.  opening files in order to determine their contents;

   e.  using hash values to narrow the scope of what may be found. Hash values are under-inclusive, but are still a helpful tool;

   f.  scanning storage areas;

   g.  performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

56

1    h.   performing any other data analysis technique that may be necessary to locate

2         and retrieve the evidence described in Attachment B.

3                    **Return and Review Procedures**

     6.        Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

4    (e) Issuing the Warrant.

5     (2) Contents of the Warrant.

     (A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant,

6    the warrant must identify the person or property to be searched, identify any person or property to be
     seized, and designate the magistrate judge to whom it must be returned. The warrant must command

7    the officer to:

         (i) execute the warrant within a specified time no longer than 14 days;

8    (B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may
     authorize the seizure of electronic storage media or the seizure or copying of electronically stored

9    information. Unless otherwise specified, the warrant authorizes a later review of the media or
     information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and

10   (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site
     copying or review.

11   (f) Executing and Returning the Warrant.

     (1) Warrant to Search for and Seize a Person or Property.

12   (B) Inventory. An officer present during the execution of the warrant must prepare and verify an
     inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the

13   seizure or copying of electronically stored information, the inventory may be limited to describing the
     physical storage media that were seized or copied. The officer may retain a copy of the electronically

14   stored information that was seized or copied.

15   7.        Pursuant to this Rule, the government understands and will act in accordance with the

16   following:

17        a.   Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of

18             the warrant, an agent is required to file an inventory return with the Court, that

               is, to file an itemized list of the property seized.  Execution of the warrant begins

19             when the United States serves the warrant on the named custodian; execution is

20             complete when the custodian provides all Search Warrant Data to the United

21             States. Within fourteen (14) days of completion of the execution of the warrant,

22             the inventory will be filed.

23        b.   Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which

24             the electronically stored information must be seized after the issuance of the

                                          57

US-001074

warrant and copied after the execution of the warrant, not the "later review of the media or information" seized, or the later off-site digital copying of that media.

c. Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the "physical storage media" into which the Search Warrant Data that was seized was placed, not an itemization of the information or data stored on the "physical storage media" into which the Search Warrant Data was placed;

d. Under Rule 41(f)(1)(B), the government may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media on which the Search Warrant Data was placed plus a full image copy of the seized Search Warrant Data be retained by the government.

e. If the person from whom any Search Warrant Data was seized requests the return of any information in the Search Warrant Data that is not set forth in Attachment B, that information will be copied onto appropriate media and returned to the person from whom the information was seized.

58

US-001075

XRAYED US MARSHALS SERVICE

Las Vegas NV
TUE 19 JUL 2022 PM

United States District Court
Attn: Clerk
333 Las Vegas Blvd S
Room 1334
Las Vegas, NV 89101

RECEIVED _____   FILED _____
SERVED ON _____   ENTERED _____
COUNSEL/PARTIES OF RECORD

JUL 2 1 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

7/18/22 -- BC