Paul Engstrom
7925 W Russell Rd #400217
Las Vegas, Nevada 89113
702-443-8354
paul.engstrom.nv@gmail.com
*In Proper Person*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>    Plaintiff, <br><br> vs. <br><br> PAUL ENGSTROM, <br><br>    Defendant, | Case No.: 2:21-cr-00190-ART-EJY <br><br> **MOTION TO SUPPRESS** <br><br> **[Evidentiary hearing requested]** |

CERTIFICATION: This motion is timely.

    Comes now, the defendant Paul Engstrom ("defendant" or "Mr. Engstrom"), in proper person, and hereby moves to suppress the fruits of various search warrants issued in relation to the investigation of Mr. Engstrom's involvement in money laundering and narcotics trafficking activity. For the reasons argued herein, defendant argues that the fruits of the searches and seizures conducted on December 29, 2020, June 18, 2021 (anticipatory warrant), and June 21, 2022, should be suppressed.

    This motion is based on the attached points and authorities, and any evidence and oral argument presented at the hearing on this matter.

    DATED: May 22, 2023.

Respectfully Submitted,

/s/ Paul Engstrom
Paul Engstrom
*In Proper Person*

# DECEMBER 29, 2020, SEARCH WARRANT

## I.  FACTUAL BACKGROUND

In October 2020, as part of a cryptocurrency money laundering investigation, the Drug Enforcement Administration (DEA) began an investigation into Mr. Engstrom. On December 29, 2020, DEA Special Agent (SA) Marc Laing requested search warrants for four parcels located in a drop box at the U.S. Post Office at 1801 N. Martin Luther King Blvd. The probable cause for the "target" federal offenses was primarily predicated on positive alerts by a canine named Nox on the four specific parcels, as detailed in Exhibit 1 at US-000558. This is further exemplified by the fact that eleven other parcels, although examined by Nox, were permitted to reach their respective destinations without any impediments. However, the essential factor for establishing probable cause through a dog sniff is proving the dog's reliability, which the search warrant application in question failed to demonstrate. Hence, the fruits of the search warrant should be deemed inadmissible.

## II.  ARGUMENT

The Affidavit in Support of the Search Warrant indicates that the probable cause for the search warrant was based on canine Nox's examination of fifteen USPS Priority Mail envelopes and a positive alert on four of the envelopes, suggesting the presence of narcotics or a controlled substance within these parcels, as stated in paragraph 24 of the affidavit. However, the affidavit is void of any information that establishes Nox as a certified and reliable narcotics detector dog. This omission is a vital deficiency because it precludes a Magistrate Judge from considering a canine alert when determining probable cause for issuing a warrant.

The Ninth Circuit emphasized this requirement in *United States v. Spetz*, 721 F.2d 1457, 1464 (9th Cir. 1983), stating that "[a] validly conducted dog sniff can supply the probable cause necessary for issuing a search warrant only if sufficient reliability is established by the application for the warrant." This was further affirmed in *United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir. 1993), which held that "[a] canine sniff alone can supply the probable

cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability."

The United States Supreme Court echoed these sentiments in *Florida v. Harris*, 568 U.S. 237 (2013), holding that while a police dog's alert can form probable cause to search, the dog's reliability is crucial. The Supreme Court also advised that a totality of the circumstances test is used to evaluate a dog's reliability, taking into account the dog's satisfactory performance in a certification or training program.

Furthermore, the U.S. Supreme Court's decisions in *United States v. Place*, 462 U.S. 696 (1983), and *Illinois v. Caballes*, 543 U.S. 405 (2005), underscore the assumption of the dog's reliability when a positive alert forms the basis for probable cause.

Given the absence of information on Nox's training, certification, and reliability, the warrant application was deficient. Therefore, the lack of adequate proof of Nox's reliability means the search warrant should be seen as defective, and any evidence obtained as a result should be suppressed as fruits of an unlawful search. This argument is firmly grounded in both Ninth Circuit and U.S. Supreme Court precedent, which stress the necessity of demonstrating a dog's reliability when their alerts are used to establish probable cause.

## JUNE 18, 2021, ANTICIPATORY SEARCH WARRANT

### I.    FACTUAL BACKGROUND

On June 17, 2021, DEA SA Jared Jeppson requested an anticipatory search warrant for yet to be identified parcels that he hoped to locate on both June 17, 2021, and June 18, 2021. The warrant for June 17, 2021, went unexecuted. The warrant for June 18, 2021, was executed, with agents seizing twenty-nine USPS priority envelopes from undisclosed locations. *See* Exhibit 2.

The anticipatory warrant issued (Exhibit 3), which does not incorporate the affidavit (Exhibit 4), is facially invalid as it fails to satisfy the Fourth Amendment requirement that the warrant identify, with particularity, the place to be searched. The warrant also fails to satisfy the requirement that the conditions precedent to any search must be stated in an anticipatory

warrant. These deficiencies mean the search warrant should be seen as defective, and fruits of the search warrant should be deemed inadmissible.

## II.     ARGUMENT

### a.  The Warrant Does Not Identify a Place to be Searched

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the ***place to be searched***, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). This particularity requirement protects property owners "by interposing, ex ante, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages." *United States v. Grubbs*, 547 U.S. 90, 99, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006) (citation omitted). In determining whether this particularity requirement has been met, courts should analyze "(1) whether the warrant describes the place to be searched with 'sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort,' and (2) whether any reasonable probability exists that the officers may mistakenly search another premise." *United States v. Brobst*, 558 F.3d 982, 992 (9th Cir. 2009) (quoting *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004).

In this case, the June 18, 2021, anticipatory warrant does not identify a place to be searched, instead describing Subject Parcels that agents hope to seize. Exhibit 3, US-000871. Anticipatory warrants require a condition precedent that the package sought is on a "sure course" to the destination targeted for the search. *See United States v. Ruddell*, 71 F.3d 331, 333 (9th Cir. 1995) ("An affidavit in support of an anticipatory search warrant must show that the property sought is on a sure course to the destination targeted for the search."); cf. *United States v. Hendricks*, 743 F.2d 653, 655 (9th Cir. 1984) (holding anticipatory search warrant was not supported by probable cause where the contraband was not on a sure course to the residence searched), cert. denied, 470 U.S. 1006, 84 L. Ed. 2d 382, 105 S. Ct. 1362 (1985).

Failing to describe a place to be searched makes the possibility that the property sought is on a "sure course" to the destination targeted for the search impossible. Failing to satisfy the sure course requirement requires a finding that the warrant was not supported by probable cause, and the fruits of the warrant should be deemed inadmissible.

### b. The Warrant Fails to Identify a Triggering Event

The execution of an anticipatory search warrant is conditioned upon the occurrence of a triggering event. If the triggering event does not occur, probable cause to search is lacking. See, e.g., *United States v. Rowland*, 145 F.3d 1194, 1201 (10th Cir. 1998). Because the Fourth Amendment commands that warrants be drafted with particularity, the Ninth Circuit has held that the conditions precedent to any search must be stated in the warrant. *United States v. Hotal*, 143 F.3d 1223, 1226 (9th Cir. 1998) (adopting the First Circuit rule that "when a warrant's execution is dependent on the occurrence of one or more conditions, the warrant itself must state the conditions precedent to its execution and these conditions must be clear, explicit and narrow"). Requiring the warrant to set forth the conditions precedent to the search serves two important purposes: it (1) limits the discretion of the officers executing the warrant, and (2) informs the property owner or resident of the proper scope of the search. *Id*. at 1227.

The anticipatory warrant issued fails to delineate any conditions precedent to its execution. This omission suggests a deficiency in establishing probable cause, a fundamental component of an anticipatory warrant. Without a precisely stated triggering event, any ensuing search should be regarded as conducted absent probable cause. As searches conducted without probable cause are, by definition, unreasonable under the Fourth Amendment, it follows that any evidence obtained from such a warrant should be considered inadmissible.

## JUNE 21, 2021, WARRANTS

### I.    FACTUAL BACKGROUND

On June 17, 2021, DEA SA Jared Jeppson applied for ten search warrants with supporting affidavits for various properties and vehicles in the District of Nevada. Exhibit 5. On June 17, 2021, U.S. Magistrate Judge Daniel J. Albregts of the District of Nevada

authorized the search of four residences, one commercial property, and five vehicles. Exhibit 6, Search and Seizure Warrants dated June 17, 2021. Each search warrant referenced the same "Attachment B" listing some twenty-two categories of Items to Be Seized over six pages, all stated to be seized as:

> items to be seized are evidence contraband fruits or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841(a)(1) Distribution of and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Commit Controlled Substance Offense) and 843(b) (Unlawful Use of a Communication Facility Including the Mails to Facilitate the Distribution of a Controlled Substance) (the "Subject Offenses.").

*Id*. at US-001010-15. There were no temporal limitations to the issued warrants and the affidavit was not incorporated.

Eight of these search warrants were executed on June 21, 2021. Mr. Engstrom was present at one of the locations being searched. The inventory returns for the various searches demonstrates the aimless and indiscriminate way the search was conducted. The inventory returns also make it apparent that multiple items were seized that were not enumerated as items to be seized in Attachment B of the warrants.

## II.  ARGUMENT

### a. The Court Should Suppress All Evidence Because the Warrants Lacked Particularity as the Items to be Seized

The evidence found during the searches of the various properties should be suppressed as fruit of a deficient warrant because the warrant lacked particularity as to the items to be seized. The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963); *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016); *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) ("Searches and seizures that offend the

Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule.").

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. *Maryland v. Garrison*, 480 U.S., 79, 84, 107, S.Ct. 1013, 1016, 94 L. Ed. 2d 72 (1987). The manifest purpose of this particularity requirement is to prevent general searches. *Id.*, 480 U.S. at 84. By limiting the authorization to search to the specific areas, and the things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Id. at 84. Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Id. If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more. *Horton v. California*, 496 U.S. 128, 140, 110 S. Ct. 2301, 110 L. Ed. 2d. (1990).

In determining whether a warrant is sufficiently particular, the Ninth Circuit has outlined three factors for consideration: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006).

Here, the search warrant does not satisfy any of the three factors. First, the government did not establish probable cause to justify the wholesale seizure of the items listed in paragraphs f, g, i, j, l , m, n, o, q, or t. *See* Exhibit 6, at US-001010-13. This lack of probable cause can most easily be identified by looking at the list of vague and generalized items included in paragraph o of Attachment B which includes the following:

> o. Financial records of persons in control of the property, premises, or vehicles, including bank statements, bank receipts, passbooks, bank checks, money market or similar accounts, money drafts, letters of credit, payroll documents, employer information, income and expense records, Federal and State income tax returns, money orders, cashier's checks, loan applications, credit card records, safe deposit box and records, acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased, sold or leased.

*Id*. at US-001012. Evidence of the records included in paragraph o, without any temporal limitation, would include all financial records, including bank statements and tax returns, for anyone linked with the properties, regardless of whether they were implicated in the alleged offenses, from the beginning of time to the day of the search. If the government sought to seize the items, SA Jeppson was obligated to furnish additional facts establishing a fair probability that these items were connected to evidence of a crime. The absence of these facts indicates a lack of probable cause pertaining to items in the paragraphs mentioned.

Moreover, the warrant does not set a standard for which the executing officer can use to differentiate items subject to seizure and those items that are ordinarily found in a common home or business. The description in the items listed do not inform an officer executing the warrant which items are reasonably related to the alleged offenses. Instead, it is merely a list of personal items that can be found in any residence.

The consequence of an arbitrary search is a wholesale rummaging through a person's belongings, which the Fourth Amendment prohibits. See generally *United States v. Washington*, 797 F.2d 1461, 1468 (9th Cir. 1986) (discussing that the need to prevent general exploratory rummaging of a person's belongings is particularly acute in document searches because, unlike requests for other tangibles, document searches tend to involve broad disclosures of the intimacies of private lives, thoughts, and transactions). As it stands, the warrant provides no guidelines to distinguish items unrelated to the offenses from those the government had probable cause to seize.

As to the third factor, the government was indeed able to describe the items more particularly given the amount surveillance conducted, information gathered through issued subpoenas, and the extensiveness of this investigation. The affidavit described in detail the alleged illegal activity, including identifying the dark net vendor account "Insta" which was expected to be involved and identifying cryptocurrency wallets that their investigation had identified as belonging to Mr. Engstrom. The government could have narrowed most of the descriptions in the warrants either by describing in greater detail the items one commonly expects to find on premises used for the criminal activities in question, or, at the very least, by describing the criminal activities themselves rather than simply referring to the statute believed to have been violated. *United States v. Spilotro*, 800 F.2d 959, 964 (9th Cir. 1986).

In *Spilotro*, a warrant was issued against individuals suspected of loan sharking and gambling activities. 800 F.2d at 960. The warrant authorized "the seizure of address books, notebooks, notes, documents, records, assets, photographs, and other items and paraphernalia evidencing violations of the multiple criminal statutes listed." *Id*. at 964. It failed, however, to state the "precise identity, type, or contents of the records sought." *Id*.

Partly because of this reason, the Ninth Circuit held that the warrant was not sufficiently specific to pass muster under the Fourth Amendment. More could have been done to tie the documents sought to the crimes alleged by, for example, stating that the police were searching for "records relating to loan sharking and gambling, including pay and collection sheets, lists of

loan customers, loan accounts and telephone numbers...." *Id*. (internal quotation marks and citation omitted). SA Jeppson could have done the same here. Rather than use terms like "[r]ecords of any accounts or transactions within the traditional banking systems or via cryptocurrencies." Exhibit 6, US-001011, ¶ f. SA Jeppson should have sought, for example, records relating to the accounts within the traditional banking system that the government had identified in their eight-month investigation as belonging to Mr. Engstrom. Likewise, the government had identified specific cryptocurrency accounts belonging to Mr. Engstrom. The records and cryptocurrency sought should have been limited to those belonging to Mr. Engstrom that occurred or were obtained within the time frame of the alleged illegal activity. As written, the search warrant authorized the seizure of both the records of cryptocurrency transactions and the seizure of the cryptocurrency regardless of the type of cryptocurrency or when it was acquired.

The conclusions of the *Spilotro* Court should be applied to this case. The warrant authorized, among other things, "[r]ecords of any accounts or transactions within the traditional banking systems or via cryptocurrencies," and "records of legitimate income." These terms are highly general, to say the least. Furthermore, it's challenging to envision circumstances where "records of legitimate income" could serve as evidence of a crime. The warrant falls short by not specifically connecting each seized item to the alleged criminal activities.

Given the significant information available to the government at the time of the warrant application, the lack of particularity displayed renders the subject warrants comparable to the general warrants deemed unconstitutional by the U.S. Supreme Court. Hence, we respectfully urge the court to suppress all evidence acquired from these searches.

### b. The Court Should Suppress All Evidence Because the Warrants Were Executed in a Manner Consistent with a General Warrant and Agents Improperly Obtained Other Materials Not Enumerated in the Warrant

It is well established in the Ninth Circuit that, "[a]s a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized." *United States v.*

*Tamura*, 694 F.2d 591, 595 (9th Cir. 1982). Additionally, the U.S. Supreme Court has consistently held that the "police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure," *Chimel v. California*, 395 U.S. 752, 762 (1969); *and Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see also Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948) (noting that the Fourth Amendment requires that any inferences from the evidence be "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime"). Unfortunately, the searches that occurred on June 21, 2021, devolved into general searches, where the agents on scene made their own probable cause determinations, eviscerating the protections provided by the interposition of a neutral and detached magistrate.

At four of the five properties searched on June 21, 2021, items were seized that were not enumerated in the issued warrants. For example, six motorcycles, a Wesco floor jack, "misc" parts, and "misc" paper work were seized from 305 Saint Augustine Dr. (Exhibit 7, US-000926); from 10388 Midseason Mist agents seized handwritten documents, a black binder with business docs, and a Ducati Monster motorcycle (*Id*., at US-000923); from 6145 Harrison Drive agents seized two motorcycles and three ATM machines, which were conspicuously absent from the warrant return.

In fact, the government has conceded that the motorcycles seized were not listed in Attachment B. *See* ECF No. 145, p. 24. ("The relevant search warrants have been provided to the Court and the government has acknowledged the motorcycles were not listed in Attachment B.").

The testimony of DEA SA Jared Jeppson at an evidentiary hearing held on February 1, 2023, in the Court of the Honorable Judge Traum, explains why agents seized items outside the scope of the issued search warrants were during the execution of the June 21, 2021, warrants. During cross-examination the following testimony was elicited from DEA SA Jeppson:

> **Defendant:** Do you only search – do you only seize items that are enumerated in the search warrant?

**SA Jeppson:** No.

**Defendant:** Okay. Was the 2020 Harley Davidson Touring, VIN number HDITEH230B94585, was that enumerated in the search warrant that was executed on June 21st?

**SA Jeppson:** So it was not enumerated in the search warrant as -- I don't quite understand because, again, the search warrant is stuff we're going in to look for to provide probable cause for the crimes that we're investigating. In addition to those enumerated or items that we're looking for, we will seize items that we believe are criminal proceeds.

**Defendant:** And who makes that determination?

**SA Jeppson:** Well, we seize them and then it goes through, like, a asset forfeiture process and that's -- that's determined if -- if those items are forfeited because they are criminal proceeds, but that's, like, a separate thing.

**Defendant:** Who makes the probable cause determination to seize items that aren't enumerated on search warrants?

**SA Jeppson:** So, yeah, when we're on scene and we're identifying items that we believe there's probable cause that they're criminal proceeds, the -- the agents, or whoever is executing those search warrants, make that determination on scene.

ECF No. 230, Transcript from February 1, 2023, Evidentiary Hearing, pp. 91-92.

The testimony of SA Jeppson makes it clear that the agents executing the warrants on June 21, 2021, disregarded the probable cause findings of the magistrate, executed the warrants in an unreasonable manner, and seized items that were outside the scope of the warrant. The unreasonable execution and the seizure of items not enumerated in Attachment B violated the Fourth Amendment rights of Mr. Engstrom. *See Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."). When the defendant challenges the manner in which a search was conducted, the Court must examine the language of the search warrant and ask whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." *United States v. Gorman*, 104 F.3d 272,

274 (9th Cir. 1996). Thus, a search authorized by a valid warrant may nonetheless be unreasonable if the officers conducting the search exceed the scope of the warrant and, for example, begin looking for files that are not related to the subject of the search warrant. See *United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006).  As searches and seizures conducted outside the scope of a warrant are, by definition, unreasonable under the Fourth Amendment, it follows that all evidence obtained from such a warrant should be considered inadmissible, and any evidence obtained as a result should be suppressed as fruits of an unlawful search. See *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) ("[F]lagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require suppression or return of all evidence seized during the search.").

## JUNE 21, 2021, WARRANTS – ELECTRONIC DEVICES

### I.     FACTUAL BACKGROUND

During the execution of the June 21, 2021, search warrants, numerous electronic devices belonging to Mr. Engstrom were seized. As of the filing of this motion he has not been provided with copies of the seized data nor has he received an inventory of the items seized.

### II.     ARGUMENT

**a. The Wholesale Seizure and Subsequent Search of All Electronic Devices is Tantamount to a General Warrant Because It Lacks the Particularity and Objective Standards and is Fatally Overbroad**

Suppression of the information retrieved from the electronic devices seized on June 21, 2021, is likewise required because the search warrant lacked particularity and any limitations cabining the search was overbroad. Absent a formal inventory allowing the steps of the search to be retraced, the reasonableness of the actual search of Mr. Engstrom's electronic devices is not susceptible to judicial review, and consequently total suppression is required.

There were no temporal limitations, no meaningful subject matter limitations, and no search protocol or data minimization procedures to cabin the search of Mr. Engstrom's electronic devices. The search warrant's breadth and lack of tailoring thus rendered it a general

warrant, allowing the government to impermissibly "seize the haystack to look for the needle," *In re Search of Google Email Accounts identified in Attachment A*, 92 F. Supp. 3d 944, 952 (D. Alaska 2015) (quoting *United States v. Hill*, 459 F.3d 966, 975 (9th Cir. 2006)).

The Fourth Amendment provides that "[n]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. To satisfy the Fourth Amendment's particularity requirements, a warrant must "comply with two related but distinct rules." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). "First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the types of items involved." *Id*. (quotation marks omitted). "Second, it must be no broader than the probable cause on which it is based." *Id*.

By insisting on particularity, the Fourth Amendment, by the same token, "forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009); see also *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009) (analyzing the issues of particularity and overbreadth as separate inquiries); *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (analyzing "breadth and particularity" under the rubric of a warrant's "specificity"). An overbroad warrant is a general warrant, a species of warrant that is "specially prohibited by the Fourth Amendment." *Andresen v. Maryland*, 427 U.S. 463, 492 (1976). A warrant is considered general when it describes the places to be searched and the things to be seized in such vague terms that it invites "'exploratory rummaging in a person's belongings.'" *Andresen*, 427 U.S. at 480 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). A sufficiently particular warrant, rather, "must leave the executing officers no discretion as to what items are to be seized." *United States v. Holzman*, 871 F.2d 1496, 1508 (9th Cir. 1989), abrogated on other grounds by *Horton v. California*, 496 U.S. 128 (1990); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." (internal quotation marks omitted)). To

determine whether a warrant is sufficiently specific, courts examine "both the warrant's breadth and particularity." *Wong*, 334 F.3d at 836.

The warrants fail set forth any objective standards to distinguish between content on Mr. Engstrom's electronic devices that is evidence of the target offenses versus content that is not. *Cardwell*, 680 F.2d at 78 ("If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized."). Additionally, nothing about the way the enumerated categories of information are drawn in the warrant inherently serves this function, *Wong*, 334 F.3d at 836, and just invoking the statute of the crime under investigation is not a meaningful guardrail. See *Cardwell*, 680 F.2d at 78 ("'limiting' the search to only records that are evidence of the violation of a certain statute is generally not enough."). Rather, the warrant's broadly drawn categories practically left it to investigators "'to make a legal distinction" on the fly between what was relevant to the target offenses and what was not, a distinction that only a neutral magistrate can make. *Id*. at 78 (quoting *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980)); see also *Marron v. United States*, 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.").

The absence of a search protocol and data minimization procedures only deepens this search warrant's defects, confirming its general nature. Absent these safeguards, there was nothing to ensure that the search was "carefully tailored to its justifications, and [did] not become a wide-ranging, exploratory search prohibited by the Fourth Amendment." *In re Applications for Search Warrants for Info. Associated with Target Email Accounts/Skype Accounts*, 2013 WL 4647554, at *5 (D. Kan. Aug. 27, 2013).

The government is prohibited from accessing materials under a search warrant for which there is no probable cause. See *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010). Accordingly, in the context of electronically-stored

information (ESI), the Ninth Circuit and other courts have insisted on search protocols and data minimization procedures as a means of "strik[ing] a fair balance between the legitimate needs of law enforcement and the right of individuals and enterprises to the privacy that is at the heart of the Fourth Amendment." *Comprehensive Drug Testing, Inc.*, 621 F.3d at 1177.

Precisely because these safeguards were lacking, generic warrant language similar to that contained Attachment B was rejected on particularity and overbreadth grounds in *United States v. Matter of Search of Info. Associated With Fifteen Email Addresses Stored at Premises Owned*, 2017 WL 4322826, at *10 (M.D. Ala. Sept. 28, 2017), *on reconsideration sub nom. United States v. Matter of Search of Info. Associated with Fifteen Email Addresses Stored at Premises Owned , Maintained, Controlled or Operated by 1&1 Media, Inc.*, 2017 WL 8751915 (M.D. Ala. Dec. 1, 2017). As courts are increasingly aware in this and other districts, in ESI seizures, a search protocol or other data minimization procedure is required under the Fourth Amendment's particularity requirement. See *United States v. Wei Seng Phua*, 2015 WL 1281603, at *7 (D. Nev. Mar. 20, 2015) (declining to "approve a search warrant for electronically stored information that does not contain an appropriate protocol delineating what procedures will be followed to" ensure particularity and safeguard against overbreadth); *United States v. Bickle*, 2011 WL 3798225, at *1 (D. Nev. July 21, 2011) (granting motion to suppress in part and ordering "filtering" of emails); *In re Applications for Search Warrants for Info. Associated with Target Email Accounts/Skype Accounts*, 2013 WL 4647554 (denying search warrant application for ESI for lack of any data minimization procedure); *In re Search of Google Email Accounts identified in Attachment A*, 92 F. Supp. 3d 944 (D. Alaska 2015) (rejecting as "overbroad" a search warrant application targeting the entirety of six email accounts with no limiting guidelines or data minimization safeguards).

The search warrant here practically authorized the wholesale search and seizure of Mr. Engstrom's electronic devices, including his smartphone, with no limiting guidelines, no search protocol, and no data minimization safeguards. A cellphone is not an ordinary container, but instead a repository of a vast amount of sensitive digital data. *See Riley v. California*, 134 S. Ct.

2473, 2494-95 (2014) ("Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'"); *United States v. Adjani*, 452 F.3d 1140, 1152 (9th Cir. 2006) (digital devices "are simultaneously file cabinets (with millions of files) and locked desk drawers."); see also *United States v. Payton*, 573 F.3d 859, 864 (9th Cir. 2009) ("[T]he nature of computers makes such searches so intrusive that affidavits seeking warrants for the search of computers often include a limiting search protocol, and judges issuing warrant may place conditions on the manner and extent of such searches, to protect privacy and other constitutional interests."). The absence of any guardrails in this warrant ensured that law enforcement had a "virtual carte blanche" to review the vast amount of personal data on Mr. Engstrom's digital devices. This type of unfettered access "is best analogized to a warrant asking the post office to provide copies of all mail ever sent by or delivered to a certain address so that the government can open and read all the mail to find out whether it contains fruits, evidence or instrumentality of a crime." *In re Applications for Search Warrants for Info. Associated with Target Email Accounts/Skype Accounts*, 2013 WL 4647554, at *8.

      **b. Total Suppression is Required Because the Reasonableness of the Search of Mr. Engstrom's Electronic Devices, Including His Phone, is Not Susceptible to Judicial Review**

To the extent probable cause existed at all to search Mr. Engstrom's digital devices, including his phone, it only existed as to a limited set of locations and for a limited period of time. Nevertheless, the warrant here has no meaningful subject matter or temporal limitations or any safeguards to cabin investigators' examination of Mr. Engstrom's sensitive digital data. Absent a return and inventory, there is no way to retrace the steps of the search conducted, and the reasonableness of the search itself is thus not susceptible to judicial review. For that reason, suppression of all of the contents of Mr. Engstrom's digital devices must be suppressed. See *United States v. Chen*, 979 F.2d 714, 716 (9th Cir. 1992) (noting that total suppression is appropriate where flagrant disregard of a warrant's terms rendered it a general search); *United*

*States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978) (declining to remand to the district court and ordering total suppression where "it [was] not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant."); *Medlin*, 842 F.2d at 1199 ("[F]lagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require suppression or return of all evidence seized during the search.").

**CONCLUSION**

For the reasons outlined above, Mr. Engstrom requests this Court suppress all fruits of the unlawful searches and seizures. Alternatively, Mr. Engstrom requests this Court set an evidentiary hearing to permit further factual development.

DATED: May 22, 2023.

Respectfully Submitted,

/s/ Paul Engstrom
Paul Engstrom
*In Proper Person*