JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar Number 7709
STEVEN J. ROSE
Assistant United States Attorney
Nevada Bar Number 13575
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Steven.Rose@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PAUL ENGSTROM,<br><br>                    Defendant. | Case No. 2:21-cr-00190-ART-EJY<br><br>**Motion to Reconsider Finding of Satisfaction of U.S.S.G. 5C1.2(a)(5)** |

Certification: This motion is timely.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 2021, Paul Engstrom (Engstrom) was charged by way of Indictment with Count One, Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii); Counts Two through Seven, Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count Eight, Possession of a Controlled Substance with Intent to Sell in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii); and Count Nine, Money Laundering Conspiracy in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). *See generally*, Indictment, ECF no. 17. Counts

One and Eight carried mandatory minimum sentences of ten years. *Id.*; *see* 21 U.S.C. § 841(b)(1)(A)(ii).

On July 21, 2023, Engstrom pled guilty pursuant to a plea agreement, Count One - Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(ii), and Count Two - Money Laundering Conspiracy in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). Plea Agreement, ECF No. 260. In the plea agreement, and at the plea canvass, Engstrom stipulated that at least five kilograms, but less than fifteen kilograms of cocaine was reasonably foreseeable to him. *Id.* at 9. Pursuant to 21 U.S.C. § 841, a ten-year mandatory minimum normally applies if the quantity of cocaine involved is at least five kilograms of cocaine. However, as part of the plea-bargaining process, Engstrom now faced a five-year mandatory minimum. *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii).

On February 1, 2024, this Court heard sentencing arguments and pronounced sentence for Paul Engstrom (Engstrom). ECF No. 239. Both parties agreed that the guideline calculations, which did not include a reduction pursuant to U.S.S.G. § 2D1.1(18), were correct. The Court also "adopt[ed]" the calculations as presented in the Presentence Investigation Report. *Id.* The guideline calculations as agreed to by the parties and adopted by the Court reflected, after including the government's requested downward variances, a final offense level of 27, and a criminal history category of III. *See* Sentencing Memorandum, ECF No. 324 at 3 (calculating a total offense level of 27); Government's Response to Defendant's Sentencing Memorandum, ECF No. 325 at 8-9 (calculating a total offense level of 27); Minutes of Proceedings, ECF No. 29.

At the sentencing hearing, the government argued 87 months imprisonment on each count, the low-end of the guidelines given the calculated offense level, Engstrom's

criminal history score, and in compliance with the plea agreement. The government further argued that the applicable minimum term of supervised release was four-years for Count One, and two-years for Count Two.[1] This was based upon the fact that the plea agreement, ECF No. 260, specifically stated that Engstrom would not be eligible for the safety-valve provisions of U.S.S.G. § 5C1.2.  Engstrom argued for a 60-month sentence, the lowest he could argue pursuant to the plea agreement. In his argument, Engstrom objected to the government's characterization of him as the head of the organization and described his role as "tech support." Engstrom stated that he had previously met one of his codefendants and that they reconnected while Engstrom was on supervised release. Engstrom stated that he had previously known the person who became the source of the drugs involved in the instant case but did not reveal the name of that person.

The Court made statements expressing concern for Engstrom's understanding of his ability to proffer with the government, referenced the fact that two of Engstrom's codefendants declined to proffer but were given a downward variance by the Court equivalent to the reduction for the safety-valve, and indicated that the Court was going to give Engstrom the same benefit. The Court sentenced Engstrom to 70 months in prison, which is the low-end of the guideline sentence for a final offense level of 25, and a criminal history category of III—consistent with application of a two-level downward variance pursuant to U.S.S.G. § 2D1.1(18). *See* ECF No. 329 (noting the sentence on each count).

---

[1] As of the writing of this motion, the government has ordered but not received the transcripts from the sentencing hearing. As such, the government is relying upon the minutes from the hearing, brief notes taken during the hearing, and memory. Upon receipt of the transcripts, if corrections are necessary, the government requests the ability to file an errata to clarify what was stated or argued at the sentencing or Rule 35(a) hearing.

On February 6, 2024, the Court emailed the government, Engstrom, Engstrom's standby counsel, and the probation officer indicating that the Court wanted to hold a hearing pursuant to Rule 35(a) to correct clear error. Proposed dates and times were provided in the email. After the parties responded regarding availability, the Court issued a minute order on February 7, 2024, advising that the Rule 35 hearing would be set for February 8, 2024. ECF No. 332. Neither the email, attached as Exhibit A, nor the minute order, Attached as Exhibit B, specified the issue to be addressed nor the clear error to be corrected. *Id.*

On February 8, 2024, the parties were present before the Court for the Rule 35 hearing. At that time, the Court expressed concern that the record at sentencing was not entirely clear because the Court had made statements that could be construed as giving the defendant the benefit the safety-valve reduction but did not make an express ruling about Engstrom's safety valve eligibility. The Court also referenced the comments at time of sentencing about Engstrom's understanding of the "debrief" requirement under U.S.S.G. § 5C1.2(a)(5). The Court heard from the probation officer regarding a response to one of Engstrom's objections to the PSR, specifically requesting an independent evaluation of his eligibility. The officer stated that she emailed the government asking whether Engstrom had met with the government. After the government replied that Engstrom had not, the objection was resolved by an indication that pursuant to U.S.S.G. § 5C1.2(a)(5), he was ineligible for the safety-valve. *See* Presentence Investigation Report ECF No. 317, at 36.

In response to the Court's inquiry, Engstrom acknowledged that he had not met with the government. Engstrom stated that he understood—correctly—that "debrief" to consist of him meeting with a prosecutor and most likely a DEA agent, and the requirement for him to be full and truthful in response to the government's questions.

Engstrom stated that he had not communicated a desire to have a "debrief," because his understanding of the plea agreement was that he could not seek application of the safety-valve. Engstrom stated that he knowingly gave up his ability to seek safety valve eligibility as part of the plea bargaining process.

The Court inquired of the prosecutor's understanding of the "debrief" requirement. Undersigned counsel stated that the "debrief" typically included a prosecutor and law enforcement agent meeting with the defendant, and during that meeting the defendant was required to provide full and truthful information about what he knew about the crimes. Undersigned counsel indicated that he had conducted one "debrief" with the United States Attorney's Office, and it was for one of Engstrom's codefendants. Undersigned noted for the Court that the agents had questions for the codefendant about how the cryptocurrency exchanges and dark web sales worked, both to better understand this case and how to investigate future cases. Undersigned also stated that the debrief with the codefendant included inquiry into the source of the narcotics, which was unknown to the agent and to the codefendant. The Court asked whether the government would have refused to meet with Engstrom for a debrief. The government explained that the lengthy plea-bargaining process included both sides making different proposals, and that Engstrom's agreement that he was not safety valve eligible led the government to forego other requests. The government said that if Engstrom had initiated a request to debrief, the government would view that as a potential breach of the plea agreement, because the only purpose would be to seek safety valve eligibility, something Engstrom specifically agreed not to do. *See* Plea Agreement, ECF No. 260 at ¶ 15. The government stated that it had not communicated a desire for a debrief to Engstrom, because it did not want to induce Engstrom into breaching the plea agreement.

The Court stated it believed it had an obligation to make an independent evaluation of Engstrom's safety valve eligibility, despite his agreement that he was not eligible. The Court noted that the plea agreement was not a binding agreement and did not bind the Court. The Court inquired whether Engstrom provided a statement at the time of his arrest, and Engstrom said he gave a "brief" statement. In response to the Court's inquiry, the government said that Engstrom's admittedly brief statement, even in combination with the facts outlined in the plea agreement, were insufficient to satisfy the full and complete information requirement of U.S.S.G. § 5C1.2(a)(5). The Court cited two cases, *United States v. Schreiber*, 191 F.3d 103 (2nd Cir. 1999), and *United States v. Mejia-Pimental*, 477 F.3d 1100 (9th Cir. 2007), for the proposition that the Court could consider the defendant's statements at the time of arrest, in the plea agreement, and even at the sentencing hearing. The Court also expressed a concern that the "practice in this district" sometimes allowed defendants to receive safety-valve eligibility even without any "debrief" as required by U.S.S.G. § 5C1.2(a)(5).

The Court acknowledged knowing relatively little about the underlying facts of the case, repeating comments made at the February 1, 2024, sentencing. The Court noted that Engstrom made a longer statement at sentencing than the codefendants. The Court did not make a specific finding that Engstrom's statements constituted the entirety of his knowledge about the offenses. Similarly, apart from stating that the Court needed to make an independent evaluation of eligibility, nothing regarding the burden of proving eligibility was discussed at the hearing.

The Court determined that Engstrom had fulfilled the requirements of U.S.S.G § 5C1.2, and thus recalculated the offense level to account for the two-level reduction in § 2D1.1(18), resulting in a final offense level of 25. The government stated that, other than

preserving its objection to the safety-valve eligibility, the remainder of the calculations were correct. After initially standing by its initial arguments, the government stated that although it objected to the application of the safety-valve, given the Court's ruling, it needed to change its recommendation. The government then argued for a low-end guideline range, based on the offense level of 25, rather than the previously calculated 27. The government also requested an amended term of supervised release, given that if the mandatory minimum provisions did not apply, the guideline period was two years, not the four years the government requested on February 1, 2024.

Ultimately, the Court resentenced Engstrom to 46 months in prison to be followed by two years of supervised release, which is below the mandatory minimum sentence of 60 months for a conviction of Conspiracy to Distribute a Controlled Substance where the quantity of cocaine exceeds 500 grams.[2] This sentence was identical on Counts One and Two and was specified to run concurrently between the counts.

The government respectfully submits that the Court erred in finding that Engstrom satisfied U.S.S.G. § 5C1.2(a)(5) and sentencing him to a term below the mandatory minimum, as Engstrom did not "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," as required by 18 U.S.C. § 3553(f)(5). Engstrom did not meet this critical requirement, nor did he contend at sentencing that he had. The government respectfully requests this Court reconsider its determination, with the benefit of briefing on the issue of the safety-valve.

---

[2] As noted above, Engstrom stipulated and agreed that at least five kilograms but less than fifteen kilograms of cocaine were reasonably foreseeable to him, an amount ten-times greater than needed to trigger the five-year mandatory minimum provision.

# POINTS AND AUTHORITIES

**A.      Motions for Reconsideration**

"A district court has inherent authority to reconsider its rulings as long as it retains jurisdiction over the matter." *United States v. Avila*, 263 F. App'x. 585 (9th Cir. 2008) (unpublished) (citing *United States v. Smith*, 389 F. 3d 944, 949-51 (9th Cir. 2004)) (finding the law of the case doctrine inapplicable to a district court's decision "to reconsider an order over which it has not been divested of jurisdiction"). Although there is no controlling criminal local rule, under the civil practice local rules, "a party seeking reconsideration must state with particularity the points of law or fact that the court has overlooked or misunderstood." LR 59-1. A movant must not repeat arguments already presented unless (and only to the extent necessary) to explain controlling law. *Id.* A motion for reconsideration must set forth "(1) some valid reason why the court should revisit its prior order; and (2) facts or law of a 'strongly convincing nature' in support of reversing the prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). "Reconsideration may be appropriate if the district court: (1) is presented with newly discovered evidence, (2) has committed clear error or the initial decision was manifestly unjust, or (3) there has been an intervening change in controlling law." *Nunes v. Ashcroft*, 375 F.3d 805, 807-08 (9th Cir. 2004). "There may also be other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

**B.      Correction of Clear Error**

Within 14 days of the oral announcement of sentence, a court can correct a sentence that resulted from "arithmetical, technical, or other clear error." Fed. R. Crim P. 35(a). Here, the Court made an oral pronouncement of sentence on February 8, 2024.

8

1  As such, this Court has until February 22, 2024, to correct the sentence under this rule.

2  **C.    Safety Valve Eligibility**

3      A defendant bears the burden of proving eligibility for application of the safety

4  valve and must prove that eligibility by a preponderance of the evidence. *Mejia-Pimental*,

5  477 F.3d at 1104; *United States v. Washman*, 128 F.3d 1305, 1307 (9th Cir. 1997); *Shrestha*,

6  86 F.3d at 940 ("the initial burden is incontestably on the defendant to demonstrate by a

7  preponderance of the evidence that he is eligible for the reduction."). Under 18 U.S.C. §

8  3553(f)(5) and U.S.S.G. § 5C1.2(a)(5), which has been called the "tell all you can tell

9  requirement," to qualify for a sentence reduction a "defendant must provide, prior to

10  sentencing, *all* information at his disposal which is relevant to the offense. . . ." *Shrestha*,

11  86 F.3d at 939 (internal quotation marks omitted from first quotation)(emphasis added in

12  second quotation); *United States v. Acosta-Olivas*, 71 F.3d 375, 378-79 (10th Cir. 1995).

13      This includes "details concerning other parties to the crime, such as the source

14  who provided the defendant with the drugs and other persons in the chain of distribution,

15  if known." *Id.*; *United States v. Real-Hernandez*, 90 F.3d 356, 361 (9th Cir. 1996) ("the

16  government correctly argues that section 5C1.2 requires 'complete candor regarding the

17  charged offense prior to sentencing. Indeed, to apply 5C1.2, the district court must find

18  that Real-Hernandez provided *all* the information available to him. . . .") (emphasis in

19  original). A defendant who provides incomplete information, or who is evasive in

20  answering the government's questions, is ineligible for safety valve relief. *Mejia-Pimental*,

21  477 F.3d at 1106.

22      The duty to disclose *all* information known to the defendant includes information

23  relating to conduct for which the defendant is not and has never been convicted.

24  *Washman*, 128 F.3d at 1307-08. "The intent of Congress would be thwarted if defendants

could obtain the benefit of the safety valve yet not disclose their true roles." *Id.* If a defendant does not possess information, "he at least should [communicate] that fact to the government in order to qualify for the reduction." *Shrestha*, 86 F.3d at 939 (alteration marks in original) *quoting United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir. 1995). The burden rests with the defendant to show that disclosures which are made, are true and complete. *Schreiber*, 191 F.3d at 107 *citing United States v. Ortiz*, 136 F.3d 882, 883-84 (2nd Cir. 1997) for the proposition that "the government has no general duty to seek out information from the defendant." An adequate proffer requires more than a mere stipulation to the basic facts of the offense, particularly where the defendant could have provided the name of the source of the drugs and information about the chain of distribution. *Mejia-Pimental*, 447 F.3d at 1107 *quoting with approval United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996).

The text of the guidelines also provides the timeframe in which a defendant must offer the information known to him. U.S.S.G. § 5C1.2(a)(5) requires that the information be provided "not later than the time of the sentencing hearing." "[T]he deadline for compliance should be set at the time of the *commencement* of the sentencing hearing." *Schreiber*, 191 F.3d at 107. This deadline was adopted, in part, to avoid a situation where a defendant could avoid providing full and complete disclosure, waiting until the government could "corner" the defendant at sentencing and expose his lies. *Id.* The Ninth Circuit has adopted similar language, requiring "complete candor regarding the charged offense *prior to sentencing.*" *Real-Hernandez*, 90 F.3d at 361 (emphasis added); *see also Shrestha*, 86 F.3d at 939 ("[T]he defendant must provide, *prior to sentencing*, all information at his disposal which is relevant to the offense. . . ." (emphasis added). A disclosure may be made well prior to sentencing, even if it is made at the time of time of

arrest, *Shrestha*, 86 F.3d at 937, or if it is made to an Assistant United States Attorney other than the one prosecuting the case for which safety-valve eligibility is sought. *Real-Hernandez*, 90 F.3d at 360-61. Subject to the deadline discussed above, "provision of information in any context [may] suffice, so long as the defendant is truthful and complete." *Real-Hernandez*, 90 F.3d at 361.

**D.   Application**

Here, the Court made several statements of law and fact that the government respectfully submits were clear error. First, likely because the parties had stipulated that Engstrom was not eligible for safety valve relief, the burden of proof was not addressed before the Court. That burden is 'incontestably" on Engstrom. *Shrestha*, 86 F.3d at 940; *see also Mejia-Pimental*, 477 F.3d at 1104; *Washman*, 128 F.3d at 1307. Engstrom did not attempt to meet that burden and could not do so without violating his plea agreement. Plea Agreement, ECF No. 260 at ¶ 15. Engstrom complied with his obligations under the plea agreement and conceded that he had not met with the government, and that he was ineligible for the safety valve. As it is uncontested that Engstrom bears the burden, and did not meet that burden, he is ineligible for safety valve relief. *See United States v. Garcia-Sanchez*, 189 F.3d 1143, 1150 (9th Cir. 1999) (holding that the defendant did not satisfy the "tell all you can tell" provision when he "never even met with the government to offer information," and his counsel "conceded as much as the sentencing hearing."); *Washman*, 128 F.3d at 1308 (holding that the defendant did not carry his burden when evidence showed additional drug activity and the defendant did not attempt to prove or assert a lack of knowledge of that activity); *see also United States v. Lomas*, 433 Fed. Appx. 514, 516-17 (9th Cir. May 10, 2011) (unpublished) (holding that the district court correctly determined the defendant failed to prove he was qualified for safety valve relief

11

when he "expressly told the district court that under the circumstances he was not so entitled. . . . [and] because he failed to demonstrate that he had provided to the government all material information he had regarding the activities of himself and his coconspirators.").

Second, the Court indicated that it would aggregate  Engstrom's statement at the time of his arrest, with the statements in the plea agreement, and information provided in his argument in mitigation at sentencing to consider the proffer requirement met. Setting aside the fact that Engstrom did not provide all the information he had about the offenses of his conviction in any or all of these meetings, the Court erred in considering information Engstrom provided at sentencing to consider the proffer requirement met. To support its conclusion that it could consider such information, the Court specifically cited two cases, *Mejia-Pimental*, 477 F.3d 1100, and *Schreiber*, 191 F.3d 103. However, those cases do not support the Court's interpretation of the timing for disclosure. In *Schreiber*, the Second Circuit specifically agreed that "the deadline for compliance should be set at the time of the commencement of the sentencing hearing." 191 F.3d at 107. As was noted by the Court, the *Schreiber* case was explicitly cited with approval by the Ninth Circuit in *Mejia-Pimental*. Indeed, the Ninth Circuit was "persuaded by" the decision in *Schreiber*, and quoted passages that closely preceded *Schreiber's* setting of the deadline as the *commencement* of the sentencing. *Mejia-Pimental*, 477 F.3d at 1105-06.

The government acknowledges that *Mejia-Pimental* considered a case in which the defendant did not disclose until prior to his third sentencing hearing, a fact this Court noted during the February 8, 2024, hearing. However, the rationale behind the deadline announced in *Schreiber* consistent with *Mejia-Pimental*. *Id.* at 1104 & n.8 (holding that on remand upon an open record, the court could consider matters that were not raised at the

12

first sentencing hearings). The facts within *Mejia-Pimental* also support the continued application of this deadline, as the defendant in that case offered to provide the safety valve proffer "[b]efore his third sentencing hearing." *Id.* at 1103. After the government declined that invitation, but before the hearing itself, the defendant "wrote a letter to the Government detailing his involvement in the charged offenses, as well as his knowledge of the involvement of others. . . ." *Id.* Similarly, in *Schreiber*, the other case upon which the Court relied, the defendant forwarded documents in which he disclosed what he asserted was full and truthful knowledge of the conspiracy. 191 F.3d at 105. The Second Circuit explicitly referenced that it was "undisputed that the government received these materials prior to the sentencing hearing." *Id.*

Here, however, the case has not been remanded upon an open record, and there was no sentencing error to allow such a remand. *See id.* ("[I]f a district court errs in sentencing, we will remand for resentencing on an open record. . . ."). Moreover, it is uncontested that the first time Engstrom provided the information in his allocution was after the commencement of the sentencing hearing. Thus, this information could not be properly considered by the Court in determining compliance with U.S.S.G. § 5C1.2(a)(5). *Schreiber*, 191 F.3d at 107.

With the controlling deadline in mind, the only information the Court could consider for purposes of evaluating whether Engstrom made a full and truthful disclosure, despite the fact he never asserted as such, were his statements at the time of his arrest, and the facts contained in the plea agreement. At the time the February 8, 2024, hearing, the Court was unaware of whether Engstrom had made any statements at the time of his arrest, as revealed by the fact the Court asked the parties whether any such statements occurred. Thus, the Court could not have had any information about these

13

statements during the February 1, 2024, sentencing. Without any information, the Court could not have decided about whether the statements, assuming they existed, were all the information Engstrom knew about the offenses. *Cf. United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996) (holding that a defendant's bare assertion that she had provided all relevant information did not meet her burden). Moreover, at the February 8, 2024, hearing, Engstrom described his statements at the time of his arrest as very "brief."

Similarly, the factual basis set forth in the plea agreement is insufficient to support a finding that Engstrom disclosed all he knew. This Court repeatedly stated that it had little knowledge of the facts of the case, especially since most of the facts known to the Court came from the PSR and the plea agreement. The factual recitation in the plea agreement describes a conspiracy that spanned more than a year, and involved the use of the dark-web, cryptocurrency, and thousands of drug sales. Plea Agreement, ECF No. 260 at 8-9. The facts contained in the agreement, though sufficient to satisfy the elements of the charges to which Engstrom pled, did not go into any substantial detail about the source of the drugs, the supply chain for those drugs, how Engstrom and his codefendants received and exchanged cryptocurrency, or any other information about the involvement of other individuals. *Id.* Simply stipulating to such "basic details of his offense conduct" is insufficient to fulfill the safety valve requirement. *Mejia-Pimental*, 477 F.3d at 1107 *quoting Arrington*, 73 F.3d at 148.

Even if the Court could consider Engstrom's statements at the February 1, 2024, sentencing, Engstrom did not provide "*all* the information available to him. . . " to the government, and the record is insufficient for the Court to so find. *Real-Hernandez*, 90 F.3d at 361 (emphasis in original). Engstrom did not claim, and has never claimed, that he had provided all the information he had, and the government averred that the

14

1   information provided was incomplete. Those two facts clearly distinguish this case from

2   those cited by the Court and other cases addressing eligibility for safety valve relief. *See*,

3   *e.g., Mejia-Pimental*, 477 F.3d at 1104 (specifically noting that the government did not

4   contest the truthfulness or completeness of the disclosed information); *Shrestha*, 86 F.3d

5   at 939 (noting that the government did not argue that the disclosure was either untruthful

6   or incomplete). *See also Schreiber*, 191 F.3d at 105 (noting that the truthfulness and

7   completeness of the disclosures had not been litigated before the district court and no

8   findings thereon had been made by the district court).[3]

9         Here, the government specifically contested the completeness of Engstrom's

10  disclosure. The government noted that the agents in the case had questions for the one

11  codefendant who did meet with the government about the source of the drugs, the

12  involvement of others, and the way in which the cryptocurrency exchanges took place.

13  These questions are a microcosm of the outstanding information about the offenses that

14  remains unknown to the government. Although Engstrom minimized his criminality

15  with a self-serving description of himself as the "tech support" for the group, he provided

16  no detail about the workings of the cryptocurrency. Although he stated that he was

17  reintroduced to the drug scene by a friend, he did not reveal the identity of that "friend"

18  at sentencing or at any other time. Although Engstrom said that a codefendant retrieved

19  the drugs from a source in California, this was simply parroting information contained in

20  the PSR, and did not indicate whether he knew anything additional about the source of

21

22  ---
    [3] Regarding the Court's statements about refusals to debrief, the government notes that the
23  cases cited by the Court do not support waiving the "tell all you can tell" requirement, but
    instead simply says it may be considered in determining whether a written proffer is complete.
    *Schreiber*, 191 F.3d at 108. The government has not located any cases that hold that a refusal
24  by the government to debrief relieves the defendant of the tell-all requirement.

supply. *Shrestha*, 86 F.3d at 939 ("If the defendant does not possess such information, he should communicate that fact to the government in order to qualify for the reduction.") (internal quotation and alteration marks omitted). This list is by no means exhaustive but is simply an illustration of the lacking information.

In this case, Engstrom conceded that he did not meet with the government, conceded that he was not eligible for safety valve relief, and provided information that was not intended to be the sum-total of his knowledge of the offenses. Because he bore the burden of proving eligibility, his concession should be the end of the inquiry. However, because the issue was not litigated by the parties, and the Court did not have the benefit of briefing, the Court relieved Engstrom of his burden, and considered information that was provided past the deadline. The Court did not make any specific findings regarding the truthfulness and completeness of the disclosures. As the government argued at the hearing, and as outlined above, the record before the Court is plainly insufficient for the Court to determine that Engstrom provided "all information and evidence he has concerning the offense or offenses." *Mejia-Pimental*, 477 F.3d at 1102 (alteration marks omitted). A defendant must satisfy "all five conditions" for safety valve relief. *United States v. Alba-Flores*, 577 F.3d 1104, 1107 (9th Cir. 2009). Because the Court cannot find on the record before it that Engstrom satisfied the tell all provision, Engstrom cannot be found eligible for safety valve relief. The government respectfully submits that the Court's finding to the contrary is clear error and requests this Court reconsider its finding.

# CONCLUSION

For the reasons stated above, the government respectfully requests that the Court reconsider its finding of safety valve eligibility, vacate the ruling on February 8, 2024, and reinstate the sentence properly imposed on February 1, 2024.

.

DATED this 15th day of February 2024.

JASON M. FRIERSON
United States Attorney

*/s/ Steven J. Rose*

_____

STEVEN J. ROSE
Assistant United States Attorney

# Exhibit A

**Rose, Steven (USANV)**

| | |
|---|---|
| **From:** | Katie Sutherland ███████████████ |
| **Sent:** | Tuesday, February 6, 2024 3:21 PM |
| **To:** | paul.engstrom ███████████ Diamond, Joanne (FD); Rose, Steven (USANV); Hollingsworth, Daniel (USANV); Tiffany Conover |
| **Subject:** | USA v. Engstrom et al (2:21-cr-00190-ART-EJY) |

Good afternoon,

Judge Traum has asked that a Rule 35 (R 35 (a) Correcting Clear Error. Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error) hearing be set at one of the following date/times below:

Thursday, February 8 at either 11 a.m. or 3:00 p.m.

Friday, February 9 at either 10 a.m., 11 a.m., 1:00 p.m., or 2:00 p.m.

Monday, February 12 at 11 a.m., 1:00 p.m., or 2:00 p.m.

Please let me know if one of these dates/times work for everyone.



*Katie Lynn Sutherland*
*Courtroom Administrator to the*
*Honorable Anne R. Traum*
*U.S. District Court, District of Nevada (Reno)*
*Phone:* ███████████

# Exhibit B

**Rose, Steven (USANV)**

| | |
|---|---|
| **From:** | cmecf@nvd.uscourts.gov |
| **Sent:** | Wednesday, February 7, 2024 9:35 AM |
| **To:** | cmecfhelpdesk@nvd.uscourts.gov |
| **Subject:** | Activity in Case 2:21-cr-00190-ART-EJY USA v. Engstrom et al Minute Order Setting Hearing |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**District of Nevada**

### Notice of Electronic Filing

The following transaction was entered on 2/7/2024 at 9:35 AM PST and filed on 2/7/2024

| | |
|---|---|
| **Case Name:** | USA v. Engstrom et al |
| **Case Number:** | 2:21-cr-00190-ART-EJY |
| **Filer:** | |
| **Document Number:** | 332(No document attached) |

**Docket Text:**
**MINUTE ORDER IN CHAMBERS of the Honorable District Judge Anne R. Traum, as to Paul Engstrom on 2/7/2024. By Deputy Clerk: Katie Lynn Sutherland.**

**A Fed. R. Crim. P. 35 hearing is hereby set for Thursday, February 8, 2024, at 3:00 p.m. before U.S. District Court Judge Anne R. Traum in Las Vegas Courtroom 6A.**

**(no image attached) (Copies have been distributed pursuant to the NEF and sent to the defendant manually - KLS)**

**2:21-cr-00190-ART-EJY-1 Notice has been electronically mailed to:**

Daniel D. Hollingsworth     Daniel.Hollingsworth@usdoj.gov, Carol.H.Farago@usdoj.gov, CaseView.ECF@usdoj.gov, heidi.skillin@usdoj.gov, kevin.coburn@usdoj.gov, maritess.recinto@usdoj.gov, misty.dante@usdoj.gov, nancy.kay@usdoj.gov

Lucas Gaffney     Lucas@GaffneyLawLV.com

Susan Cushman     susan.cushman@usdoj.gov, caseview.ecf@usdoj.gov, veronica.criste@usdoj.gov

Joanne L. Diamond     Joanne_Diamond@fd.org, aarin_kevorkian@fd.org, ecf_vegas@fd.org,

felicia_darensbourg@fd.org, marcus_walker@fd.org

Crane M Pomerantz    cpomerantz@clarkhill.com, creyes@clarkhill.com, jestrada@clarkhill.com, jsoquena@clarkhill.com, sconcepcion@clarkhill.com, tbain@clarkhill.com

Kendall S Stone    kendall@fumolaw.com, kristine.fumolaw@gmail.com

Kimberly Anne Sokolich    Kimberly.Sokolich@usdoj.gov, Melanee.Smith@usdoj.gov, caseview.ecf@usdoj.gov, jackie.bryant@usdoj.gov

Steven Rose    steven.rose@usdoj.gov, CaseView.ECF@usdoj.gov, Cindee.Davis@usdoj.gov

Paul Engstrom    paul.engstrom.nv@gmail.com

**2:21-cr-00190-ART-EJY-1 Notice has been delivered by other means to:**